Robert V. Prongay (#270796)
Charles H. Linehan (#307439)
Pavithra Rajesh (#323055)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:   (310) 201-9160
Email:        clinehan@glancylaw.com

*Counsel for Movant Ralph Martinez and*
*Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ALI ZAIDI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ADAMAS PHARMACEUTICALS, INC., GREGORY T. WENT, and ALFRED G. MERRIWEATHER,<br><br>Defendants. | Case No. 4:19-cv-08051-JSW<br><br>**RALPH MARTINEZ'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>Date:      March 27, 2020<br>Time:      9:00 a.m.<br>Crtrm.:    5 – 2nd Floor<br><br>The Hon. Jeffrey S. White |

RALPH MARTINEZ'S OPPOSITION TO COMPETING MOTIONS
Case No. 4:19-cv-08051-JSW

Lead Plaintiff Movant Ralph Martinez ("Martinez" or "Movant") submits this memorandum of points and authorities in opposition to the competing motions for appointment of lead plaintiff and approval of counsel filed by other purported class members in this action.

## I.    INTRODUCTION

Six movants filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  The motions were filed by Ralph Martinez (Dkt. No. 28); Daniel Menacho (Dkt. No. 14); Sayed Ali M. Zaidi (Dkt. No. 19); Matthew Shanks (Dkt. No. 24); Miles Healey (Dkt. No. 32) and Anchorage Police and Fire Retirement System (Dkt. No. 42).

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the plaintiff "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant that, *inter alia*, has the "largest financial interest in the relief sought by the class."  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). The presumption may be rebutted only by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As demonstrated in Martinez's memorandum of points and authorities in support of his lead plaintiff motion (Dkt. No. 28), Movant has the largest financial interest in the relief sought by the class. As such, Martinez is the presumptively "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  Since he is the presumptively most adequate plaintiff, and the presumption has not been rebutted, Movant should be appointed lead plaintiff, and his selection of counsel should be approved.[1]

---

[1] "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).

**II.   ARGUMENT**

**A.      The PSLRA Mandated Procedure For Appointing A Lead Plaintiff**

The PSLRA mandates that the Court appoint the "most adequate plaintiff" to be lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA further provides a rebuttable presumption that the "most adequate plaintiff" is the movant that: (1) has either filed the complaint or made a motion in response to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff").

When determining which movant is presumptively most adequate, "the [PSLRA] provides in categorical terms that the *only* basis on which a court may compare plaintiffs . . . is the size of their financial stake in the controversy."  *Cavanaugh*, 306 F.3d at 732 (emphasis in original).  Courts may not engage in a "freewheeling comparison" of "business acumen," "knowledge of the lawsuit," or "their fee arrangements with their respective lawyers." *Id.*

Once the Court identifies the presumptively most adequate plaintiff, the presumption may be rebutted only "upon proof . . . that the presumptively most adequate plaintiff" (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, Martinez is the presumptively most adequate plaintiff because he filed a lead plaintiff motion in response to a notice, has a larger financial interest than all other lead plaintiff movants, and satisfies the requirements of Rule 23.  Since no other movant has rebutted, or can rebut, this presumption, Martinez should be appointed lead plaintiff.

RALPH MARTINEZ'S OPPOSITION TO COMPETING MOTIONS
Case No. 4:19-cv-08051-JSW                                                                                                      2

### B.      Martinez Is The Presumptively Most Adequate Plaintiff Because He Has The Largest Financial Interest In The Relief Sought By The Class

Martinez satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).  First, he filed a motion for appointment as lead plaintiff. *See* Dkt. No. 28; 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa).   Second, Martinez satisfies the requirements of Rule 23, as demonstrated in his memorandum of points and authorities in support of his lead plaintiff motion.   *See* Dkt. No. 28 at 6-8; 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). Finally, as explained *infra*, Movant has the largest financial interest in the relief sought by the class.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).

Since the PSLRA does not mandate any particular methodology for determining which movant has the largest financial interest in the relief sought by the class, district courts are free to choose any methodology that is "both rational and consistently applied."  *See Cavanaugh*, 306 F.3d at 730 n.4.   District courts, however, commonly rely on the four-factor *Olsten–Lax* test, which considers: (1) total shares purchased; (2) net shares purchased; (3) net funds expended; and (4) approximate losses suffered.  *See Nicolow v. Hewlett Packard Co.*, No. 12-cv-05980-CRB, 2013 WL 792642, at \*4 (N.D. Cal. Mar. 4, 2013).  Of the four factors, the fourth (losses suffered) is the "most important."  *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 WL 2654351, at \*3 (N.D. Cal. May 10, 2016); *see also Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1059 (N.D. Cal. 2018) ("While the PSLRA does not specify how to calculate the largest financial interest, approximate losses in the subject securities is the preferred measure.") (citing *Bruce v. Suntech Power Holdings Co.*, No. 12-cv-04061-RS, 2012 WL 5927985, at \*2 (N.D. Cal. Nov. 13, 2012)).

To determine losses suffered, the "weight of authority" dictates that the last-in-first-out (or "LIFO") methodology is most appropriate.  *See Hewlett Packard*, 2013 WL 792642, at \*4; *Bodri v. Gopro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at \*3 (N.D. Cal. Apr. 28, 2016) (same). Indeed, LIFO is the preferred accounting method because it "has been used not only for lead plaintiff calculations, but also to determine compensation amounts for stockholders suffering

RALPH MARTINEZ'S OPPOSITION TO COMPETING MOTIONS
Case No. 4:19-cv-08051-JSW                                                                                  3

losses due to securities fraud." *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005).[2]

As an alternative to losses suffered, a minority of courts in this District have emphasized the "net shares purchased" factor and the related retained shares loss calculation. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) ("[T]he candidate with the most net shares purchased will normally have the largest potential damage recovery."); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-03451-LHK, 2011 WL 566814, at *6 (N.D. Cal. Feb. 15, 2011) ("[Some] courts, utilizing what they describe as the retained shares method, look only to the number of shares purchased during the class period that are retained at the end of the class period."). Such methods, however, are less effective and typically rejected where, as here, the plaintiff alleges multiple corrective disclosures. *See* Dkt. No. 1 at 26 (complaint alleging four corrective disclosures on October 5, 2018, November 1, 2018, March 4, 2019 and September 30, 2019); *Gopro*, 2016 WL 1718217, at *3 ("[N]et shares purchased and a retained shares calculation are less useful analytical tools where, as here, gradual disclosures are involved, because those methods assume a constant fraud premium throughout the class period.") (internal quotation marks omitted); *Network Associations*, 76 F. Supp. 2d at 1027 (the "net shares purchased" approach "gets into trouble only if the amount of the 'fraud premium' varied over the course of the class period").

Regardless of what method is used, Martinez has by the far the largest financial interest whether measured by the "losses suffered" factor, the "net shares purchased" factor, or the "net funds expended" factor, as illustrated in the following chart:[3]

---

[2] A minority of courts have considered first-in-first-out ("FIFO") losses instead of LIFO losses, or both FIFO and LIFO losses together. *See, e.g.*, *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009) (considering FIFO losses); *Query v. Maxim Integrated Prod., Inc.*, 558 F. Supp. 2d 969, 974 (N.D. Cal. 2008) (considering both LIFO and FIFO losses). In the recent past, however, "courts have preferred LIFO and have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases." *McGee v. Am. Oriental Bioengineering, Inc.*, No. 12-cv-5476-SVW-SH, 2012 WL 12895668, at *3 (C.D. Cal. Oct. 16, 2012) (citing *eSpeed*, 232 F.R.D. at 101).

[3] All loss values are normalized using the same 90-day average. *See* 15 U.S.C. § 78u-4(e) (Limitation on Damages).

---

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | Net Loss (LIFO) |
|---|---|---|---|---|
| Ralph Martinez | 18,350 | *12,525* | *-$374,872.25* | *-$314,493.67* |
| Anchorage Police and Fire Retirement System | 11,352 | 8,633 | -$163,308.44 | -$121,486.36 |
| Sayed Ali M. Zaidi | *49,703* | 8,900 | -$119,026.67 | -$76,122.93 |
| Miles Healey | 2,000 | 2,000 | -$68,550.00 | -$58,908.71 |
| Daniel Menacho | 1,135 | 0 | -$17,885.83 | -$17,885.83 |
| Matthew Shanks | 400 | 400 | -$11,960.00 | -$10,031.74 |

Accordingly, Martinez has the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).[4] Since Martinez also satisfies the requirements of Rule 23, he is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### C.    The Presumption That Martinez Is The Most Adequate Plaintiff Has Not Been Rebutted

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No proof has been presented that Martinez would be inadequate or subject to unique defenses. Moreover, Martinez is not aware of any possible basis for such a contention. As such, he should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status.").

The Court should reject any movant's request that the Court conduct a comparative analysis between the movants and/or require movants to provide assorted additional information

---

[4] While Martinez does not have the greatest amount of gross shares purchased, this factor is given minimal weight since it often includes shares that were not impacted by the fraud, such as shares that were purchased and then sold before a corrective disclosure. *See Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, No. 16-cv-02400-AT-SN, 2016 WL 11648466, at \*1 (S.D.N.Y. Nov. 29, 2016) ("the number of shares purchased [is] the least important."). This is exactly the situation here, where Sayed Ali M. Zaidi's gross share figure is substantially inflated by shares that were sold before the corrective disclosure and were not damaged.

---

RALPH MARTINEZ'S OPPOSITION TO COMPETING MOTIONS
Case No. 4:19-cv-08051-JSW                                                                  5

regarding their sophistication and resources. *In re Cavanaugh*, 306 F.3d 726, 731-32 (9th Cir. 2002) ("Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals. Here, the Reform Act provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy."); *eSpeed*, 232 F.R.D. at 98-99 ("The lead plaintiff determination does not depend on the court's judgment of which party would be best lead plaintiff for the class, but rather which candidate fulfils the requirements of the Act.").

For example, if another movant claims that Martinez has not provided enough information about himself to make a prima facie showing of typicality and adequacy, this argument should be rejected.[5]  Martinez disclosed his name and class period transactions, which is enough to make a preliminary showing of typicality and adequacy for purposes of the lead plaintiff determination under Rule 23.  Regardless, Martinez is an ideal lead plaintiff candidate.  *See* Declaration of Ralph Martinez in Support of His Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel,[6] filed concurrently herewith.  Specifically, he has been an investment advisor for more than 35 years and has been managing his own portfolio for more than 15 years.  *See Id* at. ¶ 2.  Additionally, he is aware of and has accepted the obligations of serving as a lead plaintiff and

---

[5] There has been an uptick in this kind of specious attack on *bona fide* movants since the recent lead plaintiff rulings in *Camp v. Qualcomm Inc.* and *Karp v. Diebold Nixdorf, Inc*. However, these courts dealt with substantially flawed lead plaintiff candidates, and then found that a lack of information was a factor in rejecting their appointment. In *Camp v. Qualcomm Inc.*, movant Singh had numerous errors in his pleadings that called into question his adequacy, including (1) that he claimed in his certification that he paid $62.30 for certain shares when this price was not within the daily low or high trading prices for the stock that day, and (2) that he used the wrong loss calculation, which when corrected, reduced his losses by 30%. *See Camp v. Qualcomm Inc.*, No. 18-CV-1208-AJB-BLM, 2019 WL 277360, at \*3-4 (S.D. Cal. Jan. 22, 2019).  Similarly, the *Diebold* court was "disquieted by the errors contained in the [movant's] original submissions" including "exaggerated loss totals" of "some 34%" which "struck at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation." *See Karp v. Diebold Nixdorf, Inc*., No. 1:19-cv-06180-LAP, 2019 WL 5587148, at \*6 (S.D.N.Y. Oct. 30, 2019). The court held that these errors "taken together" with the movant's litigation inexperience undermined the adequacy of the movant. *Id*.  These courts did not hold that all movants must provide unspecified additional information regarding their litigation and securities experience.

[6] Attached as Exhibit A to the Declaration of Charles H. Linehan in Support of Ralph Martinez's Memorandum of Points and Authorities in Opposition to the Competing Motions for Appointment As Lead Plaintiff and Approval of Lead Counsel, filed herewith.

---

acting as a fiduciary for the class. *Id.* at ¶¶ 3-4. Thus, any argument that an institutional investor is more adequate than Martinez is without merit. *See Mohanty v. BigBand Networks, Inc.*, No. C 07–5101 SBA, 2008 WL 426250, at * 6 (N.D. Cal. Feb. 14, 2008) (citing cases and explaining "a plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest."); *see also Steiner v. Aurora Foods Inc.*, No. 00-CV-602, 2000 WL 33911305, at *3 (N.D. Cal. June 5, 2000) ("the PSLRA does not limit the presumption of most adequate plaintiff to institutional investors. Rather, the statute merely provides that the person or group of persons with the largest financial interest in the relief sought by the class is entitled to the presumption of most adequate plaintiff.") (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). Accordingly, Martinez should be appointed as lead plaintiff.

### D.    Martinez's Choice Of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Cavanaugh*, 306 F.3d at 733 n.11 ("Congress gave the lead plaintiff . . . the power to select a lawyer for the class."). As such, a District Court should only interfere with the lead plaintiff's choice of counsel if the choice "is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id.* at 733; *see also Gopro*, 2016 WL 1718217, at *5 (same).

Here, Martinez has selected Glancy Prongay & Murray LLP to be lead counsel. Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to efficiently and effectively conduct this litigation. *See* Dkt. No. 29-4 (Glancy Prongay & Murray LLP firm résumé). The firm has more than 20 years of experience successfully representing injured investors. *See id.* By approving his selection of counsel, the Court may be assured that the class will receive the highest caliber of legal representation. Accordingly, his selection of lead counsel for the class should be approved. *See Robb v. Fitbit*, 2016 WL 2654351, at *7 (appointing Glancy Prongay & Murray LLP as co-lead counsel).

## III.   CONCLUSION

For the foregoing reasons, Martinez respectfully requests that the Court enter an Order: (1) appointing Martinez as Lead Plaintiff; (2) approving Glancy Prongay & Murray LLP as Lead Counsel for the class; and (3) granting such other relief as the Court may deem just and proper.

DATED:  February 24, 2020                    Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:   _/s/ Charles H. Linehan_
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  clinehan@glancylaw.com

_Counsel for Movant Ralph Martinez and_
_Proposed Lead Counsel for the Class_

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.  On February 24, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 24, 2020, at Los Angeles, California.

*/s/ Charles H. Linehan*
Charles H. Linehan