COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
SHANNON M. EAGAN (212830)
(seagan@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone:   (650) 843-5000
Facsimile:   (650) 849-7400

Attorneys for Defendants,
ADAMAS PHARMACEUTICALS, INC., GREGORY T.
WENT, ALFRED G. MERRIWEATHER, RICHARD A.
KING, RAJIV PATNI, and VIJAY SHREEDHAR

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ZAIDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ADAMAS PHARMACEUTICALS, INC., GREGORY T. WENT, ALFRED G. MERRIWEATHER, RICHARD A. KING, RAJIV PATNI, and VIJAY SHREEDHAR<br><br>Defendants. | Case No.: 4:19-cv-08051-JSW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>Date:         November 6, 2020<br>Time:         9:00 a.m.<br>Courtroom:   5<br>Judge:         Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT .............................................................................................. vii

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 1

    A.    Plaintiff Cannot Defend His Puzzle Pleading. ............................................. 1

    B.    Plaintiff Fails to Allege Any False or Misleading Statement. ..................... 3

        1.    A State Case Demurrer Order Cannot Save Plaintiff's Claims. ..................... 4

        2.    Plaintiff Fails to Overcome the Safe Harbor for Forward Looking Statements. ...................................................................... 5

        3.    Plaintiff Fails to Show That the Challenged Statements of Puffery Are Actionable. .......................................................... 7

        4.    Defendants' Statements Regarding Payers and GOCOVRI's Potential Market Were Not False or Misleading When Made. ....................................... 9

        5.    Statements Regarding Physician Acceptance and GOCOVRI's Value Proposition Were Not False or Misleading. ....................................... 11

    C.    Plaintiff Fails to Allege a Strong Inference of Scienter ............................. 12

        1.    Absence of Suspicious Stock Sales Undermines Any Inference of Scienter. .......................................................................... 13

        2.    Conclusory Allegations of Contemporaneous Knowledge Are Insufficient to Plead Scienter. ....................................... 13

        3.    Plaintiff Cannot Invoke the Core Operations Theory of Scienter................. 19

        4.    Routine Departures of Executives Do Not Support an Inference of Scienter. .......................................................................... 22

    D.    Plaintiff Fails to Plead Loss Causation ..................................................... 24

III.  CONCLUSION.................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
  2020 WL 2564635 (N.D. Cal. Feb. 5, 2020) ................................................................. 5

*In re Apple Inc. Sec. Litig.*,
  2020 WL 2857397 (N.D. Cal. June 2, 2020) ................................................. 3, 11, 25

*Applestein v. Medivation, Inc.*,
  561 F. App'x 598 (9th Cir. 2014) .................................................................................. 5

*Bonanno v. Cellular Biomedicine Grp., Inc.*,
  2016 WL 2937483 (N.D. Cal. May 20, 2016) ............................................................. 25

*Brodsky v. Yahoo! Inc.*,
  592 F. Supp. 2d 1192 (N.D. Cal. 2008) ...................................................................... 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  65 F. Supp. 3d 840 (N.D. Cal. 2014) .................................................................... 15, 19

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ............................................................................. *passim*

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) .................................................................. 2, 19

*In re Copper Mountain Sec. Litig.*,
  311 F.Supp.2d 857 (N.D. Cal. 2004) .......................................................................... 16

*Costabile v. Natus Med. Inc.*,
  293 F. Supp. 3d 994 (N.D. Cal. 2018) ................................................................... 15, 18

*Costabile v. Natus Med. Inc.*,
  2018 WL 7134363 (N.D. Cal. Dec. 18, 2018) ............................................................ 12

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .......................................................................... 5, 7, 8

*Cutler v. Kirchner*,
  696 F. App'x 809 (9th Cir. 2017) ................................................................................ 15

*In re Finisar Corp. Sec. Litig.*,
  2017 WL 1549485 (N.D. Cal. May 1, 2017) ............................................................... 15

**DEFENDANTS' REPLY ISO MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT
4:19-CV-08051-JSW**

**TABLE OF AUTHORITIES**
(continued)

Page

*In re FireEye, Inc.*,
  2015 WL 13546104 (Cal.Super. Aug. 11, 2015) ........................................................................ 4

*Flynn v. Sientra*,
  2016 WL 3360676 (C.D. Cal. June 9, 2016) .............................................................................. 3

*In re Foundry Networks, Inc. Sec. Litig.*,
  2003 WL 23211577 (N.D. Cal. Feb. 14, 2003) .......................................................................... 6

*In re Fusion-io, Inc. Sec. Litig.*,
  2015 WL 661869 (N.D. Cal. Feb. 12, 2015) .............................................................................. 3

*In re GeoPharma, Inc. Sec. Litig.*,
  411 F. Supp. 2d 434 (S.D.N.Y. 2006) ...................................................................................... 19

*Glazer Capital Mgmt. v. Magistri*,
  549 F.3d 736 (9th Cir. 2002) .................................................................................................... 14

*Jiangchen v. Rentech, Inc.*,
  2017 WL 10363990 (C.D. Cal. Nov. 20, 2017) .................................................................. 1, 2, 3

*Johnson v. Costco Wholesale Corp.*,
  2020 WL 4816225 (W.D. Wash. Aug. 19, 2020) ...................................................................... 14

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...................................................................................................... 2

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
  527 F. Supp. 2d 1033 (N.D. Cal. 2007) ................................................................... 6, 8, 14, 17

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) .................................................................................................. 15

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir.2006) ....................................................................................................... 2

*Markette v. XOMA Corp.*,
  2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ......................................................................... 10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ............................................................................................. 4, 25

*Mineworkers' Pension Scheme v. First Solar, Inc.*,
  991 F. 3d 750 (9th Cir. 2018) ................................................................................................... 24

# TABLE OF AUTHORITIES
(continued)

**Page**

*Mulligan v. Impax Labs., Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ............................................................................... 8

*Nguyen v. Endologix, Inc.*,
962 F. 3d 405 (9th Cir. 2020) ................................................................... 15, 19, 24

*Norfolk County Retirement System v. Solazyme, Inc.*,
2016 WL 7475555 (N.D. Cal. Dec. 29, 2016)................................................................. 10

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) .............................................................................*passim*

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................ 4, 10, 11

*Paciga v. Invuity Inc.*,
2019 WL 3779694 (N.D. Cal. Aug. 12, 2019) ...................................................... 15

*Park v. GoPro, Inc.*,
2019 WL 1231175 (N.D. Cal. Mar. 15, 2019)...................................................... 7

*In re Peregrine Sys., Inc. Sec. Litig.*,
2005 WL 8158820 (S.D. Cal. Dec. 15, 2005)...................................................... 4

*Perrin v. Sw. Water Co.*,
2010 WL 11459200 (C.D. Cal. June 30, 2010) ................................................... 3

*In re Pixar Sec. Litig.*,
450 F. Supp. 2d 1096 (N.D. Cal. 2006) ...................................................... 3, 9, 13

*Plymouth Cnty. Contributory v. Adamas Pharms., Inc.*,
2019 WL 7900426 (Cal. Super. Dec. 17, 2019) ................................................... 4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .............................................................................*passim*

*Prause v. TechnipFMC, PLC*,
2019 WL 1211428 (S.D. Tex. Jan. 18, 2019)...................................................... 4

*Primo v. Pac. Bioscis. of Cal., Inc.*,
940 F. Supp. 2d 1105 (N.D. Cal. 2013) ...................................................... 1

*Provenz v. Miller*,
102 F. 3d 1478 (9th Cir. 1996) ...................................................... 25

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ........................................................................................ 6, 8

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014) ...................................................................................... 20, 22

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ............................................................................................ 13

*In re Rigel Pharm., Inc. Sec. Litig.*,
2009 WL 5125344 (N.D. Cal. Dec. 21, 2009) ............................................................. 2, 25

*Robb v. Fitbit Inc.*,
216 F. Supp. 3d 1017 (N.D. Cal. 2016) ............................................................................ 13

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ........................................................................................ 3, 10

*S. Ferry LP #2 v. Killinger*,
399 F. Supp. 2d 1121 (W.D. Wash. 2005) ...................................................................... 8, 12

*S. Ferry LP #2 v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009) .......................................................................... 12

*S. Ferry LP #2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) .............................................................................................. 20

*Schueneman v. Arena Pharmaceuticals, Inc.*,
840 F.3d 698 (9th Cir. 2016) ...................................................................................... 10, 13

*In re Solarcity Corp. Sec. Litig.*,
274 F. Supp. 3d 972 (N.D. Cal. 2017) ........................................................................ *passim*

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................................................... 3

*In re Stac. Elec. Sec. Litig.*,
89 F.3d 1399 (9th Cir.1996) ................................................................................................ 6

*In re Taleo Corp. Sec. Litig.*,
2010 WL 597987 (N.D. Cal. Feb. 17, 2010) .................................................................... 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................... 12, 24

v.

**DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW**

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Union Asset Mgmt Holding AG, et al. v. Sandick LLC, et al.*,
2017 WL 3097184 (N.D. Cal Jun. 22, 2017) ................................................................ 12

*In re Verisign, Inc., Derivative Litig.*,
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................................................... 14

*In re WageWorks, Inc., Sec. Litig.*,
2020 WL 2896547 (N.D. Cal. June 1, 2020) .......................................................... 13, 23

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
321 F. Supp. 3d 1133 (C.D. Cal. 2018) ........................................................................ 6

*Wozniak v. Align Tech., Inc.*,
850 F. Supp. 2d 1029 (N.D. Cal. 2012) ........................................................................ 8

*Yourish v. Cal. Amplifier*,
191 F.3d 983 (9th Cir. 1999) ...................................................................................... 10

*Zeid v. Kimberley*,
930 F. Supp. 431 (N.D. Cal. 1996) ............................................................................... 5

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .............................................................................. *passim*

*In re Zynga Inc. Sec. Litig.*,
2014 WL 721948 (N.D. Cal. Feb. 25, 2014) ........................................................... 3, 15

*In re Zynga Inc. Sec. Litig.*,
2015 WL 1382217 (N.D. Cal. Mar. 25, 2015) ............................................................. 15

**SUMMARY OF ARGUMENT**[1]

Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint ("Opposition" or "Opp.") demonstrates that Plaintiff's Amended Class Action Complaint ("FAC") fails to adequately allege a Section 10(b) or 20(a) claim against any Defendant. The FAC should be dismissed for several reasons.

***First***, Plaintiff's own cases confirm that the FAC employs impermissible "puzzle" pleading practices and therefore does not meet the particularity requirements of Rule 9(b) and the PSLRA. *Jiangchen v. Rentech, Inc.*, 2017 WL 10363990, at *5 (C.D. Cal. Nov. 20, 2017).

***Second,*** Plaintiff fails to plead a material misrepresentation or omission. Plaintiff attempts to manufacture guarantees about GOCOVRI's market and acceptance that Adamas simply did not make and the Opposition fails to identify a single document, source, or other fact to show that Defendants' ***actual*** statements were false and misleading when they were made. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017). Plaintiff also does not rebut that Defendants' forward-looking statements were accompanied by meaningful cautionary language that disclosed the risks that Plaintiff claims materialized. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010).

***Third,*** Plaintiff fails to plead particularized facts creating a "strong inference" of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14, 323–24 (2007). Plaintiff's theory is undermined by his failure to establish contemporaneous knowledge of or access to contradictory facts, as well as the absence of motive, stock sales, or suspicious departures. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009).

***Fourth,*** Plaintiff fails to adequately plead loss causation. The Opposition fails to establish that the "new revelations" Plaintiff identifies as the cause for the stock drop were not previously disclosed and known to the market. *Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 WL 2937483, at *5 (N.D. Cal. May 20, 2016).

---

[1] Unless stated otherwise, capitalized terms are defined in Defendants' Motion to Dismiss (Dkt. 70).

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**
**4:19-CV-08051-JSW**

## I.   INTRODUCTION

Much like his muddled and interminable FAC, Plaintiff's Opposition attempts to (unsuccessfully) distract from his failure to plead a viable securities claim. Rather than confront each of the statements made by Defendants, Plaintiff lumps together virtually all statements about GOCOVRI over a two-year period and attempts to manufacture out of them purported guarantees about GOCOVRI's market and acceptance by **third party** payers, physicians, and patients. But Defendants never guaranteed that GOCOVRI's coverage would be free of restrictions. Nor did they guarantee that no payers had or would impose "step" requirements. Defendants also did not guarantee that every single patient with LID would take GOCOVRI or that every single physician would prescribe it. Yet for Plaintiff's alleged facts to support falsity, those are the promises Defendants would have had to make. When Defendants' **actual** statements are examined, it is obvious that they made no such claims and instead inundated the market with warning after warning about the risks associated with the launch of a newly-approved drug like GOCOVRI. The fact that GOCOVRI's launch may not have gone as planned does not turn Defendants' statements into securities fraud and despite Plaintiff's claim otherwise, the FAC presents exactly the type of "fraud by hindsight" case that the PSLRA's pleading standards were designed to prevent.

## II.   ARGUMENT

### A.   Plaintiff Cannot Defend His Puzzle Pleading.

Plaintiff does not dispute that the FAC fits the mold of an improper puzzle pleading, nor does his Opposition address the decisions dismissing similar complaints on this ground. Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint ("Motion" or "Mot."), Dkt. 70, at 10–11 & n.9. Instead, Plaintiff points to Appendix A to Defendants' Motion—a **39 page** table listing the alleged misstatements and the reasons why each fails—and contends that his pleading failure should be excused because, in his view, Defendants deciphered the FAC well enough. Opp. at 18. Courts routinely reject that non-sensical argument. *See, e.g.*, *Jiangchen v. Rentech, Inc.*, 2017 WL 10363990, at *7 (C.D. Cal. Nov. 20, 2017) (rejecting "argument that the [complaint] is not a puzzle pleading because Defendants were able to produce" a chart consolidating the allegedly false and misleading statements); *Primo v. Pac. Bioscis. of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013)

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW

(rejecting argument that defendants rationalized the complaint "well enough to draft a motion"). Defendants' good faith attempt to parse through the allegations and determine which statements Plaintiff challenges does not relieve Plaintiff of his legal obligation to comply with Rule 9(b) and the PSLRA, which Plaintiff has failed to do here.

Moreover, and contrary to Plaintiff's contentions, Defendants do not challenge the use of bold and italic text generally (*see* Opp. at 18, n.16) but rather only where such use is entirely illogical, as it is here. *In re Rigel Pharm., Inc. Sec. Litig.*, 2009 WL 5125344, at *8 (N.D. Cal. Dec. 21, 2009) (granting motion to dismiss due to plaintiff's reliance on block-quoted paragraphs containing multiple statements—including some apparently true or unchallenged). For example, several of the statements emphasized in the FAC were made by analysts, not Defendants. *E.g.*, ¶¶ 260, 280, 315, 328.[2] Similarly, emphasis in certain statements cannot possibly suggest that the emphasized portion is being alleged as false or misleading. *E.g.*, ¶ 243 (emphasis in original) ("Parkinson's disease is a particularly ***burdensome and costly*** disease"). Plaintiff's emphasis is also internally inconsistent, and Plaintiff provides no explanation as to why the same sentence warrants bold and italicized treatment in some paragraphs and not in others. *Compare, e.g.*, ¶¶ 287, 302 (emphasizing "Patients may choose not to use GOCOVRI if coverage is not provided or reimbursement is inadequate to cover a significant portion of its cost"), *with* ¶ 252 (failing to emphasize identical language). Instead, the Court and Defendants are improperly left to speculate as to which part of the statement (if any) the Plaintiff is challenging each time. *Rentech*, 2017 WL 10363990, at *7 (dismissing complaint as a puzzle

---

[2] All references to "¶__" refer to the FAC, Dkt. 60. All emphasis is added and all citations and internal quotation marks are omitted unless otherwise stated. All exhibit references are to the Declaration of Tijana M. Brien accompanying Defendants' Motion, Dkt. 70-1. Plaintiff's Response to Defendants' Request for Judicial Notice ("RJN Response") (Dkt. 74) does not oppose Defendants' Request for Judicial Notice ("RJN") (Dkt. 71), nor does it challenge the authenticity of any Exhibit. RJN Response at 1. As such, the Court may take judicial notice of Exhibits 1–41 to "indicate what was in the public realm at the time" and not for their truth. RJN at 6. Plaintiff also does not dispute that "a document may be incorporated by reference into a complaint 'if the plaintiff refers extensively to the document *or* the document forms the basis of the plaintiff's claim.'" RNJ at 5 (citing *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018). As described in the RJN, Exhibits 1–4, 6, 9-16, 20, 23, 25–26, and 28–29, 30–34, 36–41 are "referenced extensively" throughout the Complaint and "form the basis for Plaintiff's claims," and therefore the Court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1058 (N.D. Cal. 2012) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)).

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**
**4:19-CV-08051-JSW**

pleading, in part, because of plaintiff's "inconsistent use of emphasis"); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074 (N.D. Cal. 2001) (same).[3]

The FAC also seeks to hold each Defendant liable, regardless of whether they made the statements, or were even employed at Adamas at the time the statements were made. Mot. at 11 n.10. For example, although Mr. Shreedhar did not join Adamas until May 2019 (¶ 39), the FAC seeks to hold him (and all other Defendants) liable for purported misstatements made prior to his arrival. ¶¶ 220–310. Similarly, the FAC groups Mr. King with other Defendants with respect to statements made in 2019 (¶¶ 289–328), notwithstanding the fact that Mr. King left the Company in September 2018.

Plaintiff's pleading flaws require Defendants and the Court to parse through the statements to discover which are false and misleading and why, as well as which allegedly show scienter. The FAC should be dismissed because Plaintiff's puzzle is virtually impossible to decipher. *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1101 (N.D. Cal. 2006); *In re Zynga Inc. Sec. Litig.*, 2014 WL 721948, at *2 (N.D. Cal. Feb. 25, 2014).

**B.       Plaintiff Fails to Allege Any False or Misleading Statement.**

Under the heightened pleading requirements of Rule 9(b) and the PSLRA, Plaintiff must plead "***contemporaneous*** statements or conditions" demonstrating the false or "misleading nature of the statements ***when made***." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001); *accord In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *8, *18 (N.D. Cal. Feb. 12, 2015). As explained in Defendants' Motion, the statements Plaintiff has identified as false or misleading are not actionable under the PSLRA. Mot. at 13–19. Many of the statements reflect Individual Defendants' opinions about payer determinations, physician acceptance, and GOCOVRI's value proposition or potential

[3] Plaintiff's own cases confirm that the FAC amounts to an impermissible puzzle pleading. Opp. at 18. In concluding that the complaint at issue did not create puzzle-pleading, both the *Flynn* and *Apple* courts noted that the complaint met the requisite pleading requirements because the complaint "places bold and italic emphasis on ***each allegedly misleading portion***, and follows each statement with specific reasons for why it is false or misleading. ***The reasons are specific to each statement***." *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *8 (N.D. Cal. June 2, 2020) (emphasis added); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *9 (C.D. Cal. June 9, 2016). The FAC falls far short of meeting this standard and instead employs impermissible cross-references to previous paragraphs, which in turn direct the reader elsewhere. *See* Mot. at 10; *Rentech*, 2017 WL 10363990, at *6 (the "use of cross-references is another reason to find that the [complaint] is a puzzle pleading"); *Perrin v. Sw. Water Co.*, 2010 WL 11459200, *10 (C.D. Cal. June 30, 2010) (impermissible puzzle because complaint cross-referenced previous paragraphs to explain why statements were false or misleading).

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW

market, and thus fail under *Omnicare.  See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund* 575 U.S. 175, 193 (2015).  Others are forward-looking and shielded by the PSLRA's safe harbor provision.  Still others are true, or too vague to be actionable.  The Opposition glosses over much of Defendants' authority, and, instead, simply rehashes and exaggerates allegations from the FAC.  But nothing in the Opposition undermines the arguments set forth in the Motion:  Plaintiff's FAC fails to state a claim and should be dismissed.

### 1.      A State Case Demurrer Order Cannot Save Plaintiff's Claims.

Rather than attempting to meet the pleading standards for *these* claims in *this* forum, the Opposition relies on a California superior court demurrer decision to suggest that the Court need not engage in any further assessment of the FAC.  Opp. at 6–8 (citing *Plymouth Cty. Contributory v. Adamas Pharms., Inc.*, 2019 WL 7900426, at *2 (Cal. Super. Dec. 17, 2019)).  But *Plymouth County* concerned Section 11 of the Securities Act of 1933 and was not decided under the heightened pleading standard required here.  "Unlike Section 10(b) which requires a heightened pleading standard mandated by Rule 9(b) and PSLRA, a Section 11 claim requires the general pleading standard of Rule 8 of the Federal Rules of Civil Procedure."  *Prause v. TechnipFMC, PLC*, 2019 WL 1211428, at *2 (S.D. Tex. Jan. 18, 2019); *see also In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158820, at *4 (S.D. Cal. Dec. 15, 2005) ("Section 11 is not governed by the heightened pleading standards of the PSLRA.").  Plaintiff attempts to sidestep the issue by claiming that the "falsity" requirement under Section 11 "is identical" to that of Section 10(b).  Opp. at 7 n.3.  But even assuming that were the case, the standard by which a complaint's sufficiency is measured could not be more different.[4]  To satisfy the standard under Rule 9(b) and the PSLRA, Plaintiff must meet "formidable pleading requirements" including the PSLRA's "exacting requirements for pleading 'falsity.'"  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1054–55, 1070 (9th Cir. 2008).  Here, Plaintiff has failed to allege the particularized facts of the "who, what, when, where, and how' of the misconduct alleged."

---

[4] *Plymouth*, 2019 WL 7900426, at *1 (noting that a complaint need only "alleges facts sufficient to state a cause of action" and "in testing a pleading against a demurrer the facts alleged in the pleading are deemed to be true, however improbable they may be" and will be "construe[d] . . . 'liberally'"); *In re FireEye, Inc.*, 2015 WL 13546104, at *12 (Cal. Super. Aug. 11, 2015) ("There appear to be no published cases in California applying the *Twombly/Iqbal* pleading standards to a Section 11 or Section 12(a)(2) action filed in state court").

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW

*In re Alphabet, Inc. Sec. Litig.*, 2020 WL 2564635, at *2 (N.D. Cal. Feb. 5, 2020). Nor has he "specif[ied] each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" or "'stat[ed] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind' to allege the element of scienter." *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014). These failures warrant dismissal.

### 2. Plaintiff Fails to Overcome the Safe Harbor for Forward Looking Statements.

Defendants' Motion identified many statements that fall within the PSLRA's Safe Harbor. *See* Mot. at 12. These include statements regarding Defendants' goals for market penetration and growth estimates for GOCOVRI's LID indication and future MSWI indication, Mot. at 18 (*e.g.*, ¶¶ 224, 289, 294, 296, 300), as well as Defendants' expectations regarding the likelihood of future patient, physician, and payer acceptance. Mot. at 12 (*e.g.*, ¶¶ 220, 228, 290). Plaintiff does not address the cases cited in Defendants' Motion, nor does he seriously dispute that each of these statements was prefaced with substantial cautionary language.[5]

Given the extensiveness of Adamas' risk disclosures, Plaintiff instead claims that they were false for not going far enough. Opp. at 14. Specifically, Plaintiff argues that Adamas should have said the cited adverse factors "are" negatively impacting the business, rather than that they "may" impact the business, because Adams knew or should have known that the noted risks were certainties. *Id.* Courts in this District have repeatedly rejected this argument:

> Plaintiffs argue that Firefox should not have stated that certain adverse factors *may* effect the financial statements, but rather it should have said they *are* effecting Firefox's business. Plaintiffs' argument is absurd. Defendants' warnings regarding potential adverse factors are not actionable as a matter of law. Plaintiffs do not assert that any of the warnings were without basis or wrong. Instead, Plaintiffs assert that the warnings should have been more specific. Section 10(b) and Rule 10b-5 are designed to protect against false and misleading statements, not statements that are too abstract.

---

[5] Indeed, each of the challenged statements made during investor calls was accompanied by disclaimers that are virtually identical to the cautionary language approved by the Ninth Circuit. Mot. 12–13 n.13; *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014); *In re Cutera*, 610 F.3d 1103, 1112 (9th Cir. 2010). As for the challenged statements in the Company's annual and quarterly filings, Adamas articulated, in significant detail, the risks inherent in investing, including those concerning payer coverage determinations and physician acceptance. Mot. at 4–7 (identifying risks disclosed by Adamas).

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW

*Zeid v. Kimberley*, 930 F. Supp. 431, 437 (N.D. Cal. 1996) (emphasis in original); *see also In re Foundry Networks, Inc. Sec. Litig.*, 2003 WL 23211577, at *10 (N.D. Cal. Feb. 14, 2003) (rejecting argument that risk disclosure that "revenue 'may' be adversely affected" was misleading because "defendants already knew that demand had softened" and revenue was stagnant); *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1048 (N.D. Cal. 2007) (same).  This is particularly true where, as here, the risk factors at issue concern the future decisions by third parties.  *See Foundry*, 2003 WL 23211577, at *10 ("[A]nother company's plans cannot be known to a certainty[.]" (quoting *In re Stac. Elec. Sec. Litig.*, 89 F.3d 1399, 1406 (9th Cir. 1996)).

Ignoring the unmistakable forward-looking nature of Adamas' statements, Plaintiff argues that no cautionary language is sufficient because an unidentified number of these statements are "mixed" with "statements of then existing fact."  Opp. at 16 (citing ¶¶ 220, 228, 296).[6]  As an initial matter, Plaintiff does not explain how or why many of the challenged statements are misleading.[7]  But even assuming that certain of the statements challenged in the FAC rest on assumptions about historical fact, that does not disqualify them from the Safe Harbor, as Plaintiff urges.  *Intuitive Surgical*, 759 F.3d at 1059 (rejecting similar argument, holding statements "examined as a whole," "relate[] to future expectations and performance").  Indeed, if Plaintiff's argument were correct, no statement could ever qualify because every statement is inherently based on some sort of historical fact.  But that is not the law.  *See, e.g.*, *Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1148–51 (C.D. Cal. 2018) (statements "related to future expectations and performance" of the company fall within the safe harbor); *Park v. GoPro, Inc.*, 2019 WL 1231175, at *18–19 (N.D. Cal. Mar. 15, 2019)

---

[6] Plaintiff's reliance on *Quality Systems* is misplaced. There, defendants offered a "concrete description of the past and present state of the pipeline," including, for example, reassuring investors that the sales pipeline "continues to build to record levels" when the defendants actually knew the company's sales were declining. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143–44 (9th Cir. 2017). Further, the CWs in that case included multiple high-ranking officers and a director that alleged defendants were aware of these declining sales figures at the time these statements were made. *Id.* at 1145–46.  The defendant CEO also sold 87% of his holdings and admitted that the company would be forced to change its business model. *Id.* Adamas' clearly forward-looking statements, coupled with low-level CWs with limited or no contact with any Individual Defendant, and the lack of suspicious stock sales come nowhere close to the allegations of *Quality Systems*. *See, infra*, Part II.C.

[7] For example, Plaintiff does not deny the truth of Adamas' statements that: "[w]e've obviously done a fair amount of assessment of [GOCOVRI] with physicians and payers," (¶ 220) "we have also begun our outreach to payers," (¶228) or that "four of the top ten payers have made affirmative coverage determinations." ¶237.

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT 4:19-CV-08051-JSW**

(company's mixed statements setting forth the defendants' "plans for improved profitability and financial projections are examples of forward-looking statements protected by the Safe Harbor").

And even setting aside whether the forward looking statements were accompanied with meaningful cautionary language, Plaintiff cannot state a claim based on these statements because the FAC does not allege that any of them were made with "actual knowledge" that they were false, which is a second and independent requirement under the Safe Harbor. *Cutera*, 610 F.3d at 1112. Nowhere, for example, does the FAC allege that Defendants were actually aware that any of the "outreach" payers spoken to were not interested in GOCOVRI "as a first in indication medicine for dyskinesia patients." Opp. at 16 (citing ¶ 228). Nor does it allege facts showing that Defendants knew of any specific data that contradicted the Company's growth estimates, much less that such data precluded Defendants' opinion statements that physician and patient feedback regarding "the impact that GOCOVRI has on people's lives" is "overwhelmingly positive" and "animated." Opp. at 16 (citing ¶ 228). Specific and detailed allegations are necessary to demonstrate "actual knowledge"—but they are fatally absent from the FAC.[8] *See Cutera*, 610 F.3d at 1111–13.

### 3. Plaintiff Fails to Show That the Challenged Statements of Puffery Are Actionable.

Defendants' Motion also shows that many of the challenged statements are classic examples of inactionable corporate puffery. Mot. at 16, 19–20; (*e.g.*, ¶¶ 239, 243, 246, 265, 270, 279). In doing so, Defendants never suggested, as Plaintiff claims, that "no reasonable investor would consider 'physician views or experiences with GOCOVRI' as important to their investment decision." *See* Opp. at 12. Certainly, such information could be important depending on its context and framing. But the Opposition provides no discernable explanation as to how Defendants' statements regarding their expectation of "broad coverage" or their characterization of physician feedback as "strong," "overwhelmingly positive," or "well-received," are not puffery.[9] In fact, unable to distinguish any of

---

[8] As set forth below, none of the Former Employee ("FE") allegations support the finding of "actual knowledge" for any Defendant. *See, infra*, Part II.C.2.

[9] Defendants never suggested that *all* challenged statements are puffery, so it is unclear what Plaintiff claims "Defendants now concede." *See* Opp. at 17.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW

the numerous cases cited on this point in Defendants' Motion,[10] Plaintiff tries to dodge the issue by arguing that courts are reluctant to hold that statements are puffery at the pleading stage. Opp. at 18 (citing *South Ferry LP #2 v. Killinger*, 399 F. Supp. 2d 1121, 1129 (W.D. Wash. 2005) and *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014)). But Plaintiff's proposed standard finds no support in law,[11] and courts within the Ninth Circuit routinely dismiss claims on precisely this basis. Mot. at 16; *see, e.g.*, *Cutera*, 610 F.3d at1112 (affirming dismissal of complaint on the basis of puffery); *Mulligan*, 36 F. Supp. 3d at 967 n.2 (cited in Opp. at 18) (finding that two challenged statements were nonactionable puffery and dismissing claims).

Plaintiff's argument that "context" renders the challenged puffing statements actionable fares no better. *See* Opp. at 17–18. Each of the cases Plaintiff cites concerned statements that were far more specific and concrete than the statements at issue here or included representations of concrete fact (and were not immaterial puffery for that reason). In *Quality Systems*, for example, the Ninth Circuit held that a CEO's statements that, inter alia, "more than 75% of the midsize practice market is still fair game for new system sales" and "[t]here is nothing drying up and there is nothing slowing down" was not puffery because each statement constituted "a concrete description of the past and present state of the pipeline" and specifically "reassured investors ... that the number and type of prospective sales in the pipeline was unchanged, or even growing, compared to previous quarters." 865 F.3d at 1143–44. Similarly, in *Mulligan*, the court held that statements reassuring investors that a company's responses to an FDA letter concerning manufacturing problems preventing the sale of its products were "well underway" or "nearly completed"—when it was clear that defendants knew the company would be unable to address the identified issues— were not puffery. 36 F. Supp. 3d at 968. Here, in contrast, Plaintiff does not point to any context that lends verifiable objectivity to any of the statements at issue. Plaintiff's say-so is not enough. The puffery statements are all inactionable.

[10] Mot. at 16; *see, e.g.*, *Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012). (statement "so far we're getting really great feedback" constitutes "non-actionable puffing"); *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal. 2017) ("our demand indicators are strong, our product portfolio is robust" not actionable).

[11] *See Leapfrog*, 527 F. Supp. 2d at 1050–51 (rejecting identical argument, noting *South Ferry* "did not purport to set a minimum threshold").

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW

**4.      Defendants' Statements Regarding Payers and GOCOVRI's Potential Market Were Not False or Misleading When Made.**

Amongst a slew of warnings related to risks around payer coverage determinations and their impact on GOCOVRI's success, Adamas warned that "although no payer has done so to date, a payer may determine to require patients to use other formulations of amantadine for dyskinesia (even though it is not approved for that indication) prior to receiving reimbursement for GOCOVRI." ¶¶ 235, 241, 252. Plaintiff claims that this statement was false because some payers "had already required some sort of step therapy" when this statement was made. Opp. at 8. But, the FAC admits, a "step" can take any number of forms, including "a showing that the cheaper alternative was not effective or well tolerated" in order "to prove medical necessity or to gain prior authorization," or it "may be an independent requirement." ¶ 114. Despite Plaintiff's suggestion to the contrary, Adamas never said that no payers had or never would require "some sort of step therapy." Instead it warned of a specific situation whereby a payer would require that *the only way* a patient could obtain reimbursement for GOCOVRI would be if a physician first prescribed amantadine IR *for dyskinesia* (an off-label indication) prior to prescribing GOCOVRI. Plaintiff fails to identify any payers that, to Adamas' knowledge,[12] had imposed such a requirement, and he certainly cannot render this statement false or misleading by merely claiming that some payers had imposed "some sort of step therapy."[13]

Plaintiff next argues that opinions expressed by Defendants regarding payer coverage were misleading because Defendants did not "disclose" that Adamas (1) "did not *sufficiently* differentiate" GOCOVRI from the generic during presentations to payers, and (2) that "payers *would*" exclude

---

[12] Even assuming that Adamas was discussing the types of coverage requirements Plaintiff points to, the only reasonable interpretation of this statement is that Adamas was speaking only to the third party determinations it was aware of, and as discussed below, Plaintiff has failed allege any facts indicating knowledge or deliberate recklessness of these facts. *See, infra,* Part II.C; *see also In re Pixar Sec. Litig.,* 450 F. Supp. 2d 1096, 1103 (N.D. Cal. 2006).

[13] For example, none of the coverage determinations identified by Plaintiff first required a prescription of amantadine IR *for dyskinesia* prior to reimbursing a prescription for GOCOVRI. *See* ¶ 127. Most allowed a physician to get around an amantadine IR prerequisite by attesting to a contraindication or medical justification (*see* FAC, Ex. A & H) or an "intolerance to" amantadine IR (*see* FAC, Ex. D & F). And even those payers that required some prior experience with amantadine IR did not require that a physician first prescribe amantadine IR *for dyskinesia* prior to prescribing GOCOVRI (*see* FAC, Ex. E & G). Finally, Exhibits B and C of the FAC reflect only "recommendations" of pharmacy committees and there is no indication of when (or if) any coverage restrictions were actually imposed.

GOCOVRI or require step therapy. Opp. at 9, 10. Without identifying a single document, source, or other fact to demonstrate Defendants' statements were not honestly believed to be accurate at the time, Plaintiff argues that Adamas nonetheless should have known of each and every payer's *future* coverage determination regarding GOCOVRI because it had conducted some payer research and outreach. Put another way, Plaintiff faults Defendants for failing to disclose future events that would purportedly render their opinion incorrect. This is classic "fraud by hindsight" prohibited by the PSLRA. *Ronconi*, 253 F.3d at 430 n.12; *Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555 (N.D. Cal. Dec. 29, 2016).[14]

As the Ninth Circuit explained, "falsity under an omissions theory [is] 'no small task for an investor.'" *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017) (quoting *Omnicare*, 575 U.S. at 194). In fact, to plead an actionable opinion statement, plaintiff "must . . . 'identify[] particular (and material) facts going to the basis for the [defendant's] opinion—facts about the inquiry the [defendant] did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement…misleading to a reasonable person reading the statement fairly and in context.'" *Id.* Yet, Plaintiff makes no effort to satisfy this requirement. It is not enough that a defendant "knows, but fails to disclose, some fact cutting the other way,' because '[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts.'" *Id.* Because Plaintiff does not plead any "contemporaneous facts" establishing a "contradiction" between Defendants' statements and "reality" his opinion argument fails.[15] *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 998 n.17 (9th Cir. 1999). Plaintiff also fails to adequately allege, as he must, that "Defendants 'did not hold the belief [they] professed and that the belief is objectively untrue.'" *See Markette v. Xoma Corp.*, 2017 WL 4310759, at *5 (N.D. Cal. Sept. 28, 2017) (quoting *Align Tech.*, 856 F.3d at 615–16). Speculation and conclusions do not satisfy the

---

[14] Plaintiff's reliance on *Schueneman v. Arena Pharmaceuticals, Inc.* is misplaced. 840 F.3d 698, 706 (9th Cir. 2016) (cited in Opp. at 9). There, a drug company told investors that "all [of its] animal studies" supported FDA approval, without disclosing that the FDA had raised concerns about a study where rats were getting cancer. *Id.* at 708. Here, Plaintiffs does not allege any specific studies or concerns that Adamas failed to disclose, but instead assails Defendants for failing to *predict* concerns.
[15] Plaintiff fails to explain how statements made on August 8, 2017 (¶¶ 220-221) and September 18, 2017 (¶ 226) were false or misleading because of coverage determinations alleged to have been *after the statements had been made*. ¶ 127.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW

PSLRA and these statements are inactionable. *See Align Tech.*, 856 F.3d at 619 (conclusory allegation is insufficient to "serve as an omission of fact that sufficiently pleads falsity").

### 5.   Statements Regarding Physician Acceptance and GOCOVRI's Value Proposition Were Not False or Misleading.

Remarkably, having argued that Defendants' opinion statements must be read in "context" (Opp. at 1), Plaintiff cherry picks fragments of a sentence to suggest Defendant King's feeling of confidence in Adamas' ability to differentiate GOCOVRI from amantadine IR was somehow based on the false premise that Adamas conducted a head-to-head study between GOCOVRI and amantadine IR. *Id.* But Defendant King said no such thing, stating only that "there's plenty of data with *our* product in *our* label to support the fact that it's very effective, that it's manageable." ¶ 230. And, as Plaintiff admits in the FAC, the fact that there was no head-to-head study between GOCOVRI and amantadine IR was publicly-known since August 2017. ¶ 81. Plaintiff alleges no facts to suggest that Defendant King did not "feel comfortable and confident" that GOCOVRI's data and dosing would allow it to compare GOCOVRI to amantadine IR "in the minds of physicians" and as such, he fails to allege that the statement was false.

Plaintiff complains about Defendants' alleged failure to disclose "that prescribing doctors did not view GOCOVRI as more effective than the generic" Opp. at 11 (citing ¶¶ 227, 254), but Plaintiff alleges no facts suggesting that this allegedly undisclosed "fact" rendered any of Defendants' opinions false or misleading. Even if "some" physicians consulted prior to launch said GOCOVRI "sounded just like amantadine," Adamas never promised that *all* physicians would view GOCOVRI a certain way. ¶ 96; *see also Omnicare*, 575 U.S. at 189–90; *see also* Mot. at 17. Finally, Plaintiff misconstrues Adamas' statement that its fourth quarter prescriber totals were "without sales-based promotional efforts," (Opp. at 12) into some sort of guarantee that none of the initial prescribers had ever been in contact with Adamas. But, Adamas was simply making clear that as of December 31, 2017 Adamas did not yet have an active sales force. Mot. at 4. Plaintiff cannot turn that statement of fact into some sort of guarantee about who comprised GOCOVRI's prescriber base. *See Apple*, 2020 WL 2857397, at *10. Defendants did not make the guarantees that Plaintiff attempts to attribute to them and therefore

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT 4:19-CV-08051-JSW**

none of Defendants' statements about physicians and GOCOVRI's value proposition are actionable.[16]

### C.   Plaintiff Fails to Allege a Strong Inference of Scienter.

Essentially conceding that its individual allegations are not enough to establish a strong inference of scienter, Plaintiff focuses solely on the collective analysis, claiming that "when considered holistically [its allegations] raise an inference of scienter." Opp. at 19. But in fact, the FAC is devoid of any particularized facts suggesting that any Defendant knew or was deliberately reckless in not knowing that the challenged statements were false or misleading when made. A few mundane executive departures, vague allegations of knowledge by FEs,[17] and misplaced reliance on the core operations theory fail to create any inference of scienter, let alone a strong inference. Rather, taking Plaintiff's allegations as a whole, the far more compelling inference is that Defendants were genuinely, though cautiously, optimistic about the prospects of GOCOVRI based on its recent FDA approval and initial payer and physician response. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*

---

[16] Plaintiff also fails to explain how statements regarding market expectations for GOCOVRI were false or misleading. Mot. at 18. The Opposition does not dispute that a majority of these challenged statements are unquestionably forward-looking. Opp. at 13. Instead, Plaintiff claims Defendants' opinion that GOCOVRI "is appropriate for all patients" (¶ 229) is false because FEs "expressed" a belief "that a majority of LID patients … did not want or need to be treated for dyskinesia." Opp. at 13. This argument fails because Plaintiff does not explain how any of the FEs' claims render opinions about the "appropriateness" of using GOCOVRI across all LID patients false or misleading.

[17] The very details of "titles, job responsibilities, employment dates, and reporting lines" pled in the FAC demonstrate that nearly all of the FEs were **not** "positioned to know the information alleged." *Zucco,* 552 F.3d at 996. In fact, Plaintiff does not dispute that four of the six FEs had no direct contact with any of the Individual Defendants, but rather claims that such contact "is not necessary." Opp. at 25. However, the lack of direct contact makes it **extremely** unlikely that any of these FEs could have insight into the information available to the Individual Defendants, let alone the Individual Defendants' mental state. *See Costabile v. Natus Med. Inc.,* 2018 WL 7134363, at *5 n.5 (N.D. Cal. Dec. 18, 2018) (finding problematic the fact that there were "no allegations that three of the four confidential witnesses had any direct contact with Defendants"). And neither of the cases Plaintiff cites give a blanket blessing to all CW statements. Opp. at 25. In *Union Asset Management Holding AG v. SanDisk LLC,* plaintiffs alleged that a certain confidential witness learned directly from his supervisor that the supervisor discussed those reports with the individual defendants. 2017 WL 3097184, at *2 (N.D. Cal. June 22, 2017). No similar facts are alleged here. In *South Ferry,* the court's analysis focused on defendants' statements indicating actual knowledge and stock sales, rather than any confidential witness statements, noting that "the confidential witness statements only suggest scienter if the core operations inference helps them to do so." *S. Ferry LP #2 v. Killinger,* 687 F. Supp. 2d 1248, 1254 (W.D. Wash. 2009). Tellingly, Plaintiff also fails to address the fact that five out of the six FEs (FE1, FE2, FE3, FE4, FE6) left Adamas **before** a number of the alleged misstatements were even made. Mot. at 22. Nor does Plaintiff explain how allegations by FEs who were no longer at the Company when statements were made could ever be anything more than unsubstantiated speculation. *Brodsky v. Yahoo! Inc.,* 592 F. Supp. 2d 1192, 1201 (N.D. Cal. 2008) ("This type of temporal gap belies the credibility of Plaintiffs' allegations").

551 U.S. 308, 324 (2007) ("the inference of scienter must be more than merely 'reasonable' or 'permissible'" it must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged").  As such, the FAC should be dismissed.

### 1.    Absence of Suspicious Stock Sales Undermines Any Inference of Scienter.

The absence of any stock sales in this case severely undercuts any inference of scienter.  *Pixar*, 450 F. Supp. 2d at 1107 ("the absence of insider trading by a defendant is highly relevant and undermines any inference of scienter.").[18]  Desperate to show some "sales," Plaintiff now claims that Adamas' Second Public Offering can support an inference of scienter.  Opp. at 28.  But the Ninth Circuit has "cautioned securities plaintiffs that, absent some truly compelling allegations, we will not consider routine business behavior (like . . . raising capital) to serve as the basis for scienter" because "[h]olding otherwise would support a finding of scienter for any company that seeks to enhance its business prospects."[19]  *Schueneman*, 840 F.3d at 709 (citing *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884–85 (9th Cir. 2012) ("[A]llegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter.")).  Plaintiff cannot escape the lack of suspicious stock sales.

### 2.    Conclusory Allegations of Contemporaneous Knowledge Are Insufficient to Plead Scienter.

To support a strong inference of scienter Plaintiff must do more than summarily plead knowledge of the allegedly omitted or contradictory facts.  To be actionable, Plaintiff must plead that the Individual Defendant knew that the statement was false or misleading, or must demonstrate "a

---

[18] Plaintiff's argument that "scienter can be established even if [Defendants] did not sell stock" (Opp. at 28) does not negate that lack of stock sales by Individual Defendants tends to undermine any inference of scienter.  *Solarcity*, 274 F. Supp. 3d at 1011 ("lack of any stock sale by individual Defendant during the Class Period . . . supports an inference of no scienter").

[19] The cases cited by Plaintiff do not hold otherwise.  As an initial matter, in neither case did the plaintiffs make the non-sensical argument Plaintiff pushes here–that a company's offering of shares could serve as evidence of a suspicious stock sale.  Moreover, in *Fitbit*, the court rejected that the "incentive to [inflate the stock price]" could be sufficient to independently establish scienter.  *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1030 (N.D. Cal. 2016).  And in contrast to the facts alleged here, in *WageWorks*, the court relied on significant other evidence of scienter, including that defendants' resignations were announced in the same press release "that reiterated that the company's financial statements [were] unreliable and need[ed] to be restated" and the company's auditor calling for the resignation of one of the defendants and stating that it could not rely on defendants' representations.  *In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at *6 (N.D. Cal. June 1, 2020).

highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."[20]  *Zucco,* 552 F.3d at 991; *LeapFrog,* 527 F. Supp. 2d at 1044 (contrary argument "conflate[s] a purported showing of falsity with a showing of requisite scienter").  Instead of specific facts plead with particularity, here, the "allegations about [I]ndividual Defendants' contemporaneous knowledge [are] . . . merely speculative." *Solarcity*, 274 F. Supp. 3d at 1011.

**Payer Support.**  Plaintiff repeatedly claims that Defendants "knew that many payers did not support GOCOVRI."  Opp. at 19.  To support this vague and conclusory assertion, Plaintiff relies on public statements in May and August of 2017 (prior to GOCOVRI's FDA approval and commercial launch) that Adamas had conducted market research and was beginning to reach out to payers.  Opp. at 19–20.  Missing are any allegations describing exactly ***what*** information (if any) was obtained ***by each Individual Defendant*** as a result of this research and during these meetings, and ***why*** this information directly contradicted public statements, or ***why*** defendants knew that failure to disclose those facts "presented a danger of misleading" the market.  *See NVIDIA*, 768 F.3d at 1053 ("[T]he danger of misleading buyers must be actually known or so obvious that any reasonable man would be legally bound as knowing.").

Allegations that "Defendants received . . . reimbursement information," "reports," and "feedback" are equally unavailing.  Opp. at 20.  Again, Plaintiff fails to include any details as to ***what*** this reimbursement information consisted of, ***which*** Individual Defendant(s) received this information,

---

[20] Plaintiff also impermissibly engages in group pleading, repeatedly claiming that "Defendants knew" or "Defendants received," instead of identifying particularized "fact[s] showing ***what each defendant*** knew, ***when*** he/she knew it, or ***how*** he/she acquired that knowledge." *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007) (emphasis added).  Although, as Plaintiff notes, the Ninth Circuit has left open the possibility of pleading collective scienter (Opp. at 18 n. 17), it has not actually applied the doctrine to date.  And the Ninth Circuit has created a nearly impossible standard for prevailing under such a theory, citing as a hypothetical case "General Motors announc[ing] that it had sold one million SUVs in 2006, and the actual number was zero." *Johnson v. Costco Wholesale Corp.*, 2020 WL 4816225, at *4 n.10 (W.D. Wash. Aug. 19, 2020) (citing *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062–63 (9th Cir. 2014).  The facts in this case do not rise to that level—this case does not include statements "so important and so dramatically false" that could create a strong inference that "some corporate officials knew of the falsity upon publication" of the challenged statements. *Glazer Capital Mgmt. v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008).

and ***when*** (if ever) this information was received. *Nguyen v. Endologix, Inc.,* 962 F. 3d 405, 416 (9th Cir. 2020) ("[N]egative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading requirements of the PSLRA." (quoting *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002)); *Paciga v. Invuity Inc.,* 2019 WL 3779694, at *6 (N.D. Cal. Aug. 12, 2019) (allegations that defendants had "access to data and weekly meetings" insufficient if they "fail[] to identify specific negative information garnered from these meetings and reports that contradicted Defendants' public statements.").

Moreover, the FE allegations add nothing more than vague and conclusory statements that are untethered to the knowledge of any of the Individual Defendants. *See, e.g.,* Opp. at 25 ("some payers would require," and one low-level employee's "prescriptions . . . were often denied"). Courts routinely hold these types of vague and conclusory allegations insufficient.[21] *See NVIDIA*, 768 F.3d at 1061 (unspecific and speculative accounts cannot contribute to an inference of scienter); *Costabile v. Natus Med. Inc.,* 293 F. Supp. 3d 994, 1015 (N.D. Cal. 2018) (finding CW's statement that "vaguely refers to a 'history of difficulties' regarding payments . . . without providing any detail regarding the nature or pervasiveness of those difficulties" insufficient).

And the only two FE allegations that arguably give some level of detail on the information allegedly "received," (Opp. at 20) still fall short. FE5 claims that "20-30% of prescriptions . . . in the first quarter of 2018 were denied in part due to step therapy." Opp. at 20 (citing ¶ 138). Not only is

---

[21] The cases cited by Plaintiff are easily distinguishable. In *Cutler*, the court emphasized the CW's personal knowledge because he was one of twelve individuals who participated in "every single quarterly executive board meeting" and therefore had firsthand knowledge of who was present at the meetings and "management's exposure to factual information within the company." *Cutler v. Kirchner*, 696 F. App'x 809, 815 (9th Cir. 2017). Similarly, in *Zynga*, the CW allegations included details about which specific reports were available, what the reports included, and that the reports were readily accessible and "automatically reported . . . on a real-time basis." *In re Zynga Inc. Sec. Litig.*, 2015 WL 1382217, at *7 (N.D. Cal. Mar. 25, 2015). And in *Finstar*, one of the CWs was "personally involved in making" the types of purchases at issue and therefore had personal knowledge as to what information was disclosed during the transaction. *In re Finisar Corp. Sec. Litig.*, 2017 WL 1549485, at *6 (N.D. Cal. May 1, 2017). By contrast, the Complaint here lacks the details necessary to "establish the former employees' personal knowledge of the Defendants' state of mind." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 859 n.8 (N.D. Cal. 2014), *aff'd*, 856 F.3d 605 (9th Cir. 2017).

**DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**
**4:19-CV-08051-JSW**

this statement consistent with Adamas' statements that it expected "broad coverage,"[22] but Plaintiff glosses over the fact that FE5's sales territory included only the San Antonio and South Texas region and the FAC contains no allegation that a single Individual Defendants received such information. But even assuming it did, Plaintiff has failed to plead that the Individual Defendants knew (or it was so obvious that they had to have known) that investors would be misled if they did not share a 70–80% reimbursement rate in this single area. FE3's allegation that "half of [his] prescriptions . . . were held up due to requirements for previous generic amantadine use" suffers from the same flaws. Opp. at 20 (citing ¶ 139). FE3, whose territory consisted of **portions** of North Carolina, does not state **when** or for **how long** these prescriptions were delayed, or what it meant for a prescription to be "held-up." Opp. at 20. Furthermore, without any indication of how many prescriptions FE3 and FE5's territories sold compared to other sales representatives' territories, it is impossible to compare the overall impact of this information and thus impossible to determine whether the Individual Defendants could have been reckless in not knowing or failing to disclose such information. Accordingly, these allegations do not support an inference of scienter because the FAC "lacks critical information about whether the statement[s] refer[] exclusively to the" sales representatives "market," "how many" payers imposed these restrictions, and "how much and when" payers were imposing these restrictions. *Intuitive Surgical*, 759 F.3d at 1063; *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 867–68 (N.D. Cal. 2004) ("[W]ithout sufficient detail regarding the amount of reductions in customer orders, it is not possible to know the scope of the impact of such reductions on [the] business . . . And without knowing the precise timing of such reductions, it is impossible to discern whether defendants were aware of the alleged problems at the times they made their" statements).

Based on these vague allegations, Plaintiff concludes that Defendants knew or were deliberately reckless is not knowing that "in late 2017 and early 2018 several large payers began requiring use of generic amantadine IR." Opp. at 20. Plaintiff fails to explain why the Individual Defendants would be deliberately reckless for not knowing the alleged reimbursement numbers for

---

[22] Again, Plaintiff misconstrues Adamas' statements as making some sort of guarantee that all payers would reimburse GOCOVRI and that no payer would put any restrictions on reimbursement. No reasonable investor would understand Adamas' optimistic predictions as a guarantee that there would be no restrictions put in place or that all reimbursements would be approved. And in any event, 70–80% reimbursement is consistent with "broad coverage."

two sales representatives (out of a total of 59), nor does he explain how two discrete territories would inform the Individual Defendants of large payer coverage decisions. In the absence of particularized facts regarding the information Individual Defendants allegedly received, there is no way to evaluate what the Individual Defendants knew (if anything) and the significance (if any) of that information.[23]

**Doctor Support.** Plaintiff next claims that "Defendants also knew that the prescribing doctors did not support GOCOVRI." Opp. at 20. Plaintiff first asks the Court to infer actual knowledge based on the conclusory allegation that the "sales field team had meetings with doctors every day and reported back to Adamas and executives, including Went." *Id.* Again, the Complaint fails to include any details about the information gleaned from these alleged meetings and what, if anything, was communicated to Defendants.[24] *LeapFrog,* 527 F. Supp. 2d at 1043–44 (allegations that "each morning there was a meeting to discuss shipping and sales figures and related issues" insufficient to infer scienter "at the time any particular alleged false and misleading statement was made").

Plaintiff also points to Adamas market research from 2017 in which 130 physicians were surveyed and claims that "some"[25] physicians said GOCOVRI "sounded just like amantadine IR," that they were "confused about the difference," and that they "could get the same results with either drug." Opp. at 21 (citing ¶ 96); *see also* Opp. at 25 (FE6 alleged that "some" doctors said GOCOVRI "sounded just like generic amantadine IR"). But the fact that "some" physicians felt this way does not demonstrate that these opinions were *so pervasive* that it resulted in no reasonable basis for Defendants' statements regarding physician acceptance. *Costabile,* 293 F. Supp. 3d at 1015.

---

[23] FE4 also claims that "Adamas always anticipated that some payers would require a step-through of amantadine," but fails to specify which Individual Defendants would have anticipated this, nor does it allege what the impact of "some payers" would be. *Solarcity*, 274 F. Supp. 3d at 999 (finding insufficient CW's allegation that failed to include allegations as to what "many" and "low quality" means). And, in fact, Adamas specifically warned of the possibility that some payers could impose a step-through of amantadine IR. *See* Mot. at 4.

[24] To support the allegation that the details of these meetings were reported to Defendant Went, Plaintiff relies on Defendant Went's out-of-context statement that "[e]very day, we hear stories from our field team following meetings that they have had with physicians." Opp. at 20; ¶ 73. Again, Plaintiff takes a statement out of context as Went was referring to patient success stories, rather than sales results. This does not support Plaintiff's claim that Went was hearing about the minute details of all sales field team meetings with physicians.

[25] Again, the FAC "lacks critical information about" what the market research results were, when the doctors expressed these opinions, or how many doctors allegedly had these opinions. *See Intuitive Surgical*, 759 F.3d at 1063.

Plaintiff's reliance on FE3's statement that GOCOVRI's price "could result in doctors choosing to treat patients" with amantadine IR is similarly insufficient. Opp. at 21 (citing ¶¶ 94, 96). As an initial matter, FE3's claim that GOCOVRI's price ***could*** result in doctors not prescribing GOCOVRI is merely FE3's speculation. Moreover, the FAC fails to include necessary details about ***how many*** doctors were allegedly reluctant to prescribe GOCOVRI and how often this alleged reluctance actually led to a doctor choosing to not prescribe GOCOVRI. These are exactly the type of "unspecific" allegations that courts routinely find insufficient. *Solarcity,* 274 F. Supp. 3d at 999 (CWs statements that vaguely referred to "many" contracts that were of "low quality," but failed to allege what "many" meant or "whether the number of low quality contracts was sufficiently high to meaningfully alter the key operating metrics" was insufficient).

**GOCOVRI's Market.** Plaintiff next claims that "Defendants knew that the true market for GOCOVRI was so small that it could not possibly support their sales forecasts." Opp. at 21. But Defendants did not announce any sales forecasts and instead simply provided a "framework" of anticipated market penetration. ¶ 290; *see also* ¶¶ 294, 296, 300. Nonetheless, Plaintiff cites vague allegations by FE1, FE5 and FE6 that Adamas' "pie in the sky" forecast "probably overestimated the market size." Opp. at 21–22; *see also* ¶¶ 106–107. However, allegations that Adamas forecasts were "pie in the sky" and "probably overestimated the market size" are the exact type of "vague and incomplete" statements that hardly suggest Defendants intended to defraud the market. *See NVIDIA*, 768 F.3d at 1061 ("unspecific and speculative" accounts "do not contribute to an inference of scienter"); *Intuitive Surgical*, 759 F.3d at 1063 (discounting the "impression of a low-level employee" that was "unsubstantiated" and "without substance or context"). Plaintiff also fails to allege that any of the FEs were "personally knowledgeable" of Adamas' forecasting methodology. *Zucco*, 552 F.3d at 996. Neither FE1's, FE5's, or FE6's job responsibilities indicate ***any*** familiarity with forecasting of any kind, let alone the exact underlying assumptions Adamas used to predict potential market penetration. Simply put, the Complaint fails to create any inference (let alone a strong inference) that any of the Individual Defendants' beliefs regarding "appropriate framework[s]" for anticipated market penetration were objectively unreasonable.

**MSWI Indication.**  Even if Plaintiff could show some type of false or misleading statement related to GOCOVRI's MSWI indication (they cannot), these claims still fail because Plaintiff fails to include a single allegation supporting scienter.  Plaintiff essentially argues that the Individual Defendants "already knew that GOCOVRI was a commercial failure as a LID treatment" and therefore Defendants must have known that the MSWI indication would also be a commercial failure.  Opp. at 22.  However, throughout the Class Period, Adamas was still only developing the MSWI indication and conducting clinical trials for it.  If, as Plaintiff argues, Defendants believed that the new indication would also be a "commercial failure," why would they continue to invest in development of the MSWI indication?  Plaintiff's argument is unsupported and illogical and should be rejected.  *Nguyen*, 962 F.3d 405, 416 (9th Cir. 2020) (rejecting plaintiffs scienter allegations because "[t]he theory does not make a whole lot of sense").[26]

### 3.    Plaintiff Cannot Invoke the Core Operations Theory of Scienter.

Plaintiff cannot overcome its inability to plead particularized facts by invoking the "core operations" doctrine and simply relying on allegations that GOCOVRI was an "overwhelming focus" of the Company.  Opp. at 23.  Invocation of this doctrine is "exceedingly rare," *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,* 880 F. Supp. 2d 1045, 1068 (N.D. Cal. 2012), and the Ninth Circuit has noted that "[p]roof under this theory is not easy." *Align Tech.*, 65 F. Supp. 3d at 859 (quoting *Intuitive Surgical*, 759 F.3d at 1062).  In fact, the cases cited by Plaintiff emphasize that "a complaint [that] relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information . . . will usually fall short of the PSLRA standard." *S. Ferry LP, # 2 v. Killinger,* 542 F.3d 776, 784–85 (9th Cir. 2008).  Without such allegations, "the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware." *Id.*

---

[26] Plaintiff tries to minimize the impact of the recent Ninth Circuit decision in *Nguyen* by claiming that it is "inapt" authority because "Defendants' statements did not relate to an inescapable . . . outcome." Opp at. 27 (citing *Nguyen*, 962 F.3d 415).  Plaintiff's overly-narrow interpretation is unsupported.  Neither the *Nguyen* court, nor other courts, have so narrowly held that rejecting scienter allegations for being illogical can only apply to situations that involved an "inescapable . . . outcome." *See In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 446 n.83 (S.D.N.Y. 2006) ("Courts often refuse to infer scienter, even on a recklessness theory, when confronted with illogical allegations.").

The scant two cases cited by cited by Plaintiff are not only selectively quoted, but also distinguishable.  In *S. Ferry # 2*, the Ninth Circuit held that "[a]llegations regarding management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements may also create a strong inference of scienter ***when made in conjunction with detailed and specific allegations about management's exposure to factual information within the company.***"  542 F.3d 7at 784–85 (emphasis added).  Following *South Ferry*, the Ninth Circuit in *Reese v. Malone* allowed the use of the core operations theory based on the following allegations that established defendant's knowledge of the two specific oil spills at issue: defendant was the individual responsible for reporting to leadership about the oil spill investigations, a report flagging the particular issues with the pipe lines was personally addressed to defendant, and the defendant oversaw operations in the area where the spill took place.  747 F.3d 557, 576 (9th Cir. 2014), *overruled by Align Tech.*, 856 F.3d 605.  On these allegations, the Ninth Circuit held that the defendant had actual knowledge as she appeared to be "both the external and internal gatekeeper of [relevant] information." *Reese*, 747 F.3d at 576. [27]

The FAC here falls far short from that in *Reese*.  Instead of specific and particularized allegations regarding each of the Individual Defendants, Plaintiff relies on vague allegations that the Individual Defendants were "deeply involved" in GOCOVRI's commercialization.  Opp. at 23.  For example, Plaintiff alleges that "GOCOVRI commercialization efforts were directly led by" Went, King and Shreedhar; that "Patni oversaw . . . outreach to doctors"; and that Merriweather was "deeply involved" with GOCOVRI forecasts.  Opp. at 23 (citing ¶¶ 32–33, 63, 59, 176, 348, 356, 361–62).  These general allegations that Individual Defendants were "deeply involved," and "oversaw" or "led" something, are not sufficient to establish scienter.  *Align Tech.*, 856 F.3d at 620 (allegations that defendants were "intimately involved" insufficient to invoke the core operations theory). *In re Taleo Corp. Sec. Litig.*, 2010 WL 597987, at *8 (N.D. Cal. Feb. 17, 2010) ("general allegations of defendants hands-on management style, their interaction with other officers and employees, their attendance at

---

[27] The court in *Reese* refused to apply the core operations inference to other defendants, noting that the complaint failed to include any particularized facts supporting actual knowledge or access to the information and therefore the core operations theory could not be used to impute scienter onto the CEO.  747 F.3d at 576.

monthly meetings, and their receipt of unspecified weekly or monthly reports are not sufficient to establish scienter"). Further, conclusory allegations that "Adamas is a small company and Went . . . was involved in . . . everything having to do with GOCOVRI" (¶ 362), are the exact type of vague and conclusory allegations courts routinely reject. *Taleo*, 2010 WL 597987, at *8 ("[G]eneral allegations of defendants' hand-on management style . . . are not sufficient.").

Plaintiff's claim that Defendants had actual access to "numerous specific sources of information" also falls short. For example, FE4 alleges that "the Company received data from the specialty pharmacy" and that "Melissa Masterson . . . was primarily responsible for this." ¶ 360; Opp. at 23. The FAC does not include any facts indicating Ms. Masterson relayed this data to Defendant Went, and the fact that Ms. Masterson (who is not the FE quoted) allegedly reported to Went, with nothing more, is not enough to impute her alleged knowledge on Defendant Went, let alone the rest of the Individual Defendants to whom she did not report. FE4 also alleges that an internal market research group reported to Defendant Went, but fails to include any specifics on what the team researched, what the research findings showed, and when (if ever) these findings were communicated to Defendant Went.[28] FE2's allegations that Defendants Patni and Went "received reports of physicians' feedback" and that Defendant Patni "occasionally attended weekly meetings of the MSLs" fail to include any details about the creation of these reports or their contents, nor do the allegations give any reference of when these reports were allegedly received. Similarly, there are no allegations about what specific information Patni would have learned at which "occasionally attended" meeting.

Plaintiff also tries to use *Reese* for the theory that "Individual Defendants discussed GOCOVRI's commercialization with investors, thereby holding themselves out as knowledgeable." Opp. at 24. Again, *Reese* is distinguishable because the defendant there made "detailed factual statement[s]" and "very specific representations" about the company's internal investigation results. *Reese*, 747 F.3d at 572. Unlike *Reese*, where the defendant made **numerous** public statements about **specific details** indicating access to the relevant information, Plaintiff here lists a single statement for

---

[28] Throughout the Class Period, GOCOVRI was commercially available for LID, and Adamas was pursuing FDA approval for both GOCOVRI MSWI indication and ADS-4101 (a drug intended to treat epilepsy that is *not* at issue in this case). Without any details on the research subject, it is impossible to know if the research and findings are relevant to this case.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW

each Individual Defendant, none of which contain the level of detail needed to invoke the core operations inference. For example, a statement by Defendant Went that data was "well received" by payers during a May 2017 earnings call—before GOCOVRI was even approved by the FDA and before Adamas assembled its sales team—can hardly show that he had real time access to thousands of individual coverage plan decisions many months later. Opp. at 23–24 (citing ¶ 117). In fact, the FAC lacks any details about the information Defendant Went allegedly had access to that included payer information, let alone an admission from Defendant Went that he had access to it. And the fact that King discussed potential physician support, or the results of a single, early, physician survey, does not support scienter when Plaintiff fails allege access to particular information directly contradicted any of his statements. Opp. at 24 (citing ¶ 66). Nor does Defendant Merriweather's general opinion as to the "appropriate framework" for market penetration or Defendant Shreedhar's comment about the "MS market" indicate access to specific information that contradicted their public statements, particularly since Plaintiff fails to identify what information actually rendered their statements false. Opp. at 24 (citing ¶¶ 290, 329). Plaintiff cannot use the narrow holding of *Reese* to turn these high-level statements into sweeping admissions that the Individual Defendants had access to any and all information regarding payers, doctors, and patients.

### 4. Routine Departures of Executives Do Not Support an Inference of Scienter.

Plaintiff asserts a bare conclusion that the departures of Defendants King, Merriweather, and Went are "suspicious on their face," (Opp. at 26) but fails to allege *any* supporting facts. Moreover, unlike the cases cited by Plaintiff, involving public condemnations and criticisms of the departed executive by the company's auditors, investigations, or actual admissions by the company of wrongdoing, here, Plaintiff cannot rebut other "reasonable assumption[s]" regarding these resignations. *Zucco*, 552 F.3d at 1002 (finding resignations "not so numerous or suspicious as to raise" an inference of scienter); *compare with WageWorks*, 2020 WL 2896547, at *8 (termination allegations sufficient when, in connection with the restatements (i.e., the corrective disclosures), the company admitted "management" issues related to the alleged false statements, auditor KPMG expressly stated that it could no longer rely on named defendants' representations, and KPMG publicly called for the resignation of one of the defendants).

As an initial matter, Plaintiff appears to suggest that that no executive could ever legitimately resign for "personal reasons" as Defendant King did. Opp. at 26. As support Plaintiff cites a single confidential witness (FE1) who "believed" Defendant King was fired. ¶ 348. However, the Complaint lacks a single fact indicating that FE1's speculation had any basis in fact. Without this foundation, Plaintiff cannot claim that this belief was anything more than office gossip. *Zucco*, 552 F.3d at 1002 (accounts "based on vague hearsay allegations" were "not specific enough to extract a strong inference of scienter from otherwise mundane turnover"); *NVIDIA*, 768 F.3d at 1061 (discrediting a CW's statement as speculative).

Plaintiff next takes issue with the timing of Defendant Merriweather's departure, noting his departure coincided with Adamas revealing "lackluster patient growth and operational issues." Opp. at 26. Courts have repeatedly rejected reliance on "timing," explaining that "conclusory allegations" that an executive "resigns or retires during the class period or shortly before the [alleged corrective disclosure], without more, cannot support a strong inference of scienter." *Zucco*, 552 F.3d at 1002. In fact, Adamas explicitly addressed Defendant Merriweather's departure in its 8-K, explaining that "Mr. Merriweather's separation was not the result of any disagreement with the Company on any matter relating to the Company's operations, policies or practices." Mot., Ex. 40 (Dkt. 70-43).

Further undermining Plaintiff's theory is the fact that both Defendants Went[29] and Merriweather remain consultants to Adamas *to this very day*. *See* ¶¶ 348–352; Mot. Ex. 40. *See Align Tech.*, 856 F.3d at 622 (employee remaining at company for months after the first disclosure "further diminishes any inference of scienter based on his resignation"); *Zucco*, 552 F.3d at 1002 (departure of CFO and two controllers during the class period insufficient to create an inference of scienter); *NVIDIA*, 768 F.3d at 1062–63 ("that two of the three individuals remained at [the Company] in some type of advisory role" was "detrimental" to plaintiffs' claim). Without more, Plaintiff's allegations that the resignations are suspicious "will never be as cogent or as compelling as the inference that the employees resigned . . . for unrelated personal or business reasons." *Align Tech.*, 856 F.3d at 622.

---

[29] Plaintiff claims in a conclusory manner that Defendant Went "abruptly resigned," (Opp. at 26) but fails to include a single fact about why his departure was "abrupt[]" or how that supports scienter here.

**DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW**

Having failed to plead "particular facts giving rise to a strong inference of scienter," Plaintiff asks this Court to assume that Defendants **must** have known that their statements were misleading because GOCOVRI's launch was not as successful as initially hoped. *See Nguyen*, 962 F.3d at 620. But with no explanation as to **why** Defendants (none of whom are alleged to have sold a **single share of stock**) would publicly state that they expected "broad coverage" from payers and "strong interest from prescribers" if they knew as early as August 2017 of the "inevitable fallout" that would come, Plaintiff fails to present an inference of scienter that is "cogent and at least as compelling as" the inference of a cautiously optimistic company with a newly-approved drug. *See Tellabs*, 551 U.S. at 324.[30]

### D.    Plaintiff Fails to Plead Loss Causation.

Plaintiff is required to plead loss causation with particular facts that, if true, demonstrate that it was the "misstatement, as opposed to some other fact, [that] foreseeably caused the plaintiff's loss." *Mineworkers' Pension Scheme v. First Solar Inc.* 881 F.3d 750, 753 (9th Cir. 2018). Despite its argument to the contrary, Plaintiff has not specified "new information revealed on each date and the immediately following substantial stock price declines." Opp. at 28–29. For example, Plaintiff has failed to allege the October 5, 2018 Bank of America analyst report caused any loss by revealing new information, instead merely pleading that the analyst report "cast doubt on GOCOVRI's ability to achieve sizable market share." ¶ 333. Plaintiff fails to show how a six-doctor survey could have revealed GOCOVRI would not achieve a sizable market share. *See, e.g.*, *Metzler*, 540 F. 3d at 1063–64 (loss causation not adequately pled because investigation into one of 88 schools did not reveal "company-wide manipulation" of statistics). In fact, the FAC fails to plead that any *new* information was disclosed on the alleged corrective disclosure dates. *Bonanno v. Cellular Biomedicine Grp., Inc.,* 2016 WL 2937483, at *5 (N.D. Cal. May 20, 2016). Nor has Plaintiff demonstrated that Defendants "did nothing to warn investors about the substantial and permanent hurdles to reimbursement." Opp. at 29. Adamas' risk factors (along with numerous ad hoc warnings) clearly disclosed the risk associated with investing in Adamas, particularly given that GOCOVRI was newly -approved and this

---

[30] Plaintiff does not dispute that he has failed to plead any motive, but instead argues that he is "not required to establish defendants' motive at the pleading stage." Opp. at 26. While Plaintiff's failure to plead any motive may not independently be fatal, the absence of motive is relevant when conducting a holistic analysis, which is all Plaintiff appears to advocate for here. *See Tellabs*, 551 U.S. at 325.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW

was Adamas first foray into commercialization of a drug. *Apple*, 2020 WL 2857397, at *27 (failure to allege loss causation when "there was no evidence that any of the[] risks were concealed"). Moreover, when Adamas did "disclose" the allegedly concealed facts, the market did not react negatively, further illustrating that the four corrective disclosure dates alleged in the FAC failed to disclose anything "new" to the market. Mot. at 25.[31] As such, Plaintiff's has failed to properly plead loss causation.

## III.   CONCLUSION

For the foregoing reasons and those set forth in the Motion to Dismiss, the Complaint should be dismissed with prejudice.[32]

Dated:  September 28, 2020

COOLEY LLP

/s/ Patrick E. Gibbs
Patrick Gibbs (183174)

Attorneys for Defendants,
ADAMAS PHARMACEUTICALS, INC.,
GREGORY T. WENT, ALFRED G.
MERRIWEATHER, RICHARD A. KING,
RAJIV PATNI, and VIJAY SHREEDHAR

---

[31] Plaintiff incorrectly refers to this theory as a "truth on the market" defense. Opp. at 29. The truth on the market defense is not relevant to loss causation, but rather, as *Provenz* explains, it applies to whether an omission is material. *See Provenz v. Miller,* 102 F. 3d 1478, 1492 (9th Cir. 1996).

[32] Plaintiff's inability to state a Section 10(b) claim requires dismissal of the Section 20(a) claim. *Rigel Pharm.*, 2009 WL 5125344, at *8.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT
4:19-CV-08051-JSW