COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
SHANNON M. EAGAN (212830)
(seagan@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone:   (650) 843-5000
Facsimile:    (650) 849-7400

Attorneys for Defendants,
ADAMAS PHARMACEUTICALS, INC., GREGORY T.
WENT, ALFRED G. MERRIWEATHER, and RICHARD
A. KING

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ZAIDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ADAMAS PHARMACEUTICALS, INC., GREGORY T. WENT, ALFRED G. MERRIWEATHER, and RICHARD A. KING,<br><br>Defendants. | Case No.: 4:19-cv-08051-JSW<br><br>**Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint**<br><br>Date:          March 11, 2022<br>Time:          9:00 a.m.<br>Courtroom:   5<br>Judge:         Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ...................................................................................... V

NOTICE OF MOTION AND MOTION ........................................................................ 1

STATEMENT ISSUES TO BE DECIDED (LOCAL RULE 7-4(A)(3)) ......................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.     INTRODUCTION ............................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................ 2

III.   LEGAL ARGUMENT ...................................................................................... 4

       A.     The SAC Fails to Identify a Single Actionable Material Misrepresentation. ............. 5

              1.     Plaintiff Fails to Allege Any False or Misleading Statements About Payer Support. .................................................................................. 5

              2.     Plaintiff Fails to Allege Any False or Misleading Statements Regarding GOCOVRI Access and Distribution. .................................. 9

              3.     Plaintiff Fails to Allege Any False or Misleading Statements Regarding Physician and Patient Feedback. ................................... 10

       B.     Plaintiff Fails to Plead a Strong Inference of Scienter ............................. 11

IV.    CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Billhofer v. Flamel Techs., S.A.*,
2012 WL 3079186 (S.D.N.Y. July 30, 2012) .............................................................................9

*Browning v. Amyris, Inc.*,
2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ..........................................................................14

*Cheung v. Keyuan Petrochemicals, Inc.*,
2012 WL 5834894 (C.D. Cal. Nov. 1, 2012).............................................................................14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F. 3d 605 (9th Cir. 2017) ..................................................................... vi, 9, 10, 14

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) .....................................................................................10

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
2019 WL 6877195 (N.D. Cal. Dec. 17, 2019).........................................................................11

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ..............................................................................................6, 9

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ................................................................................................11

*Fadia v. FireEye, Inc.*,
2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) ........................................................................10

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*,
422 F. Supp. 3d 821 (S.D.N.Y. 2019)........................................................................... vi, 8

*Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*,
522 F. Supp. 3d 660 (N.D. Cal. 2021) .....................................................................................15

*Jui-Yang Hong v. Extreme Networks, Inc.*,
2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .........................................................................14

*In re Keegan Mgmt. Co., Sec. Litig.*,
794 F. Supp. 939 (N.D. Cal. 1992) ...........................................................................................7

*Kovtun v. Vivus, Inc.*,
2012 WL 4477647 (N.D. Cal. Sept. 27, 2012) .........................................................................8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*L.L. Capital Partners, L.P. v. Rockefeller Ctr. Properties, Inc.*,
     939 F. Supp. 294 (S.D.N.Y. 1996) .................................................................5

*In re Leapfrog Enter., Inc. Sec. Litig.*,
     237 F. Supp. 3d 943 (N.D. Cal. 2017) ..........................................................15

*Lipton v. Pathogenesis Corp.*,
     284 F.3d 1027 (9th Cir. 2002) ......................................................................13

*Markette v. XOMA Corp.*,
     2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) .......................................10, 11

*In re NVIDIA Corp. Sec. Litig.*,
     768 F.3d 1046 (9th Cir. 2014) ......................................................................11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
     575 U.S. 175 (2015) ................................................................................. vi, 6

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
     774 F.3d 598 (9th Cir. 2014) .................................................................. 4, 11

*In re Pivotal Sec. Litig.*,
     2020 WL 4193384 (N.D. Cal. July 21, 2020) ..........................................14, 15

*In re Pixar Sec. Litig.*,
     450 F. Supp. 2d 1096 (N.D. Cal. 2006) ........................................................15

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
     759 F.3d 1051 (9th Cir. 2014) .............................................................. *passim*

*Washtenaw Cty. Emps.' Ret. Sys. v. Talbots, Inc.*,
     2013 WL 5348569 (D. Mass. Sept. 23, 2013) .................................................8

*In re Rigel Pharm., Inc. Sec. Litig.*,
     697 F.3d 869 (9th Cir. 2012) ........................................................ vi, 5, 11, 16

*Ronconi v. Larkin*,
     253 F.3d 423 (9th Cir. 2001) ............................................................. vi, 2, 15

*S. Ferry LP, No. 2 v. Killinger*,
     542 F.3d 776 (9th Cir. 2008) ........................................................................11

*Sgarlata v. PayPal Holdings, Inc.*,
     409 F. Supp. 3d 846 (N.D. Cal. 2019) ............................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Solarcity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) ..................................................................12

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
   160 F. Supp. 2d 1059 (N.D. Cal. 2001) ................................................................12

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
   2000 WL 1727377 (N.D. Cal. Sept. 29, 2000) .....................................................10

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ..................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Limited*,
   551 U.S. 308 (2007)................................................................................................11

*In re Vantive Corp. Sec. Litig.*,
   110 F. Supp. 2d 1209 (N.D. Cal. 2000) ..................................................................5

*Veal v. LendingClub Corporation*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019) ..........................................................*passim*

*W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*,
   2018 WL 4524107 (D. Or. May 29, 2018) ..............................................................6

*Wozniak v. Align Tech., Inc.*,
   2011 WL 2269418 (N.D. Cal. June 8, 2011) ........................................................13

*Wozniak v. Align Tech., Inc.*,
   850 F. Supp. 2d 1029 (N.D. Cal. 2012) ................................................................10

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .........................................................................vi, 11

**Statutes**

15 U.S.C.
   § 78u-4(b)...................................................................................................1, 5, 11

**Rules**

Federal Rule of Civil Procedure
   9(b)...........................................................................................................4, 5

Federal Rule of Civil Procedure
   12(b)(6) .............................................................................................................1

**SUMMARY OF ARGUMENT**

Plaintiff again claims that Defendants misled investors by failing to accurately predict how *third-party* insurers, physicians, and patients would react to the launch of Adamas' newly approved drug, GOCOVRI.  But, as this Court has already held, and as Plaintiff fails to remedy, Plaintiff's claims fail for at least two independent reasons.

***First***, the Second Amended Class Action Complaint ("SAC") fails to identify a single actionable statement.  Plaintiff fails to plead particularized facts showing that any of the statements were false or misleading *when made*.  Moreover, a number of the alleged misstatements are inactionable forward-looking statements immunized by the PSLRA's safe harbor.  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.,* 759 F.3d 1051, 1058 (9th Cir. 2014).  Others constitute inactionable corporate optimism upon which no reasonable investor would rely, *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 422 F. Supp. 3d 821, 846 (S.D.N.Y. 2019), or are opinion statements that Plaintiff fails to plead were objectively untrue or not subjectively held.  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189-90 (2015); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F. 3d 605, 615-16 (9th Cir. 2017).

***Second***, Plaintiff continues to rely heavily on allegations attributed to six unnamed former employees without establishing their knowledge of the facts alleged, that those alleged facts were in the possession of any of the Individual Defendants, or, in most cases, *any* connection to the Individual Defendants.  *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019).  Plaintiff's continued reliance on the core operations inference and corporate scienter also fail.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009).  And Plaintiff's theory is further undermined by the absence of any suspicious stock sales or motive.  *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).

***Finally***, Plaintiff's Section 20(a) claim fails because he does not plead a primary violation of Section 10(b).  *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).

1

**NOTICE OF MOTION AND MOTION**

2        TO PLAINTIFF AND HIS ATTORNEYS OF RECORD: NOTICE IS GIVEN that on March

3    11, 2022, at 9:00 a.m., before the Honorable Jeffrey S. White, Adamas Pharmaceuticals, Inc.

4    ("Adamas"), Gregory T. Went, Alfred G. Merriweather, and Richard A. King (collectively,

5    "Individual Defendants," and together with Adamas, "Defendants") move to dismiss with prejudice

6    the SAC.  This Motion is made under the Private Securities Litigation Reform Act of 1995 (the

7    "PSLRA") and Federal Rule of Civil Procedure 12(b)(6).  This Motion is based on the pleadings;

8    Defendants' Memorandum of Points and Authorities; the Request for Judicial Notice; the Declaration

9    of Tijana M. Brien and exhibits thereto; and any other matter which may be submitted at the hearing.

10        **STATEMENT OF ISSUES TO BE DECIDED (LOCAL RULE 7-4(A)(3))**

11        Whether the SAC states a claim under the Securities Exchange Act Sections 10(b) and 20(a).

12        **MEMORANDUM OF POINTS AND AUTHORITIES**

13   **I.    INTRODUCTION**

14        The SAC confirms what this Court already held – Plaintiff's theory simply "does not make

15   sense."  Plaintiff's rewrite of the Amended Complaint ("AC"), in an obvious attempt to obscure the

16   SAC's failure to remedy any of the Court's identified deficiencies, does not alter this conclusion.  The

17   SAC should be dismissed, with prejudice, for at least two independent reasons.

18        First, Plaintiff fails to identify a single actionable statement.  Plaintiff challenges various

19   statements expressing hopes for GOCOVRI's launch and expectations for how *third-party* payers,

20   physicians, or patients would respond to GOCOVRI.  But the SAC relies only on impermissible "fraud

21   by hindsight" allegations about the challenges Adamas faced early in the GOCOVRI launch –

22   challenges that Adamas had warned investors about.  The SAC also fails to allege any particularized

23   facts showing the statements were false *when made*.  For example, Adamas repeatedly warned that

24   payers would impose prior authorization and other restrictions on GOCOVRI.  The fact that such

25   restrictions were, in fact, later imposed does not mean that the market was misled.  Similarly,

26   statements about prescription fulfillment–such as, "*[g]enerally*, we are seeing reimbursement for

27   prescriptions happen quickly" – are not rendered false or misleading by anecdotal allegations that

28   some prescriptions were denied or took a little longer to fill.  And, as this Court recognized when it

dismissed certain statements without leave to amend, that physician and patient response was "positive" or "animated" are vague expressions of optimism on which no investor would rely.

Second, Plaintiff's scienter theory still hinges on allegations this Court rejected. While the SAC attributes some additional (though equally vague) allegations to former employees referenced in the AC (and disregarded by this Court as unreliable), none of these allegations offer the detail necessary to plead the requisite strong inference of scienter. Allegations that former employees "believed" defendants had access to information or "would be surprised" if Defendants did not likewise fail. Plaintiff's attempt to replead scienter based on "core operations" – which this Court previously rejected – fares no better. Simply put, Defendants' "[h]onest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness." *Ronconi v. Larkin,* 253 F.3d 423, 432 (9th Cir. 2001). The Court should dismiss Plaintiff's SAC with prejudice.

## II.   STATEMENT OF FACTS

The SAC largely repeats the same allegations from Plaintiff's AC, which are detailed in the parties' earlier briefing and the Court's Order dismissing the AC.

**Adamas Launches GOCOVRI, the First Drug Treatment it Developed and Would Market On its Own.** Adamas received FDA approval for GOCOVRI, the first and only medicine approved to treat dyskinesia in Parkinson's patients receiving levodopa-based therapy, in August 2017, and launched the product in January 2018. (¶ 54); Ex. 11 at 10.[1]

While Adamas was enthusiastic and hopeful about GOCOVRI's launch, it was also transparent about the various risks it faced because (among other reasons) GOCOVRI was the first drug treatment that Adamas developed and would market entirely on its own.[2] (¶ 49). For example, Adamas was clear that, like other new-to-market drugs, GOCOVRI would need to jump through various payer hoops, explaining that it "anticipate[d] [that] . . . some plans" would "automatically cover [GOCOVRI] at a Tier 3 or that nonpreferred tier" (*see* Ex. 4 at 15) and that "there's a prior authorization here you

---

[1] All citations to "¶" are to the SAC filed on November 5, 2021. "Ex." refers to Exhibits to the Declaration of Tijana M. Brien in Support of Defendants' Motion. An index of all Exhibits is included within Defendants' Request for Judicial Notice, which is filed concurrently.

[2] Adamas was transparent about the fact that it "currently [had] only limited commercial experience and capabilities." Ex. 7 at 32. *See also, e.g.,* Ex. 11 at 23; Ex. 17 at 31; Ex. 20 at 31; Ex. 24 at 31.

all should expect."[3]  Ex. 9 at 7.  Adamas was also clear that payers could require that doctors prescribe "a cheaper . . . alternative" or show "that the cheaper alternative was not effective or well tolerated" before covering the expense, *i.e.,* a "step" requirement.  ¶ 58; *see* Ex. 8 at 5 (we are "[n]ot [] say[ing] that [a step requirement] won't happen").  Adamas warned:

> As with any newly approved medicine for a particular indication, there may be significant delays in obtaining final coverage and reimbursement decisions for GOCOVRI.  Third-party payers are increasingly challenging the price and reviewing the cost-effectiveness of medical drug products, in addition to questioning their safety and efficacy.  Coverage and reimbursement decisions for GOCOVRI by third-party payers are generally subject to change and may not be permanent.  Ex. 10 at 4.

Adamas also disclosed that market acceptance was a key risk: "GOCOVRI may fail to achieve the degree of market acceptance by physicians, patients, healthcare payers, and others in the medical community necessary for commercial success."[4]  Ex. 10 at 2.  Adamas warned that "market acceptance of GOCOVRI will depend on a number of factors, including . . . the willingness of physicians to change their current treatment practices . . . [and] the willingness of the target patient population to try new therapies and of physicians to prescribe these therapies."  Ex. 17 at 30-31; *see also* Ex. 11 at 10 ("GOCOVRI will face competition from the medical strategies historically used by physicians to manage dyskinesia").  Market analysts understood and highlighted these risks, warning "expectations should remain appropriately conservative as the clinician education and formulary access should dictate a normal, protracted initial launch."  Ex. 5.  Adamas also informed the market that GOCOVRI would be administered through a single specialty pharmacy.  Ex. 4 at 14.  But Adamas warned that it had "only recently established [its] distribution and reimbursement capabilities."  Ex. 11 at 23.

Throughout much of 2018, GOCOVRI received the physician and payer acceptance Adamas had hoped for, as the rate of distinct prescribers and prescriptions grew.  *See* Ex. 12 at 6; Ex. 16; Ex. 19; Ex. 23; Ex. 26.  As Adamas previously shared, payers were issuing coverage determinations, including prior authorizations or requirements of prior Amantadine IR experience.  *See* Ex. 12 at 10; Ex. 22 at 7.  Analysts were not fazed by these requirements, stating that "requiring documentation that

---

[3]  Adamas continued to reiterate this point.  Ex. 18 at 5 ("In almost all cases, there's a prior authorization that's going to be required . . . Some plans . . . [ask] is there a prior history of some use of amantadine, where amantadine was [] unsuccessful").

[4]  Indeed, such warnings were included as far back as August 8, 2017.  *See e.g.,* Ex. 1 at 31.

a patient has had previous exposure to immediate-release (IR) amantadine" was "hardly onerous." Ex. 14 at 1.

Nonetheless, Adamas had to make some adjustments to its launch strategy. In November 2018, Adamas shared that due to an "increased [] understanding of market dynamics" it was "making adjustments and applying the learnings which [it] believe[d] will lead to the prolonged success of GOCOVRI" and that, in the meantime, it would no longer disclose the number of new prescriptions. (¶¶ 131, 221); Ex. 25 at 3. Plaintiff alleges that this announcement caused Adamas' stock to drop $5.08.[5] (¶ 220). Thereafter, in March 2019, Adamas announced that given the early stage of commercialization, the Company would pause providing prescription guidance while it was working to deepen its understanding of the patient, physician, and payer landscape and incorporate those learnings. *See* Ex. 27 at 3-4. Plaintiff alleges that Adamas' stock dropped $3.99 in response. (¶¶ 222-24). With adjustments to its strategy, Adamas continued to successfully commercialize GOCOVRI. In 2020, for example, GOCOVRI brought in $74.5 million in total revenue, a 36% increase from 2019. Ex. 28.

**The Court's Dismissal of the Amended Complaint.** On May 15, 2020, Plaintiff filed the AC alleging claims under Section 10(b) and 20(a) of the Securities Exchange Act of 1934. Dkt. 60. On October 8, 2021, the Court dismissed the AC in its entirety, holding that the AC "fail[ed] to adequately allege scienter" and that Plaintiff failed to adequately allege that the vast majority of the statements were false or misleading when made. Dkt. 79 ("Order").

**The Second Amended Complaint.** Plaintiff filed the SAC on November 5, 2021. Dkt. 82. Although the Class Period is now shorter (¶ 1) and Plaintiff has abandoned some statements and defendants, the SAC asserts the same theories and relies on similar (and at times, identical) vague allegations from unnamed former employees ("FEs"). *See, e.g.*, ¶¶ 72-75, 88-89, 106-116. And, while the Order identified a roadmap for amendment (Order at 37.), Plaintiff has effectively ignored it.

III.  LEGAL ARGUMENT

The SAC is subject to two exacting pleading standards, both of which it fails to meet. First, Federal Rule of Civil Procedure 9(b) requires Plaintiff to "state with particularity" "all elements of a

---

[5] Plaintiff also alleges that Adamas' stock dropped $1.52 per share on October 5, 2018, in response to a Bank of America report issued that day. (¶¶ 216, 217).

securities fraud action." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).  Second, the PSLRA further heightens Rule 9(b)'s "particularity" requirement by imposing much more stringent requirements for pleading falsity and scienter.  *See* 15 U.S.C. § 78u-4(b)(1)-(3).

### A.    The SAC Fails to Identify a Single Actionable Material Misrepresentation.

The PSLRA requires a plaintiff to specify each allegedly false or misleading statement and to provide the reasons why the statement was false or misleading *when made*.  *Rigel*, 697 F.3d at 876-77.  "This requirement is the PSLRA's single most important weapon against pleading fraud by hindsight."  *In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1216 (N.D. Cal. 2000).  Plaintiff challenges three categories of statements about: (a) payers; (b) physicians and patients; and (c) GOCOVRI's market access and distribution.  Like its predecessor, however, the SAC fails to allege that any statement was materially false or misleading when made.

### 1.    Plaintiff Fails to Allege Any False or Misleading Statements About Payer Support.

The SAC challenges over a dozen statements about payers, including King's (Adamas' former COO) pre-launch expectations about how payers would view GOCOVRI (¶¶ 160, 163); Defendants' post-launch statements about payer support or coverage (¶¶ 185, 187, 191, 193, 196); and Defendants' statements about reimbursement of GOCOVRI prescriptions (¶¶ 173, 177, 182, 183, 193, 194, 200, 206(a)-(c), 209).  But the SAC fails to allege any facts to show these statements were false when made.

***King's 2017 Statements.***  Plaintiff challenges King's pre-launch statements about payers' reaction to, and support of, GOCOVRI and its price.  (¶¶ 160, 163).  For example, Plaintiff claims that King's September 2017 statement that payers were "willing to support" GOCOVRI's price (¶ 163) was false because an unspecified number of payers indicated in a July 2017 survey that they "favored" a lower price.  (¶ 74).  However, a *preference* by some payers for one price point does not contradict King's statement that payers were, as a general matter, "willing" to support GOCOVRI's price, particularly given the passage of several months between the survey and statements.  *See L.L. Capital Partners, L.P. v. Rockefeller Ctr. Properties, Inc.*, 939 F. Supp. 294, 296 (S.D.N.Y. 1996) (rejecting attempt to premise liability on defendants' own subjective evaluation of future actions of third parties).

Plaintiff also continues to challenge King's August 2017 opinion that payers and physicians "don't see this [GOCOVRI's] profile as really having much to do with the amantadine IR," a claim

the Court previously dismissed.  Order at 27.  Rather than remedy the AC's failure, the SAC merely adds that a "quantitative study of physicians" conducted in "the first half of 2017" indicated that "some" physicians commented that GOCOVRI sounded similar to amantadine IR.  *Compare* (SAC ¶¶ 72, 161), *with* (AC ¶¶ 96, 223).  That "some" physicians held this belief does not render King's statement false or misleading.  *Omnicare*, 575 U.S. at 189-90 (opinion statement is not misleading "when an issuer knows, but fails to disclose, some fact cutting the other way").  Moreover, the SAC fails to allege that the physicians held those beliefs several months later, when the statement was made.

King's August 2017 statement that "there is no anticipation of requiring a step-through of amantadine IR" is forward-looking.  (¶ 160); Order at 24.  Under the PSLRA's statutory safe harbor, a forward-looking statement is inactionable if it was (1) accompanied by meaningful cautionary language or (2) made without actual knowledge that it was false.  Order at 18.  The test is ***disjunctive;*** statements are protected if they satisfy ***either*** prong.  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010).  This Court already concluded that the statement is forward-looking and was accompanied by meaningful cautionary language.  Order at 24-25; *see* Ex. 2.[6]  The inquiry should end there.  In any event, the SAC fails to allege specific facts that King knew that "it was not possible" for his prediction to come to fruition.  *W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*, 2018 WL 4524107, at *16 (D. Or. May 29, 2018), *aff'd sub nom.* 788 F. App'x 421 (9th Cir. 2019).  As such, the statement is protected under both prongs of the safe harbor.

***2018 Statements Regarding Payer Support.***  Plaintiff also challenges a handful of post-launch statements about payer support and coverage determinations for GOCOVRI (*e.g.*, ¶¶ 165, 167, 169, 185, 187, 193, 200, 206(b)).  For example, Plaintiff takes issue with Adamas' risk factor warning, contained in Adamas' public filings through May 2018, that "although no payer has done so to date, a payer may determine to require patients to use other formulations of amantadine for dyskinesia (even though it is not approved for that indication) prior to receiving reimbursement for GOCOVRI."  (¶¶ 165, 167, 169).  Plaintiff claims this statement was false because some payers had imposed "prior

---

[6] At the beginning of the earnings call, Adamas "remind[ed] everyone that the call will confirm forward-looking statements, which are subject to risks and uncertainties," and told investors to review risk factors in its recent SEC filings.  *See* Ex. 2 at 4; *see Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014) (holding similar cautionary language sufficient).

authorizations" or "step throughs" (a type of "prior authorization").  But, the statement was not false because it warned of a specific situation whereby a payer would require that a physician first prescribe amantadine IR *for dyskinesia* prior to prescribing GOCOVRI.  None of the payer determinations alleged by Plaintiff imposed this stringent requirement – some past experience with amantadine IR or physician attestation of intolerance to amantadine IR sufficed.  Moreover, Adamas acknowledged as early as February 2018 that some payers had imposed such requirements, so the market was not misled.  Ex. 12 at 10 (noting instances of payers requiring prior authorization); Ex. 15 at 5 (some plans required "physician to confirm that the patient has a medical history with amantadine IR.").

In any event, this statement could only have been speaking to information that was known to Adamas at the time.  *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1406–07 (9th Cir. 1996) ("another company's plans cannot be known to a certainty").  Plaintiff fails to allege that the alleged *third-party* payer determinations were *known or knowable* to Adamas at the time of the statements.  *In re Keegan Mgmt. Co., Sec. Litig.*, 794 F. Supp. 939, 946 (N.D. Cal. 1992).  While Plaintiff alleges that certain coverage determinations were made, Plaintiff does not say whether or when these alleged determinations were communicated to or otherwise known by Adamas.[7]  Without those facts, none of Defendants' statements about *third party* payer determinations could have been false *when made.*

The SAC also assumes that Defendants' references to "payer support" are synonymous with the absence of step-through or prior authorization requirements.  (¶¶ 181, 193, 194, 200, 206(b)).  For example, Plaintiff alleges that King's May 3 and May 16, 2018 statements that GOCOVRI is receiving "support from payers" (¶ 181; *see* ¶ 193) was false or misleading because payers were imposing "reimbursement requirements." (¶¶ 184, 195).  Yet King never said that payer support equated to no reimbursement restrictions imposed by payers.  Indeed, King repeatedly disclosed that payers were imposing such restrictions:  Ex 15 at 5 ("[s]ome plans also ask the physician to confirm that the patient has a medical history with amantadine IR"); Ex. 18 at 5 ("[i]n almost all cases, there's a prior authorization that's going to be required").[8] When viewed in the context of the related statements and

---

[7] In fact, Plaintiff musters only the paltry allegation that "based on information and belief, [these determinations] were reported to Defendants by the payers when made." (¶ 87).
[8] Tellingly, investors characterized the fact that "most payers" were requiring a "step-edit" or requirement as a "favorable" payer landscape. Ex. 21 at 1.

1   warnings also made to the market, the challenged statements could not have been misleading. *Kovtun*

2   *v. Vivus, Inc.*, 2012 WL 4477647, at *8-*9 (N.D. Cal. Sept. 27, 2012) (statements not misleading

3   where allegedly omitted facts were known to the market).

4        ***2018 Statements Regarding Prescription Fulfillment.***  Plaintiff also challenges statements

5   reflecting Adamas' assessment of the rate or speed of GOCOVRI prescription fulfillment and

6   reimbursement.  (¶¶ 182, 193, 194, 206(a), (c)).  For example, Plaintiff challenges King's May 2018

7   statements that "[g]enerally, we're seeing reimbursement for prescriptions happen quickly" and that a

8   "significant majority" of prescriptions were "being reimbursed in a short period of time."  (¶¶ 183,

9   206(a)).  Plaintiff claims investors were misled because Defendants did not disclose that (1) payers

10   were requiring a step-through of amantadine IR; (2) the 14-day free supply of GOCOVRI was

11   allegedly inadequate; and (3) patients and physicians were dropping GOCOVRI or refusing to write

12   prescriptions.  (¶¶ 184, 207).  This argument fails for several independent reasons.

13        First, none of these statements were guarantees as to how the fulfillment process was going

14   with respect to each and every patient or prescription.  Plaintiff fails to allege how a few isolated

15   incidents (of which Defendants are not alleged to have known) are somehow reflective of Adamas'

16   prescription fulfillment status as a whole.  Indeed, a handful of complaints or fulfillment issues from

17   discrete regions (hardly unexpected for a company with limited experience) are not inconsistent with

18   King's observation that "*[g]enerally*, we're seeing reimbursement for prescriptions happen quickly"

19   and that a "significant majority" of prescriptions were "being reimbursed in a short period of time."

20   (¶¶ 183 (emphasis added), 206(a)).  *See Intuitive Surgical, Inc.*, 759 F.3d at 1063 (criticizing witness

21   statements that "provide only snippets of information, not a view of the company's overall health").

22        Second, statements regarding fulfillment "generally" occurring "quickly" or "rapidly" are

23   vague expressions of optimism not "capable of objective verification" —  no investor would rely upon

24   them.  *AMC*, 422 F. Supp. 3d at 846 (describing performance as "quick," is "so vague and ill-suited to

25   concrete measurement" that it is puffery); *Washtenaw Cty. Emps.' Ret. Sys. v. Talbots, Inc.*, 2013 WL

26   5348569, at *29 (D. Mass. Sept. 23, 2013) ("very short period of time" is "certainly" puffery).

27        Third, the FE allegations in support of this claim are flatly inconsistent with prior allegations

28   attributed to the very same FE, thereby undermining their reliability.  For example, the AC cited FE5

as saying that *20-30%* of the prescriptions FE5 submitted in the first quarter were denied.  In the SAC, however, FE5 claims that the number of denials during that period was actually *70-80%*:  *Compare* AC ¶138, *with* SAC ¶ 108.  Such inconsistencies weigh against FE5's reliability.  *Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 857 (N.D. Cal. 2019) (noting former employee's inconsistent prior statement and concluding the witness was not reliable).  And even setting aside these credibility issues, none of the FEs suggest that King knew about the supposed fulfillment issues at the time these statements were made.  FE4 alleges that he discussed "fulfillment data" with King, but he doesn't state *when* these conversations occurred or *what* information was conveyed.  *See infra*, Section III(B).  And while FE1 alleges that prescriptions could take as long as 30 days in May 2018, FE1 does not say how often such "delays" occurred or whether King was aware of these issues.  As such, the SAC lacks the particularized facts to suggest that these statements were false when made.

### 2.  Plaintiff Fails to Allege Any False or Misleading Statements Regarding GOCOVRI Access and Distribution.

The SAC next challenges several statements about access to GOCOVRI and its specialty pharmacy, Onboard.  (¶¶ 182, 187, 208, 211).  But these statements—such as that access to GOCOVRI was "reasonably straightforward[]" or describing Onboard as providing a "seamless access experience" and "going very well"—are subjective statements of opinion and puffery.  *Cutera*, 610 F.3d at 1111; *Billhofer v. Flamel Techs., S.A.*, 2012 WL 3079186, at *9 (S.D.N.Y. July 30, 2012) (statements that a product is performing "well" conveys "no meaningful, objective data that an investor would rely upon.").  Plaintiff fails to show how any of the expressions of optimism are "objectively verifiable."  *Intuitive Surgical, Inc.*, 759 F.3d at 1060.  And even if Plaintiff could show that these statements were objectively untrue (he cannot), Plaintiff alleges no facts to suggest the speaker did not subjectively hold the belief expressed.[9]  *Dearborn Heights*, 856 F. 3d at 615-16.

---

[9] Plaintiff further fails to show that Adamas' warnings that its business would suffer if third party pharmacy and distribution partners "are unable to perform effectively" or did "not provide efficient distribution of the medicine" were false or misleading.  (¶¶ 171, 175).  The SAC is devoid of any particularized facts showing that Adamas' specialty pharmacy, or other "third-party logistics, pharmacy and distribution partners," were unable to "perform effectively" or "provide efficient distribution of [GOCOVRI]."  (¶ 171).  Instead, Plaintiff claims that payer coverage determinations caused delays in prescription fulfillment.  (¶¶ 172, 174).  But payers are not pharmacies or distribution partners, and therefore this risk factor was not rendered false or misleading by what Plaintiff alleges.

**3.     Plaintiff Fails to Allege Any False or Misleading Statements Regarding Physician and Patient Feedback.**

Plaintiff next challenges several statements about physician and patient reactions to GOCOVRI.  (*See* ¶¶ 179, 182, 189, 191, 192, 198, 204).  But most of these challenged statements are inactionable because they are "too untethered to anything measurable, to communicate anything that a reasonable person would deem important to a securities investment decision." *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005).  For example, statements that patient and physician feedback was "positive" and "animated" or that GOCOVRI's profile "appears to resonate" with physicians are vague expressions of optimism on which no investor would rely.  (¶¶ 179, 189, 191, 198).  Courts consistently dismiss claims challenging similar statements.  *See, e.g.*, *Wozniak v. Align Tech., Inc.,* 850 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) (holding inactionable statements such as "we're getting really great feedback"); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727377, at *17 (N.D. Cal. Sept. 29, 2000) (vague assessments such as: "strong," "healthy" and "increased awareness" are not actionable).  The same is true for King's statement that physicians become "regular and continuous prescribers of GOCOVRI,"  (¶ 202) which is the type of statement that has been found inactionable by other courts.  *See Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *9 (N.D. Cal. Nov. 14, 2016) (statement that sales cycles were "consistent" was inactionable puffery).  Indeed, the Court has already dismissed two of the challenged statements on these grounds ***without leave to amend*** (*compare* Order at 16; *with* ¶¶ 191, 198); it should do the same for the rest.

The same is true for opinion statements, such as King's opinion that he "wouldn't say that" physicians viewed the price of GOCOVRI as a detractor.  (¶ 204).  For an opinion to be actionable, Plaintiff must plead with specificity that "the speaker does not honestly hold the stated belief and the belief is objectively incorrect."  *Dearborn Heights*, 856 F.3d at 615.  Here, King's views about physician feedback "inherently reflect [his] assessment of and judgment about the underlying circumstances." *Markette v. XOMA Corp.*, 2017 WL 4310759, at *4 (N.D. Cal. Sept. 28, 2017).  The SAC makes no attempt to plead with particularity (or otherwise) that King did not hold these opinions or that such opinions were objectively untrue.  Rather, the SAC relies on a 2017 editorial questioning whether GOCOVRI's benefits justify its costs (Ex. 3) and allegations that sales representatives were

**MEMORANDUM ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
4:19-CV-08051-JSW**

1   receiving some reports of patients experiencing side effects.  (¶¶ 70, 111, 114, 161).  Neither of these

2   allegations renders King's opinion objectively untrue, and the SAC does not allege that King did not

3   *subjectively* believe his statements.  Thus, the opinions are inactionable as a matter of law.  *Markette*,

4   2017 WL 4310759, at *5 (dismissing claims where plaintiff "conflate[d] the accuracy of Defendants'

5   predictions and expectations with the sincerity with which Defendants held them").

### B.   Plaintiff Fails to Plead a Strong Inference of Scienter

7   "To adequately plead scienter under the PSLRA, the complaint must 'state with particularity

8   facts giving rise to a strong inference that [each] defendant acted with the required state of mind,'"

9   *i.e.,* with intent to mislead or deliberate recklessness.  *Rigel*, 697 F.3d at 877 (quoting 15 U.S.C. § 78u-

10  4(b)(2)(A)); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005); *Apollo Grp. Inc.*, 774 F.3d at

11  607.  The deliberate recklessness standard is "actually much closer to one of intent," *In re NVIDIA*

12  *Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014), and "reflects some degree of intentional or

13  conscious misconduct."  *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008).  Scienter

14  must be alleged with respect to each Individual Defendant.  *Apollo Grp. Inc.*, 774 F.3d at 607.  A court

15  must consider "plausible, nonculpable explanations for the defendant's conduct," *Tellabs, Inc. v.*

16  *Makor Issues & Rights, Limited*, 551 U.S. 308, 310 (2007), and a complaint can only survive "if the

17  malicious inference is at least as compelling as any opposing innocent inference." *Zucco,* 552 F.3d at

18  991.  The Court previously rejected Plaintiff's attempt to establish scienter through FEs and the core

19  operations theory[10]—the SAC fails to cure the AC's deficiencies.

20      ***No contemporaneous knowledge.***  Plaintiff attempts to establish scienter through unnamed

21  FEs, three of which (FE1, FE2, FE3) are not alleged to have had *any* contact with *any* Individual

22  Defendant.[11]  As such, allegations from these FEs "cannot provide reliable insight into the Defendants'

23  state of mind." *LendingClub*, 423 F. Supp. 3d at 814; *City of Sunrise Firefighters' Pension Fund v.*

24  *Oracle Corp.*, 2019 WL 6877195, at *19 (N.D. Cal. Dec. 17, 2019) (rejecting CW allegations where

25  CWs did not have any direct contact with defendant); *see also* Order at 10 (noting lack of a direct link

---

[10]  Plaintiff seemingly abandoned his executive departure theory in the SAC.  Nevertheless, FE1
maintains that "King was ultimately fired because the enrollments did not bring in revenue." (¶ 119).
The Court previously rejected the almost identical allegation.  Order at 30.

[11]  No former employee is alleged to have had any contact with Merriweather, nor are there any other
allegations to support his scienter.  As such, any claims against him should be dismissed.

1    to Individual Defendants "impacts [] ability to rely on the former employees to establish scienter").

2          Plaintiff's reliance on allegations by FE4, FE5[12], and FE6 regarding (1) discussions about

3    "fulfillment data" (¶¶ 88, 89, 238); (2) attendance at meetings (¶¶ 74, 90, 124, 239); and (3) the

4    termination of third-party consultants (¶¶ 73, 236) fare no better.  First, allegations that Went and King

5    "were familiar with the fulfillment data" because FE4 and FE6 "regularly discussed it" with them are

6    vague as to *when* these discussions took place and fail to "include the types of 'hard numbers' or

7    specific information . . . that would show [Went and King's] contemporaneous knowledge of the facts"

8    allegedly not disclosed, including, for example, what specifically the "fulfillment data" showed and

9    when it showed it.  (¶ 89); Order at 10; *see also  In re Splash Tech. Holdings, Inc. Sec. Litig.,* 160 F.

10   Supp. 2d 1059, 1080 (N.D. Cal. 2001) (allegations that "do[] not identify any specific information

11   which specific . . . 'top executives' allegedly received" are insufficient).

12         Second, the SAC lacks the requisite details about information discussed in the meetings Went

13   and King allegedly attended.  For example, the SAC claims that a payer survey[13] was discussed at a

14   summer 2017 meeting (¶ 236), but lacks any details about how many were surveyed or how many

15   indicated they would impose restrictions.  Further, Plaintiff fails to explain how a survey (not actual

16   payer determinations) conducted in early 2017—before GOCOVRI was even approved by the FDA—

17   contradicts statements (most of which were made a year or more after the survey) about what payers

18   ultimately did after GOCOVRI was approved and commercialized.  (*See e.g.,* ¶¶ 173-74, 177-78, 196-

19   97, 200-201); *see also LendingClub*, 423 F. Supp. 3d at 814–15 ("scienter is not properly alleged when

20   the CW statements . . . relate to events too far removed from the alleged misrepresentation to be

21   indicative of scienter." (internal quotes omitted)).  Plaintiff also fails to include any details about the

22   "reimbursement and operational" issues discussed at the Summer 2018 in-person Sales Advisory

23   Board meeting Went allegedly attended or how those would be indicative of scienter.  *See Order at*

---

[12] The SAC is internally inconsistent, first claiming that FE5 was two reporting levels removed from King and Went (¶ 45), but later stating that FE5 "reported directly to Went after King's departure." (¶ 232).  The AC alleged no direct reporting relationship between FE5 and Went.  (*See* AC ¶ 62).

[13] The SAC also alleges the existence of a "quantitative study of physicians to gauge the demand and potential market size for GOCOVRI" (¶ 72) but fails to allege the results of this study were ever presented or accessible to Individual Defendants.  *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1013 (N.D. Cal. 2017) (allegation of scienter insufficient when "no allegation that the individual Defendants ever saw 'specific reports and their contents' that could have revealed the falsity of the individual Defendants' statements.").

34; *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *12 (N.D. Cal. June 8, 2011) (allegations that only alleged "the existence of the meetings, and the general topics discussed" are insufficient).

Lastly, allegations about Went's firing of a consultant are speculative and irrelevant. As an initial matter, the SAC provides no basis for FE6's speculation that Went "had [a] consultant fired" for creating projections that were "too low." (¶ 73). Further, the SAC lacks any details about the type of projection(s) the consultant presented (e.g., revenue, prescription), what those projections indicated, or how the content of those projections was inconsistent with Defendants' public statements. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) ("[N]egative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient"). Nor does the SAC allege any well-pled facts indicating that the termination was the result of anything other than the consultant's unsatisfactory performance. The SAC also extrapolates, from this single alleged termination, a claimed ongoing practice of "fir[ing] consultants when [Went] did not like the results of market research." (¶ 236). It is precisely these types of unsubstantiated and speculatory allegations the PSLRA is intended to protect against.

***Core Operations Theory.*** Plaintiff fails to evade the Court's conclusion that this is not the "exceedingly rare" case where the core operations inference can establish scienter. As the Ninth Circuit has noted, "[p]roof under this theory is not easy." *Intuitive Surgical, Inc.*, 759 F.3d at 1062.

To invoke the core operations inference, Plaintiff first relies on Adamas' public statements to illustrate GOCOVRI was "significant to Adamas' commercial success." (¶¶ 230-31; *see also* AC ¶ 354-57). But the Court already rejected these allegations, noting that, in addition to disclosing the importance of successfully commercializing GOCOVRI, "Adamas also outlined the many factors that would impact its ability to [successfully commercialize]." Order at 32-33. *Veal v. LendingClub Corporation*, is also instructive. There, the court noted that the fact that origination fees were one of the company's main revenue sources "does not make every piece of information within the Company that relates to those fees critical to the business's core operations." *LendingClub.*, 423 F. Supp. 3d at 817. Indeed, it would "be unreasonable to expect" the Individual Defendants "to be so aware of all these factors," especially when the Company was continually receiving new payer, physician, and patient data and feedback. *Browning v. Amyris*, 2014 WL 1285175, at *16 (N.D. Cal. Mar. 24, 2014);

*see also LendingClub.*, 423 F. Supp. 3d at 817 ("[i]t is not 'absurd' to suggest that the Individual Defendants were not kept appraised of customer complaints described by the CWs.").

Plaintiff's vague allegations that "Defendants[14]" were "heavily involved" with the commercial launch of GOCOVRI (¶ 236; *see also* ¶ 232 ("deep involvement")) have been rejected by this Court (just as similar allegations have been rejected by others). *See* Order at 33 ("[g]eneral allegations of defendants hands-on management style, their interaction with other officers and employees, their attendance at monthly meetings, and their receipt of unspecified weekly or monthly reports," are not sufficient); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *17 (N.D. Cal. July 21, 2020) (allegations that defendant took a "heavy part" in weekly calls insufficient).[15]  Also insufficient are allegations, untethered to any Individual Defendant, about the availability of "Tableau dashboards" with "fulfillment data" or the existence of an "Excel spreadsheet used for forecasting which was broken down by payer."  (¶¶ 88, 90, 238).  Plaintiff alleges no facts suggesting that any Individual Defendant actually accessed or even saw these "dashboards" or "spreadsheet."[16]  Nor does the SAC allege specific details of these reports or how those contents contradicted Defendants' statements *at the time they were made*.  Courts have repeatedly rejected similar attempts to plead scienter with empty allegations regarding the existence of reports.  *See Dearborn Heights*, 856 F.3d at 620 (no scienter absent allegations that defendants actually accessed documents or information).

Similarly, allegations about "the Sales Advisory Board" which had "weekly meetings" with non-Defendant Patni "to receive feedback," (¶ 241; *see also* ¶¶ 91, 124, 178, 239-40),  fail to identify

---

[14] Plaintiff's attempt to plead scienter as to all "Defendants" as a group similarly fails.  Group pleading has long been rejected in this Circuit, except in the most limited circumstances, not present here. *See Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at *4 (C.D. Cal. Nov. 1, 2012).

[15] Plaintiff also relies on public statements by King and non-defendant Melissa Masterson about payer and physician feedback ((¶¶ 237, 241); Ex 6 at 12), but the Court already rejected these allegations. Order at 34-35.  Further, a statement by a non-defendant cannot constitute an admission by an Individual Defendant. *Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, *21 (N.D. Cal. Apr. 27, 2017) (individual alleged to have offered a statement inferring scienter was "not a defendant, and therefore, his statements cannot be deemed an admission of what Defendants knew at any time.").

[16] As discussed above, allegations that FE4 and FE6 "discussed fulfillment data with Went and King" fail to include details about when or what was discussed.  That FE4 "would be surprised" if Merriweather was not aware of the data is too speculative to be reliable. *LendingClub*, 423 F. Supp.3d at 815 (statements indicating merely speculation regarding defendants' knowledge are not enough).  Also insufficient are conclusory allegations that "Defendants received monthly reports."  (¶ 238; *see* Order at 33 ("'[g]eneral allegations of defendants . . . receipt of unspecified weekly or monthly reports,' are not sufficient to establish scienter").  Finally, that certain payer determinations were "publicly available on the payers' websites" and "based on information and belief" reported to Defendants by the payers (¶ 87) is entirely speculative and lacks *any* indicia of reliability.

MEMORANDUM ISO MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT
4:19-cv-08051-JSW

what "feedback" contradicted Defendants' statements, or whether the "feedback" was *ever* directly relayed to Defendants.[17]   Without these details, Plaintiff fails to "tie the specific contents of any of these data sources [or meetings] to particular statements so as to plausibly show that the Defendant who made each specified statement knowingly or recklessly spoke falsely." *Iron Workers Local 580 Joint Funds v. NVIDIA Corp.*, 522 F. Supp. 3d 660, 674-75 (N.D. Cal. 2021).

Finally, Plaintiff's scienter allegations based on the Company's subsequent decision to "cut the number of target[] physicians in half and acknowledge the need to offer a broader free sample program" (¶ 241), is textbook fraud by hindsight.  *See Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001) (rejecting optimistic statements about an ultimately disappointing merger as fraud by hindsight).

***Holistic Analysis.***  Viewed holistically, the more plausible inference is that Defendants were genuinely optimistic about GOCOVRI's prospects.  Ex. 11 at 10.  Defendants' "[h]onest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness." *Ronconi*, 253 F.3d at 432.  Noticeably missing from the SAC are *any* allegations of motive or stock sales.  Indeed, at least one Defendant *purchased* Adamas stock during the Class Period, further undermining Plaintiff's theory.  *See* Ex. 13; *see also In re Leapfrog Enter., Inc. Sec. Litig.*, 237 F. Supp. 3d 943, 952 (N.D. Cal. 2017) (defendants' purchase of stock near date of alleged misstatement "strongly weigh[ed] against scienter"); *In re Pixar Sec. Litig.,* 450 F. Supp. 2d 1096, 1107 (N.D. Cal. 2006) ("absence of insider trading by a defendant . . . undermines any inference of scienter.").  That Adamas struggled with certain aspects of the launch (of which it informed investors), and ultimately updated its commercialization strategy to overcome those struggles fails to establish *any* intent to defraud investors.  *Pivotal*, 2020 WL 4193384 at *17 ("unsuccessful sales strategy and disagreement within the company over its approach to selling" does not support an inference of scienter).

## IV.   CONCLUSION

For the above stated reasons, the SAC should be dismissed with prejudice.[18]

---

[17] While the SAC alleges Went's attendance at one such meeting (¶¶ 91, 124, 239), missing are details about the "reimbursement and operational" issues discussed and how they contradicted Went's public statements.  *See Pivotal*, 2020 WL 4193384, at *18 (allegations that defendant occasionally attended meetings insufficient to create a strong inference of scienter).  And FE2's "belie[f]" that Patni communicated the "feedback" to Went is clearly insufficient.  (¶¶ 115, 240).

[18] Because the SAC does not state a primary violation, Plaintiff's "control person" claim under Section 20(a) necessarily fails.  *Rigel*, 697 F.3d at 886.

1

Dated: December 10, 2021                    **COOLEY LLP**

2

3                                           */s/ Patrick E. Gibbs*
                                            Patrick Gibbs (183174)

4                                           Attorneys for Defendants,
                                            ADAMAS PHARMACEUTICALS, INC.,
5                                           GREGORY T. WENT,  ALFRED G.
                                            MERRIWEATHER, and RICHARD A. KING,
6

7

8

9

10

11

12
         259667212
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM ISO MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT
4:19-CV-08051-JSW**