COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
SHANNON M. EAGAN (212830)
(seagan@cooley.com)
TIJANA M. BRIEN (286590)
(tbrien@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:    (650) 843 5000
Facsimile:    (650) 843 7400

Attorneys for Defendants,
ADAMAS PHARMACEUTICALS, INC., GREGORY T.
WENT, ALFRED G. MERRIWEATHER, and RICHARD A.
KING

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ZAIDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ADAMAS PHARMACEUTICALS, INC., GREGORY T. WENT, ALFRED G. MERRIWEATHER and RICHARD A. KING<br><br>Defendants. | Case No. 4:19-cv-08051-JSW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:    March 11, 2022<br>Time:    9:00 a.m.<br>Dept.    Courtroom 5<br>Judge:   Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

Page

SUMMARY OF ARGUMENT ......................................................................................... v

I.      INTRODUCTION .................................................................................... 1

II.     ARGUMENT ........................................................................................... 1

        A.      Plaintiff Fails to Allege the Challenged Statements Were False or Misleading ............. 1

                1.      Pre-Launch Statements Were Not False or Misleading ............................... 2

                2.      Post-Launch Payer Support Statements Were Not False or Misleading ....................... 3

                3.      Patient and Physician Feedback Statements Are Not Actionable ............................... 6

                4.      Statements Concerning GOCOVRI's Market Access and Distribution ...................... 8

        B.      Plaintiff Fails to Allege a Strong Inference of Scienter ..................................... 9

                1.      Plaintiff Has Not Sufficiently Pled Contemporaneous Knowledge ........................... 10

                2.      Manufactured "Admissions" Do Not Support Scienter ................................. 13

                3.      Plaintiff Cannot Invoke the Core Operations Inference ............................. 15

                4.      Viewed Holistically, Plaintiff Still Fails to Establish Scienter ................................. 15

III.    CONCLUSION ..................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acadia Pharmaceuticals Inc. Sec. Litig.*,
   2020 WL 2838686 (S.D. Cal. June 1, 2020)...................................................................2, 3, 13

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014)....................................................................12, 14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   65 F. Supp. 3d 840 (N.D. Cal. 2014) ......................................................................................12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ....................................................................................................7

*Costabile v. Natus Medical Inc.*,
   293 F. Supp. 3d 994 (N.D. Cal. 2018) ......................................................................................2

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ...................................................................................................5

*In re Eventbrite, Inc. Sec. Litig.*,
   2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) .........................................................................11

*Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*,
   2020 WL 6939887 (C.D. Cal. Nov. 25, 2020)...........................................................................4

*Glazer Capital Mgmt. v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) .....................................................................................................9

*L.L. Capital Partners, L.P. v. Rockefeller Ctr. Properties, Inc.*,
   939 F. Supp. 294 (S.D.N.Y. 1996)............................................................................................3

*Macovski v. Groupon*,
   2021 WL 3550287 (N.D. Ill. Aug. 11, 2021) ...........................................................................9

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ...................................................................................................15

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) .................................................................................................12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)................................................................................................................2, 3

*Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*,
   538 F. Supp. 2d 662 (S.D.N.Y. 2008)..................................................................................4, 14

**TABLE OF AUTHORITIES**
(cont'd)

**Page(s)**

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020)................................................................14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .......................................................................................5

*In re Quality Systems, Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) .............................................................................5, 8, 10

*In re Rigel Pharm., Inc. Sec. Litig.*,
2009 WL 5125344 (N.D. Cal. Dec. 21, 2009)................................................................15

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .................................................................................. vi, 11

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ....................................................................................9, 15

*Scheller v. Nutanix, Inc.*,
450 F. Supp. 3d 1024 (N.D. Cal. 2020) ........................................................................13

*In re Solarcity Corp. Sec. Litig.*,
274 F. Supp. 3d 972 (N.D. Cal. 2017) ................................................................ vi, 6, 7, 11

*South Ferry LP #2 v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009)......................................................................11

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) ........................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)........................................................................................... vi, 1

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) ....................................................................10, 14

*In re Verisign, Inc., Derivative Litig.*,
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................................................... vi, 1

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
2017 WL 66281 (N.D. Cal. Jan. 4, 2017)....................................................................6, 7

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) .......................................................................................2

*Wozniak v. Align Tech., Inc.*,
850 F. Supp. 2d 1029 (N.D. Cal. 2012) ..........................................................................6

**REPLY ISO MOTION TO DISMISS SAC**
**4:19-CV-08051-JSW**

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page(s)**

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .................................................................................... vi, 10

**Statutes**

Private Securities Litigation Reform Act of 1995 ...........................................................4, 9, 10, 15

## SUMMARY OF ARGUMENT[1]

Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint ("Opposition" or "Opp.") fails to confront the deficiencies identified in Defendants' opening brief ("Motion" or "Mot."). The SAC should be dismissed for several reasons.

*First*, Plaintiff fails to plead a material misrepresentation or omission. The SAC challenges many of the same vague expressions of corporate optimism that this Court previously dismissed as inactionable. *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal. 2017). Plaintiff likewise recasts allegations based on subjective opinions or forward-looking statements this Court previously concluded were immunized by the Private Securities Litigation Reform Act ("PSLRA"). Neither the SAC nor the Opposition identifies any particularized facts or caselaw that alters the Court's prior ruling or suggests these challenged statements were false or misleading when made.

*Second*, Plaintiff fails to plead facts raising a "strong inference" of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14, 323–24 (2007). Like its predecessor, the SAC fails to establish Defendants' contemporaneous knowledge of or access to contradictory facts, as well as any motive, stock sales, or suspicious departures. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). The SAC attempts to sidestep this glaring deficiency by pointing to "new" allegations by previously-identified former employee ("FEs"), but these reframed—and, at times, contradictory—allegations do little to cure the defects previously identified by this Court. *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007). Further, Plaintiff's reliance on the core operations inference also fails because the SAC does not allege the particularized facts necessary to alter the Court's prior conclusion.

*Third and finally*, having failed to plead a primary violation, Plaintiff's Section 20(a) claim should also be dismissed. *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876-77, 886 (9th Cir. 2012). The SAC should be dismissed with prejudice because further amendment would be futile. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097-98 (9th Cir. 2002).

---

[1] Unless stated otherwise, capitalized terms are defined in Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") (Dkt. 85).

**REPLY ISO MOTION TO DISMISS SAC**
**4:19-CV-08051-JSW**

## I.    INTRODUCTION

The SAC presents a classic case of fraud by hindsight.  Seizing upon Adamas' post-launch struggles—and the market's disappointment with those struggles—Plaintiff combs public filings and statements for alleged misstatements.  But Plaintiff cannot wish away the forward-looking or optimistic nature of the statements he challenges.  Nor can he ignore Adamas' warnings to investors, which cautioned of the very things Plaintiff claims were omitted.  The Opposition glosses over much of Defendants' authority, and, instead, simply rehashes and exaggerates allegations from the SAC.  However, the SAC has not cured any of the deficiencies identified by the Court.

Plaintiff's challenges to statements expressing hopes for GOCOVRI's launch or expectations for how *third-party* payers, physicians, or patients would respond fail because the SAC lacks particularized facts showing that the statements were false *when made*.  Nor can Plaintiff successfully manufacture guarantees from statements such as that a "majority" of prescriptions were reimbursed "in a short period of time," which are not rendered misleading by allegations that some prescriptions were denied or took a little longer to fill.  The same is true for vague expressions of optimism around physician and patient responses being "positive" or "animated."

Plaintiff's scienter allegations are likewise deficient.  None of the SAC's additional FE allegations offer the detail necessary to plead the requisite strong inference of scienter.  The FE allegations still fail to identify with particularity "a single fact showing what each defendant knew, when he/she knew it, or how he/she acquired that knowledge."  *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007).  And, as this Court has already held, the "core operations" inference does not apply here.  With no allegations of contemporaneous contradictory facts, stock sales, or other motive to lie, the SAC comes nowhere near demonstrating an inference that is "at least as compelling as any opposing inference," a standard "not easy to satisfy."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

The Court should dismiss Plaintiff's SAC, this time with prejudice.

## II.    ARGUMENT

### A.    Plaintiff Fails to Allege the Challenged Statements Were False or Misleading

As explained in Defendants' Motion, the statements Plaintiff challenges in the SAC are not

actionable. (Mot. at 13–19). Many reflect opinions about payer and physician acceptance and thus fail under *Omnicare*. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 193 (2015). Others are forward-looking and shielded by the PSLRA's safe harbor provision. Still others are true, or are too vague to be actionable. Nothing in the Opposition undermines the arguments set forth in the Motion: Plaintiff's SAC fails to state a claim.

### 1.    Pre-Launch Statements Were Not False or Misleading

This Court previously held that King's pre-launch predictive statement that "there is no anticipation of requiring a step-through of amantadine IR" is forward-looking and therefore inactionable. (Order at 24-25); (¶ 160). To render the PSLRA's safe harbor inapplicable, Plaintiff must allege that the statement was (1) not accompanied by cautionary statements **and** (2) that King had "actual knowledge" that the statement was false. (Order at 18). Plaintiff does neither. Plaintiff does not even attempt to explain how the SAC establishes King's "actual knowledge" of the statement's falsity. Nor does he dispute that Adamas prefaced this statement with meaningful cautionary language. (Mot. at 6 & n.6); (Order at 25). As a result, the PSLRA's safe harbor bars this claim. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1190 (9th Cir. 2021).

Plaintiff's reliance on a single misapplied case, *Costabile v. Natus Medical Inc.*, 293 F. Supp. 3d 994 (N.D. Cal. 2018), to argue that King's statement is not forward-looking because of its "context" is unconvincing. In *Costabile*, defendants represented that they expected to receive the first prepayment on a supply contract by the end of the year, despite knowing that their client had already defaulted on the October and November prepayments. *Id.* at 1012. These statements were held actionable because they misrepresented a *present fact* that *actually existed*. *Id.* Here, the SAC alleges no comparable present, actually-existing fact underlying Defendants' predictions: Plaintiff does not, and cannot, identify any step-through requirements imposed by payers by the time of King's pre-launch August 2017 statement. (Order at 24). Instead, Plaintiff's allegations rest only on vague descriptions of a pre-launch *survey*, not actual decisions. (Opp. at 4). Such allegations are insufficient to render King's forward-looking statement actionable.

Similarly flawed are Plaintiff's challenges to King's pre-launch opinions[2] that payers would

---

[2] Plaintiff's reliance on *In re Acadia Pharm. Inc. Sec. Litig.*, 2020 WL 2838686 (S.D. Cal. June 1,

be "willing to support" GOCOVRI's list price or that physicians and payers "don't see [GOCOVRI's] profile as really having much to do with the amantadine IR profile." (Mot. at 5-6). Plaintiff argues that these statements are actionable because King received the results of a July 2017 payer survey, which suggested that an unspecified number of payers indicated that they "favored" a lower price. (¶ 74). Setting aside that the SAC does not allege that GOCOVRI's list price was above the price range these payers favored, Plaintiff does not explain how a preference by some payers for one price point establishes that King believed payers, as a general matter, were not "willing" to support GOCOVRI's price. Plaintiff also relies on a physician study from the "first half of 2017" to argue King's 2017 statements were false. (¶ 72). But nowhere does Plaintiff allege that King reviewed this physician study. Even if he had, the SAC fails to allege sufficient facts to render King's statements actionable. For example, Plaintiff alleges that "some" physicians responded that GOCOVRI sounded similar to amantadine IR,[3] but Plaintiff makes no attempt—not even on an approximate basis—to quantify the supposed physician skepticism. The reader is left to guess—was it 2, 20, 2,000? The SAC does not say. Without particularized facts, the general allegation that "some" physicians "commented" about GOCOVRI's similarities to amantadine IR or were "unlikely to switch to GOCOVRI," does not render King's opinions false or misleading.[4] *Omnicare*, 575 U.S. at 189-90 (opinion statement is not misleading "when an issuer knows, but fails to disclose, some fact cutting the other way"); *see also* (Order at 27).

**2.    Post-Launch Payer Support Statements Were Not False or Misleading**

*2018 Statements Regarding Payer Support.* Plaintiff challenges a risk factor warning, repeated in three SEC filings, cautioning that "although no payer has done so to date, a payer may

---

2020) to argue that these statements were not opinions is misplaced. Unlike *Acadia*, King's statements did not concern the presentation of clinical data on a drug's side effects and efficacy. *Id.* Rather, King's statements were assessments of recent market research.

[3] And Adamas was transparent that physicians and payers may question the similarities between GOCOVRI and amantadine IR. Ex. 4 at 8; FAC ¶ 83 (Adamas' lead investigator for the GOCOVRI clinical studies "discussed the challenge of differentiating the two at Adamas' Investor Meeting").

[4] Rather than distinguish *L.L. Capital Partners, L.P. v. Rockefeller Ctr. Properties, Inc.*, Plaintiff's Opposition confirms its applicability. (Opp. at 4 n.4 (citing 939 F. Supp. 294, 297 (S.D.N.Y. 1996))). As Plaintiff acknowledges, the opinion statement at issue in *L.L. Capital Partners* concerned defendants' "subjective evaluation of the likely future actions of third parties." *L.L. Capital*, 939 F. Supp. at 296. Likewise, King's statement as to the price Adamas believed payers would be willing to support was a subjective evaluation of the future actions of third party payers.

3

determine to require patients to use other formulations of amantadine *for dyskinesia* (even though it is not approved for that indication) prior to receiving reimbursement for GOCOVRI." (¶¶ 165, 167, 169 (emphasis added)).  Plaintiff claims that this warning, as well as King's May 2018 statement that he was "not aware of any plan that has a hard step" through amantadine IR, (¶ 185), was misleading because a few third-party payers had "required some sort of use of amantadine." (Opp. at 5).  But Plaintiff's argument ignores that to plead the falsity of statements about actions of *third parties*, a complaint must allege that the facts rendering the statements false or misleading were known to the speaker at the time.  (Mot. at 7); *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 670 (S.D.N.Y. 2008) (dismissing claim where plaintiff failed to include "specificity and detail" as to "what [defendants] knew, and when they knew it").  The SAC relies only "on information and belief" that the decisions were communicated to Defendants.  (¶ 87).  Such conclusory allegations are insufficient to show knowledge under the PSLRA.  *Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*, 2020 WL 6939887, at *10 (C.D. Cal. Nov. 25, 2020).[5]

Further, the Opposition fails to explain how Defendants' references to "payer support" are synonymous with the absence of step-through or prior authorization requirements.  (Mot. at 7–8); (¶¶ 181, 193, 194, 200, 206(b)).  Contrary to Plaintiff's assertions, (Opp. at 7), Defendants never suggested that payers would not impose any restrictions or that coverage determinations were never an impediment to prescription fulfillment.  Just the opposite, Adamas was explicit that "there's a prior authorization here you all should expect."  (Ex. 9 at 7).  Moreover, the Court previously dismissed such statements as puffery and it should do so here as well.  (Order at 16 (statement in FAC ¶ 281 describing "strong support from payers" dismissed as puffery)).

***2018 Statements Regarding Prescription Fulfillment and Reimbursement.***  Plaintiff glosses over the deficiencies and inconsistencies in his allegations about the vague statements he

---

[5] That Plaintiff finds Defendants' focus on the limiter "for dyskinesia" in the risk factor warning to be "confusing" does not create a "factual dispute." (*See* Opp. at 5).  The reason for the language is simple: amantadine IR had never been approved "for dyskinesia" and as such, amantadine IR would not previously have been prescribed "for dyskinesia."  Plaintiff fails to show that *any* of the alleged payer coverage determinations required that a physician first prescribe amantadine IR *for dyskinesia* (*i.e.,* a "hard" step) – which is what the risk factor warned of.  Moreover, if, as Plaintiff argues, "soft" steps were sufficient to render the statements misleading, then the SAC shows that the market was aware of the existence of such restrictions by no later than April 2018 (*see* ¶ 96). And the lack of any market reaction at that time demonstrates that the market was not misled.

4

challenges regarding the speed of prescription fulfillment and reimbursement. (Mot. at 8; *see* (¶¶ 183, 193-94, 206, 209). Ignoring Defendants' authority, Plaintiff argues that the Court already "reject[ed] Defendants' puffery arguments." (Opp. at 7). Plaintiff misstates the record. *E.g.*, (Order at 16 (concluding statement that "the majority of prescriptions are being reimbursed in a really good period of time" is puffery)).[6]

More importantly, even if this Court were to find the statements were not mere puffery, Plaintiff still fails to show that any Defendant knew such statements were false when made. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005). As explained in further detail below, the SAC alleges no facts to support the argument that "Defendants" purported access to fulfillment data generally (without any allegations of what that data showed) renders these statements false. *See infra* at 12. Plaintiff's erroneous reliance on *In re Quality Systems, Inc. Sec Litig.*, 865 F.3d 1130 (9th Cir. 2017), does not save his claim. (Opp. at 7). The statements at issue in *Quality Systems* were actionable because each statement constituted "a concrete description of the past and present state of the pipeline" and "reassured investors" that the "pipeline was unchanged, or even growing." 865 F.3d at 1143–44. In contrast, no similar data or verifiable representations have been alleged here. For example, whether a prescription was being reimbursed "quickly" or "rapidly" could be true regardless of whether it took 14 or 28 days. Indeed, as the statements make clear when viewed in context, Adamas was not making any guarantees as to how the reimbursement process was going with respect to each and every patient or prescription. *See* (Mot. at 8). Moreover, Plaintiff is unable to explain how isolated complaints or reimbursement delays[7] are inconsistent with King's observation that "*[g]enerally*, we're seeing reimbursement for prescriptions happen quickly" or that a "significant majority" of prescriptions were "being reimbursed in a short period of time." (¶¶ 183, 206(a) (emphasis added)); *see Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (criticizing witness

---

[6] To the extent puffery arguments were not addressed, the Order makes clear that the "parties should not assume the Court has rejected other grounds for dismissal by its silence." (Order at 14 n.11).
[7] Even with Plaintiff's convenient transcription error, (*see* Opp. at 6-7, n.6), which changed the number of prescriptions denied drom 20-30 in the FAC to 70-80 in the SAC, 70 to 80 denied prescriptions (out of thousands across the company) are not inconsistent with King's statements or Adamas' warnings that there *may* be "significant delays" in reimbursement. (¶¶ 173, 177).

statements that "provide only snippets of information, not a view of the company's overall health").

### 3. Patient and Physician Feedback Statements Are Not Actionable

***Puffery Statements.*** Many of the challenged statements concerning physician and patient feedback are likewise corporate puffery. (Mot. at 10). Again, Plaintiff ignores the cases cited in Defendants' Motion. *E.g.*, *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 995 (N.D. Cal. 2017) (statements characterizing partnerships and product demand as "strong" are inactionable puffery); *Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) (same for statements such as "we're getting really great feedback" in connection with a new product launch). Instead, Plaintiff takes the remarkable position that simply because these statements were made "during earnings calls" they are actionable because patient and physician feedback was a "core concern." (Opp. at 8). This argument is baseless. The Court previously dismissed as puffery similar statements regarding physician and patient feedback *from the same conference calls*. *Compare* (Order at 16 (dismissing FAC ¶¶ 250, 265, 270, and 279 as puffery, including statements describing physician and patient feedback as "strong" and "overwhelmingly positive")), *with* (¶ 179 ("[w]e're hearing loudly and clearly from these patients about the successes they are seeing")), *and* (¶ 198 ("positive reinforcement to the prescriber of the effects of a product is key to seeing continued and expanded usage by physicians over time")).[8]

Plaintiff also misstates the holding of *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, 2017 WL 66281, at *17 (N.D. Cal. Jan. 4, 2017). *Volkswagen* dealt with statements that misrepresented Volkswagen's existing compliance with emissions regulations (*e.g.*, "all engines meet Euro-5 emissions standard; all US engines fulfil BIN5 / ULEV PZEV"), not merely "environmentally friendly" statements. *Id.* The contrast with this case is clear: rather than commenting on objective and identifiable standards, Defendants merely gave their general impression of physician and patient feedback. Further, it was not enough that environmental friendliness was a concern of Volkswagen's, or even a "core concern"—the court found the statements actionable because they spoke to the *central* element of Volkswagen's core

---

[8] Likely based on the same logic, Plaintiff concedes that King's statement that GOCOVRI's profile "is very enticing to physicians" is puffery. (Opp. at 8 n.7 (abandoning challenge to ¶ 191)).

business strategy around its "clean diesel vehicles." *Id*. While patient and physician feedback may have been generally important, Plaintiff does not and cannot argue that it was the central element of Adamas' business strategy, such that Adamas sharing that physician or patient feedback was "positive" or "animated" became an "integral part of a representation of material fact." *Id*.

Finally, Plaintiff attempts to use a stock price drop to suggest that Defendants' vague statements were "material" to investors. (Opp. at 8). Plaintiff's argument is a strawman. Defendants have not argued that all statements relating to patients and prescribers were "immaterial to investors." Rather, vague statements referring to physician and patient opinions were so indeterminate that reasonable investors would not have considered them material. *Solarcity*, 274 F. Supp. 3d at 994 (puffery statements are "not capable of objective verification," and "lack a standard against which a reasonable investor could expect them to be pegged.") The stock price reaction at the close of the class period is irrelevant to that issue.[9]

***Opinion Statements***. In conclusory fashion, Plaintiff next argues that opinion statements concerning patient and physician feedback are actionable because "the challenged portions are materially misleading statements of fact."[10] (Opp. at 9); *see* (¶¶ 189 196, 198, 202). Plaintiff erroneously bases this argument on alleged field team feedback regarding fulfillment and payer requirement challenges. These alleged challenges, however, are not related to King's opinion statements commenting on GOCOVRI's *efficacy as a treatment*. (¶ 189 (discussing feedback "about ***the impact that GOCOVRI has on people's lives***…So I think ***that feedback*** is positive, and it's animated." (emphasis added))); (¶ 198 ("This positive reinforcement to the prescriber ***of the effects of a product*** is key to seeing continued and expanded usage by physicians over time." (emphasis added))).[11] Plaintiff does not allege any feedback about the ***efficacy*** or ***impact*** of

---

[9] Plaintiff also argues that these statements were false because King "knew" that "many" physicians "were unwilling to prescribe" GOCOVRI. (Opp. at 9). But that assertion is contradicted by Plaintiff's own allegations. As FE6 acknowledged in the FAC (an allegation since deleted in the SAC), "GOCOVRI got off to a good start in terms of number of prescriptions written." (FAC ¶ 96).
[10] The Court previously dismissed the opinion statement alleged in ¶ 204 of the SAC and the SAC adds no allegations that would alter that conclusion. (Order at 18 (dismissing FAC ¶ 285)).
[11] For an opinion to be actionable, Plaintiff must show the speaker "does not honestly hold the stated belief," omitted "particular (and material) facts going to the basis" of the opinion, or supplied supporting facts that "were untrue." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017). Plaintiff has made no such showing.

GOCOVRI on patients' lives that contradict Defendants' statements and, therefore, Plaintiff fails to allege any material misstatements of fact.

Plaintiff also uses selective quotes to argue the statement that "physicians 'become regular and continuous prescribers of GOCOVRI'" was not an opinion, but a material misstatement of fact. (Opp. at 8 ("King stated that…physicians 'become regular and continuous prescribers of GOCOVRI'")) (selectively citing ¶ 202)). But the statement in its entirety reads: "*as physicians move through that trial period*, they become regular and continuous prescribers of GOCOVRI *at that stage*." (¶ 202) (emphasis added). Far from asserting that all physicians "become regular and continuous prescribers of GOCOVRI," King merely stated his *opinion* as to the effectiveness of the trial period in convincing physicians to become repeat GOCOVRI prescribers. The SAC lacks any particularized facts suggesting that King did not actually believe that opinion.

Finally, Plaintiff has not demonstrated any link between *specific* allegedly contradictory feedback and Defendants' individual knowledge of such feedback; at most, Plaintiff points to FE4's alleged discussions with Defendants regarding "fulfillment data" generally. As discussed further below, this fails to assert what fulfillment data Defendants were allegedly aware of, and does not even attempt to show the existence, let alone Defendants' awareness of, contradictory data.

### 4.    Statements Concerning GOCOVRI's Market Access and Distribution

Vague statements that GOCOVRI's specialty pharmacy, Onboard, was "going very well," Adamas "continued to improve and educate on its seamless access," or that access to GOCOVRI was "reasonably straightforwardly" are the type of "feel good monikers" that constitute puffery. (Mot. at 9); (¶¶ 182, 187, 208, 211); *see* (Order at 16 (citing *Quality Sys.*, 865 F.3d at 1144)). Plaintiff, again, falsely claims that the Court rejected Defendants' puffery arguments because the Order did not affirmatively rule on those grounds. *See* (Order at 14 n.11). But because the Court had dismissed many of these statements for other reasons, the Court had no need to reach many of Defendants' puffery arguments.[12] *E.g.*, (Order at 12, 26 (dismissing FAC ¶¶ 259, 281, 291, 296)).

Plaintiff's attempt to nitpick Adamas' risk disclosures is similarly unavailing. Plaintiff

---

[12] The SAC also offers no support for Plaintiff's contention that Adamas was not "continu[ing] to improve and educate on the seamless access experience" or that fulfilment was not occurring "reasonably straightforwardly"—or what that would even mean. (¶ 182).

attacks as misleading Adamas' warnings that it was "heavily dependent on third-party logistics, pharmacy and distribution partners" and that Adamas' business would suffer if these third parties "are unable to perform effectively or if they do not provide efficient distribution" because the risk of "inefficient" distribution of GOCOVRI had already come to fruition. (Opp. at 10 n.8) discussing ¶¶ 171, 175); *see* (Mot. at 9 n.9).  But neither the SAC nor the Opposition identifies any ***third-party*** distribution partner performance issues.   Rather, the SAC alleges that payer coverage determinations caused delays in prescription fulfillment.  (¶¶ 172, 176).  Payers are not distribution partners, and the Court should reject Plaintiff's attempt to rewrite Defendants' risk factors.

Plaintiff's invocation of *Macovski v. Groupon, Inc.*, in an effort to derive an admission from Adamas' business decisions to extend the QuickStart program or modify its fulfillment program, is inexplicable.  2021 WL 3550287 (N.D. Ill. Aug. 11, 2021).  *Groupon* dealt with a verbal admission from defendants that they became aware of problems in a timeframe beginning months before challenged statements were made.   *Id.* at *8.   Plaintiff alleges no such admission of contemporaneous knowledge here.  Plaintiff's sole assertion is that Adamas acknowledged, after the Class Period and with the benefit of hindsight, that "there is an opportunity to improve [Adamas'] operational effectiveness in the fulfilment process," and that it had taken steps to do so. (¶¶ 152–53).  Far from adequately pleading falsity, in making allegations focused on Adamas' post-Class Period reassessment of its fulfillment process, Plaintiff engages in classic and impermissible fraud by hindsight.[13]  *See Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001).

**B.     Plaintiff Fails to Allege a Strong Inference of Scienter**

Plaintiff's Opposition argues scienter on the basis that Defendants "knew, or should have known" certain information throughout the Class Period.  (Opp. at 10, 15); *see also* (Opp. at 11 ("These pre-launch warnings . . . put Defendants on notice.")).  But "should have known" is not the standard for establishing scienter.  *See e.g.*, *Glazer Capital Mgmt. v. Magistri*, 549 F.3d 736, 747–48 (9th Cir. 2008) (inference that defendant "should have known . . . is not sufficient to meet the stringent scienter pleading requirements of the PSLRA").  Rather, where, as here, Plaintiff bases

---

[13] Plaintiff's Opposition asserts that Adamas "admitted" that improving operational fulfillment issues was "necessary." (Opp. at 6 (citing ¶¶ 151–57)).  However, nowhere in the cited paragraphs do Defendants make such an admission.

his falsity theory on allegedly omitted information, he must allege "a highly unreasonable omission, ***involving not merely simple, or even inexcusable negligence***, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) (emphasis added).   The SAC lacks particularized facts meeting that standard.

**1.       Plaintiff Has Not Sufficiently Pled Contemporaneous Knowledge**

Plaintiff does not dispute that three of the six FEs had no contact with any of the Individual Defendants.[14]  (Opp. at 13-14).  Instead, Plaintiff argues that "each FE had personal knowledge of the pervasive . . . issues" and that these allegations support a strong inference together with "the SAC's other allegations."[15]  *Id.*   But the FE's "personal knowledge" of certain issues does not overcome the lack of contact with any Individual Defendant and consequent inability to provide any information about *Defendants'* "state of mind."[16]  *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019) (allegations from FEs with no direct contact with defendants "cannot provide reliable insight into the Defendants' state of mind."); *see* (Order at 10).  The other three FEs' allegations—relating to (1) the existence of 2017 surveys, (2) disagreements on projections, (3) the existence of fulfillment data, and (4) unspecific "field team" reports—fare no better.

***2017 Surveys.***  Plaintiff's allegations related to the 2017 surveys do not "include the types of 'hard numbers' or specific information about research or other reports that would show the Individual Defendants' contemporaneous knowledge of the facts Plaintiff claims they failed to disclose." (Order at 10, 34).  Plaintiff's Opposition merely claims that Defendants "demand certain unnecessary details." (Opp. at 11).  However, Plaintiff's allegations include *no* details about the survey results, instead relying on conclusory assertions that an undisclosed number[17] of "payers

---

[14] Plaintiff also does not dispute that ***none*** of the FEs had any contact with Defendant Merriweather.
[15] Plaintiff does not dispute that the SAC is internally inconsistent (and inconsistent with the FAC) with respect to FE5's interaction and contact with Went and King and the Opposition fails to explain that discrepancy. (*See* Mot. at 12).
[16] Unlike in *Quality Systems*, where the plaintiffs alleged (and the defendants admitted) that they actually accessed ***and used*** allegedly contradictory databases and sales data, Plaintiff's allegations lack specificity or any link between the challenged data and the Individual Defendants' actual interaction with it.  *Quality Sys.*, 865 F.3d at 1145.
[17] King's statements reference the number of payers surveyed as a whole, not the actual results or

would impose [] reimbursement restrictions" and that there was physician "confusion between GOCOVRI and amantadine." (Opp. at 10-11). That is not enough. Without more, it cannot be said that Defendants knew (or were deliberately reckless in not knowing) their statements were misleading.[18] *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *13 (N.D. Cal. Apr. 28, 2020) ("Without context or other quantifiable metrics [the court] cannot determine how many customers FE 2 was responsible for migrating, whether they migrated after FE 2 left in November 2018, or whether FE 2's customers are even a representative sample"); *Solarcity,* 274 F. Supp. 3d at 999 (rejecting vague allegations that failed to include what "many" means or whether the number was "sufficiently high to meaningfully alter the key operating metrics").

Moreover, even if such details were alleged, Plaintiff's theory misses a key component. *None* of the allegations suggest that any Defendant knew, or was reckless in not knowing, that failing to disclose pre-launch survey results about a small subset of payers or physicians rendered later statements about potential future coverage or post-launch prescriptions false or misleading.[19] *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 883 (9th Cir. 2012) (knowledge of the information is not enough, Defendants must know their statements were false or misleading).

***Projections Disagreement.*** As an initial matter, Plaintiff does not challenge a single specific statement about projections or the number of prescriptions filled. Instead, Plaintiff maintains that some unspecified projections were "low" and that rather than accept these supposed "low projections, Went fired a consultant, only to have a second consultant come up with the same projections." (Opp. at 11 n.10). The SAC lacks any allegations about what types of projections these "low projections" were (*e.g.*, finances, prescriptions, headcount), let alone whether the

---

the number of payers that allegedly indicated they would impose restrictions.

[18] Plaintiff argues that these surveys "put Defendants on notice"—as discussed earlier, that is not the standard. And *South Ferry* does not compel otherwise. There, plaintiff alleged that defendant indicated his intimate knowledge of defendant company "WaMu's systems capacity and hedges." *South Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1258 (W.D. Wash. 2009). At most, Plaintiff pleads that "King admitted to receiving daily feedback from the field team," (Opp. at 13), without any specificity as to what that feedback entailed or what it contradicted.

[19] Plaintiff also incorrectly argues that "Defendants do not directly challenge Went and King's knowledge of this early market feedback." (Opp. at 11). Defendants explicitly challenged whether any Defendant had knowledge of these surveys or the detailed results of such surveys. (Mot. at 12). In fact, Plaintiff's allegations do not put the physician survey in the hands of a single Defendant and are unspecific about when, or to what extent, the payer survey was reviewed.

projections were inconsistent with any of the statements made by Went (or any other Defendant). (Mot. at 13). Plaintiff cannot salvage this allegation by arguing that "this firing exemplifies Went's ignoring red flags" and "regularly not accepting information FE6 provided to him" when the SAC does not detail what "information" was given to Went or when. *See Browning v. Amyris, Inc.*, 2014 WL 1285175, at \*16 (N.D. Cal. Mar. 24, 2014) (allegations that "defendant 'could regularly track its sales data' or 'tracked [ ] demand using data' '[a]re insufficient to plead scienter'").

*Access to Data.* Plaintiff's allegations regarding access to dashboards and data also fall short. Plaintiff argues that "*Adamas*" "tracked" coverage determinations and its field team "regularly reported" alleged physician frustration. (Opp. at 12). Similarly, Plaintiff alleges that the "*Company* used an Excel spreadsheet to keep track of each payer" and "received data from Onboard via both monthly fulfillment reports and real-time Tableau dashboards."[20] (*Id.*). But Plaintiff fails to put any of this information in the hands of any Individual Defendant at a specific time, instead continuing to rely on generalized allegations that FEs "regularly discussed this fulfillment data with King and Went." (*Id.*). This ignores that the information must be particularized and tied back to the Individual Defendants at the time the challenged statements were made. *See* (Mot. at 12, 14); *In re Splash Tech. Holdings, Inc. Sec. Litig.,* 160 F. Supp. 2d 1059, 1070–71 (N.D. Cal. 2001) (finding insufficient allegations of "certain reports and/or forecasts" that failed to include specific "facts concerning the identity of the recipients, the manner in which the reports were provided, the dates on which they were transmitted, or the content of those reports"). The class period is 19 months long—therefore, allegations of the temporal proximity between when (if ever) the dashboards or information was accessed and the alleged misstatements must be alleged with particularity, as do the contents of that information and how it contradicted the challenged statements made at the time.[21] *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align*

---

[20] Plaintiff claims that the Tableau dashboards "necessarily would include payers' coverage determinations" (Opp. at 12). But no FE claims, nor does the SAC allege, that these dashboards included payer coverage decisions.

[21] Plaintiff argues these reports support scienter because they include "at least some specifics from those reports as well as such facts as may indicate their reliability." (Opp. at 12 n.11). But Plaintiff's cited cases are inapposite. In *Oracle*, plaintiff had "hard numbers," and made "specific allegations regarding large portions of Oracle's sales data," and quoted a defendant saying "I can see every deal out there that my reps around the world are working." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230-31 (9th Cir. 2004). Here, there are no allegations

*Tech., Inc.*, 65 F. Supp. 3d 840, 859 n.8 (N.D. Cal. 2014), *aff'd*, 856 F.3d 605 (9th Cir. 2017) (CW's statements "relate to events too far removed from the alleged misrepresentation to be indicative of scienter"). The SAC fails to allege any of these key components.

*Field Team Feedback.* Plaintiff also tries to establish scienter through allegations that "Adamas' field team almost immediately reported physicians' frustrations with GOCOVRI and its side effects." (Opp. at 12). Noticeably absent are allegations as to whom these "immediate" frustrations were reported. Plaintiff's allegation that the Sales Advisory Board was created for providing feedback does not cure this deficiency. (Opp. at 13). The SAC alleges that the Sales Advisory Board was led by and reported to a non-defendant. (¶ 45). That one of the Defendants (Went) attended a single meeting of the Sales Advisory Board in the summer of 2018 is insufficient. (¶ 124). The generic allegation that "reimbursement and operational issues" were discussed with Went at that meeting does not establish Went's knowledge of information contradicting his statements. Nor can a single meeting near the last alleged misstatement be sufficient to establish scienter throughout a 19-month class period. And King's statement[22] that "we" receive daily feedback, without any details about what that feedback entailed, who "we" constituted, or when (if ever) that specific feedback was relayed to Defendants, is insufficient to establish scienter. (¶ 189); *Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (complaint lacking allegations of what defendants "actually knew" did not adequately plead scienter).

### 2.    Manufactured "Admissions" Do Not Support Scienter

Plaintiff argues that "King admitted to knowing that payers were requiring use of amantadine" and claims that "his attempt to parse-out a 'hard' step further supports King's scienter." (Opp. at 12); (¶ 97). However, Plaintiff does not articulate how explaining the difference between a hard and soft step is somehow indicative of scienter. Despite Plaintiff's attempt to argue otherwise, the SAC lacks a single allegation that any Individual Defendants *actually knew* of any

---

of Defendants admitting to access to specific data or dashboards. And in *Acadia*, the court focused on the fact that defendants had an affirmative legal obligation to report the omitted information, noting that "given the reporting requirements, Defendants cannot claim ignorance of the payments." *See Acadia*, 2020 WL 2838686, at *7. No such reporting requirements exist here.

[22] Plaintiff also ignores that a statement by a non-Defendant cannot constitute an admission for purposes of establishing scienter. (Mot. at 14 n.15).

payer's determination at the time the challenged statements were made. Indeed, Plaintiff fails to address the fact that the only (vague) allegation related to knowledge of payer determinations Plaintiff makes is based on "information and belief." (Mot. at 7 n.7, 14 n.16). Plaintiff likewise fails to address the absurdity of suggesting that Adamas executives were looking at prescription fulfillment issues and the related reasons on a patient-by-patient basis. *Browning*, 2014 WL 1285175, at *16; *see LendingClub*, 423 F. Supp. 3d at 817 ("It is not 'absurd' to suggest that the Individual Defendants were not kept appraised of customer complaints described by the CWs.").

Nor does Went's alleged "admission" in November 2018 "that a payer requirement of amantadine trial was the 'market reality [since] before we launched'" establish scienter. Went did not say "that a payer requirement of amantadine trial" was the "market reality"—those are Plaintiff's words. (Opp. at 11). Went was asked to comment on whether the launch of another drug, OSMOLEX ER, would impact GOCOVRI's coverage determinations and in that context he noted the existence of amantadine IR and it being "something that physicians are encouraged to try" is a "market reality" Adamas had "been facing" since launch. (Ex. 25 at 11-12). Adamas was always transparent about the "the challenge of differentiat[ing] the two" drugs. *See, e.g.*, (FAC ¶ 83); (Ex. 4 at 8). It was also the very thing Adamas repeatedly warned the market about in its SEC filings prior to, and throughout, the Class Period. *See e.g.*, (Ex. 1 at 32 ("Coverage decisions may depend on clinical and economic standards that disfavor new drug products when more established or lower cost therapeutic alternatives are already available")). That the risk later materialized does not mean there was fraud. In fact, Adamas' transparency about the very information that Plaintiff claims Defendants omitted supports the opposite inference.

Finally, Plaintiff's arguments about internal business strategy changes at Adamas, (Opp. at 6-7), are nothing more than fraud by hindsight. Plaintiff does not cite a single case to support the proposition that later changes in compensation or operational structure can establish scienter. Nor can he, because a change in sales strategy, with nothing more, does not constitute fraud. *See In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *17 (N.D. Cal. July 21, 2020) ("unsuccessful sales strategy and disagreement within the company over its approach to selling" does not support an inference of scienter); *Panther Partners*, 538 F. Supp. 2d at 672 ("An earlier statement is not

somehow made misleading simply because it failed to foretell a defect problem which later materialized.").

### 3.    Plaintiff Cannot Invoke the Core Operations Inference

The Court discussed the core operations inference at length in its Order, noting in detail the three circumstances where the inference may be used, before rejecting the inference as inapplicable here. (Order at 31-35). Plaintiff claims that the "SAC has added detailed and specific allegations," which now bring this case into the purview of the core operations doctrine. (Opp. at 14). However, as discussed above, these allegations fall short of the particularized requirement imposed under the PSLRA and do not change the Court's prior conclusion.

### 4.    Viewed Holistically, Plaintiff Still Fails to Establish Scienter

When viewed holistically, the more reasonable inference is that Adamas was genuinely optimistic about the launch of GOCOVRI. While this would be Adamas' first venture into commercialization, it was transparent with the market about its inexperience and the hurdles that it would have to overcome. *See e.g.*, (Ex. 1 at 31; Ex. 7 at 32). The fact that Adamas may have struggled post-launch does not mean that the market was misled. *See Ronconi*, 253 F.3d at 432 ("[h]onest optimism followed by disappointment is not the same as lying or misleading with deliberate recklessness"). In fact, Plaintiff does not plead a single motive, financial or otherwise, for Defendants to lie. Plaintiff does not dispute that no Defendant sold stock during the Class Period and one Defendant actually purchased stock. While motive or stock sales might not be necessary to plead scienter, as this Court has found, the lack of both surely weighs against it. *See* (Order at 36); *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) ("If defendants had sought to profit from this scheme in the interim, such as by selling off their stock or selling the company at a premium, the theory might have more legs.").

### III.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.[23]

---

[23] Plaintiff's inability to state a Section 10(b) claim requires dismissal of the Section 20(a) claim. *In re Rigel Pharm., Inc. Sec. Litig.*, 2009 WL 5125344, at *8 (N.D. Cal. Dec. 21, 2009).

Dated: February 2, 2022                                 COOLEY LLP


                                                        By:   */s/Patrick Gibbs*
                                                              Patrick Gibbs

                                                        Attorneys for Defendants Adamas
                                                        Pharmaceuticals, Inc., Gregory T. Went, Alfred
                                                        G. Merriweather and Richard A. King

Cooley LLP

**REPLY ISO MOTION TO DISMISS SAC**
**CASE NO.: 4:19-CV-08051-JSW**