UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ZAIDI,<br><br>    Plaintiff,<br><br>v.<br><br>ADAMAS PHARMACEUTICALS, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-08051-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 85 |

Now before the Court for consideration is the motion to dismiss filed by Defendants Adamas Pharmaceuticals, Inc. ("Adamas"), Gregory T. Went ("Went"), Alfred G. Merriweather ("Merriweather"), and Richard A. King ("King").[1] The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion, with leave to amend as noted in this Order.

## BACKGROUND

Lead Plaintiff Ralph Martinez ("Martinez"), on behalf of himself and other investors who acquired Adamas securities between August 8, 2017 and March 4, 2019 (the "Class Period"), alleges Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

On October 8, 2021, the Court granted Defendants' motion to dismiss Martinez's first amended complaint ("FAC"), with leave to amend.[2] (Dkt. No. 79, "Order".) As discussed in that Order, Adamas is a pharmaceutical company that specializes in developing treatments for chronic

---

[1]     The Court refers to Went, Merriweather, and King as the "Individual Defendants."

[2]     Martinez amended the Class Period, which originally ran through September 30, 2019 and has limited the number of statements he asserts are misleading.

1

neurological disorders, including Parkinson's disease. Went acted as Adamas' Chief Executive Officer and its Chairman of the Board of Directors from its founding in 2000 to September 16, 2019, when he transitioned to a strategic advisory role. Merriweather acted as Adamas' Chief Financial Officer from June 2017 until December 31, 2019, when he retired. King acted as Adamas' Chief Operating Officer from April 27, 2017 to September 15, 2018, when he resigned for personal reasons. (Order at 1:24-2:5; *see also* Second Amended Class Action Complaint ("SAC") ¶¶ 28, 30, 32.)

One treatment for Parkinson's is levodopa therapy, which "replaces lost dopamine in patients." (SAC ¶ 2.) Martinez alleges that a primary side effect of levodopa therapy is dyskinesia: the "involuntary and uncontrolled movements that occur when there is too much dopamine." (*Id*.) On August 24, 2017, the Food and Drug Administration ("FDA") approved Adamas' drug GOCOVRI for treatment of levodopa-induced-dyskinesia ("LID"). (*Id.* ¶ 8.) GOCOVRI was the "first drug treatment Adamas … developed and … market[ed] entirely on its own" and was Adamas' primary source of revenue during the Class Period. (*Id.* ¶¶ 2, 55.) The drug is an extended release formulation of amantadine, which Martinez alleges had been used to treat LID for decades even though it had not been approved by the FDA for that purpose. (*Id.* ¶¶ 3-4.) Adamas designed GOCOVRI to be administered at night and in a single dose. That dosage would permit maximum concentration of the drug during the day, when dyskinesia would be most bothersome, and would permit a lower concentration at night, when amantadine might impact sleep. These facts purportedly differentiated GOCOVRI from generic immediate-release versions of amantadine ("amantadine IR"), which was designed to be taken in multiple doses throughout the day. (*Id.* ¶¶ 3-4; *see also id.* ¶¶ 48-52.)

Martinez challenges statements that fall into three categories: (1) payer feedback about GOCOVRI and their decisions about coverage and reimbursement; (2) physicians' and patients' responses to GOCOVRI; and (3) the effectiveness of Adamas' specialty pharmacy ("Onboard") for distribution and the Onboard process in general. Adamas publicly stated that its success as a company depended upon GOCOVRI's commercial success. It also made public statements that purported to identify risks that could impact that success. (*Id.* ¶ 55.) Martinez's primary theory of

2

liability is that the Individual Defendants knew that many – if not all – of these risks had come to fruition by the time they made the challenged statements.

For example, Martinez alleges that amantadine IR was significantly cheaper than GOCOVRI and had been used for decades to treat LID. As a result, Adamas needed payers and physicians to differentiate GOCOVRI from amantadine IR. Martinez alleges that before it launched GOCOVRI, Adamas performed surveys of payers to "understand whether and how GOCOVRI would be covered at different price points." (*Id.* ¶ 74.) According to Martinez, the survey results "showed payers favored the lowest price range" and that regardless of price, "certain payers indicated that they would impose" access restrictions, including step-through therapy. (*Id.*)

Martinez also alleges that Adamas conducted a survey of physicians in 2017. The results of those surveys allegedly showed physicians did not see a difference between GOCOVRI and amantadine IR. (*See, e.g., id.* ¶¶ 72-73.) Thus, Martinez alleges that because of GOCOVRI's cost and the alleged similarity to amantadine IR, Defendants knew from the outset that payers would place restrictions on reimbursements, which would affect the likelihood that physicians would be willing to prescribe and the likelihood that patients would be willing to use GOCOVRI. (*See generally* SAC ¶¶ 56-60, 86-91.)

Martinez also alleges that Adamas' decision to distribute GOCOVRI through Onboard and its decision not to provide free samples to physicians negatively impacted GOCOVRI's success. (*See, e.g., id.* ¶¶ 61-65, 112-113) According to Martinez, despite representations that the Onboard process was "seamless" and that prescriptions were being reimbursed quickly, this was not the case. Those problems with the Onboard program allegedly diminished demand for GOCOVRI. (*Id.* ¶¶ 111-113.) In addition, on February 20, 2018, the FDA approved OSMOLEX ER, another extended release version of amantadine, for the same indication as amantadine IR. (*Id.* ¶¶ 92-95.) According to Martinez, OSMOLEX ER posed competition to and further weakened demand for GOCOVRI.

The Court will address additional facts as necessary in the analysis.

//

# ANALYSIS

**A.      Applicable Pleading Standards.**

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), the Court generally "is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, the Court may consider "documents incorporated into the complaint by reference, and matters of which [the Court] may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) ("*Tellabs*"). Even under the liberal pleadings standard of FRCP 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must allege conduct that is not just conceivable; they must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Claims sounding in fraud or mistake are subject to heightened pleading requirements, which require a plaintiff to "state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Where, as here, a plaintiff brings a claim for violations of Rule 10(b)(5) they "must meet both the heightened pleading requirements" of FRCP 9(b) and "'the exacting pleading requirements' … of the Private Securities Litigation Reform Act ('PSLRA')." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017) ("*Quality Systems*") (quoting *Tellabs,* 551 U.S. at 313).[3]

---

[3] The pleading requirements for Martinez's Section 10(b) and 20(a) claims are the same. *See, e.g., City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017); *In re Ramp Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1063 (N.D. Cal. 2002).

4

1   Martinez continues to rely on information provided by Adamas' former employees ("FEs")
2   to establish falsity and scienter, which requires him to plead additional facts. *Zucco Partners,*
3   *LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). "First, the confidential witnesses
4   whose statements are introduced to establish scienter must be described with sufficient
5   particularity to establish their reliability and personal knowledge. … Second, those statements
6   which are reported by confidential witnesses with sufficient reliability and personal knowledge
7   must themselves be indicative of scienter." *Id.* (citation omitted).
8   The Court previously concluded that Martinez alleged sufficient facts to show FE1 through
9   FE5 would have been in a position to know the information they provided to Martinez. (Order at
10  9:15-16, 9:24-10:1.) Martinez has expanded on his allegations regarding FE6's duties and
11  responsibilities, and the Court concludes those new allegations are sufficiently specific to satisfy
12  the PSLRA's standards. The Court will address the impact of the information provided by the FEs
13  in the analysis.

**B.      Requests for Judicial Notice.**

Defendants submit 28 exhibits in support of their motion, which they argue the Court should consider because they either are incorporated by reference in the SAC or are subject to judicial notice. (Dkt. No. 86, "RJN"; Dkt. No. 85-1, Declaration of Tijana M. Brien, ¶¶ 2-29; Dkt. Nos. 85-2 through 85-31 (Exhibits 1 through 28).) These documents include: SEC filings; Adamas press releases; analyst reports; and transcripts of earnings calls and conferences. Martinez argues the Court should not consider the truth of facts contained in Exhibits 1 through 12 and 14 through 28 but does not otherwise object to those exhibits. Accordingly, the Court GRANTS, IN PART, Defendants' request, mindful of the limits of each doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1001 (9th Cir. 2018). Because the Court did not rely on Exhibit 3, it DENIES Defendants' request to take notice of that exhibit.

Martinez objects to Exhibit 13, which is an SEC Form 4, dated March 1, 2018, filed on King's behalf. There is not a clear consensus about when a court should take judicial notice of Form 4s, but without additional context regarding the purchase, the Court DENIES Defendant's request to consider that exhibit. *See, e.g., Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1123-

5

24 (N.D. Cal. 2017) (citing cases); *Maiman v. Talbott*, No. SACV 09-0012 AG (ANx), 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010) (declining to take judicial notice of Form 4 where defendants did not provide context for purchases).

**C.     Material Misrepresentations or Omissions.**

In order to state a claim under Section 10(b) and Rule 10b-5, Martinez must allege facts that show, *inter alia,* each Defendant made a material misrepresentation or omitted a material fact. *See Halliburton Co. v. Erica P. John Fund*, 573 U.S. 258, 267 (2014).  Defendants argue that Martinez still fails to allege facts that show each of the statements he challenges were false or misleading when made.  Defendants also renew their arguments that some statements are not actionable because they are puffery, are opinions, or are protected by the PSLRA's safe harbor provision, 15 U.S.C. section 78u-5(c)(1).  The Court recounted the relevant standards to evaluate falsity in its previous Order and will not restate them in detail here.  (*See* Order at 14:22-15:15.)

**1.     King's Pre-Launch Statements.**

Martinez challenges two statements that King made during an August 8, 2017 conference call, before Adamas launched GOCOVRI.  First, he challenges King's statement that physicians and payers "don't see this [GOCOVRI's] profile as really having much to do with the amantadine IR profile."  (SAC ¶ 160.)  The Court previously concluded Martinez failed to allege facts to show this statement was false when made.  Martinez now alleges that Adamas conducted a survey of physicians in the "first-half" of 2017 and that "some" physicians said GOCOVRI sounded just like amantadine IR and stated they would be unlikely to switch.  (SAC ¶ 72.)

Defendants argue this statement reflects King's opinion.  The Court is not persuaded. King did not preface this statement with words that might normally imply a statement of opinion, such as "I believe" or "I think."  *See, e.g., Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*, 575 U.S. 175, 183 (2015) ("[A] statement of fact ("the coffee is hot") expresses certainty about a thing, whereas a statement of opinion ("I think the coffee is hot") does not.").  Further, when the Court evaluates the challenged statement in context, King purported to address results of Adamas' assessments with physicians and payers.  (*Id.* ¶ 68 ("[W]e've obviously done a fair amount of assessment of [GOCOVRI] with physicians and payers."; *see also* RJN, Ex. 2 (Transcript of

6

conference call at 9).)  The Court also concludes that the temporal gap between the date the surveys were conducted and the date of the conference call is not so large that it would be unreasonable to infer the statement was materially misleading.  The Court addresses King's knowledge in its analysis of scienter.

Second, Martinez challenges King's statement that "there is no anticipation of requiring a step-through of amantadine IR to get to [GOCOVRI]."[4]  (*Id.* ¶ 160.)  The Court previously found that this statement was protected by the safe-harbor provision.  (Order at 24:10-17.)  Martinez argues that new allegations demonstrate that it is a "mixed" statement because King was reporting the results of the payer surveys.  King did not expressly refer those surveys but did state that Adamas had "done a fair amount of assessment of [GOCOVRI] with … payers."  (SAC ¶ 160.)  It is reasonable to infer that the "assessment" could have included those surveys.  According to FE4, who Martinez alleges was at a meeting when the results were presented, the results of the payer surveys showed that "certain payers … *would* impose" access restrictions, including a step-through.  (*See* SAC ¶¶ 74, 162.)  Martinez also alleges that FE4 stated that Adamas "always anticipated" that payers would require step-throughs.  (SAC ¶¶ 74-75.)  When the Court construes the allegations in the light most favorable to Martinez, even if payers had not yet made coverage decisions, the Court concludes Martinez sufficiently alleges that this statement is not forward looking.

Finally, Martinez challenges a statement King made on September 18, 2017, that Adamas concluded "the payers were willing to support us at … the GOCOVRI list price at $28,500 per year or $2,375 per month."  (SAC ¶ 163.)  The Court previously found that Martinez failed to allege the statement was false when made.  (Order at 26:2-4.)  Martinez now alleges that this statement was misleading because King failed to disclose the results of the payer surveys, which showed that payers preferred the "lowest pricing tier" and showed that support for GOCOVRI's price point was driven down by the belief that GOCOVRI was simply a reformulation of amantadine IR.  (*See* SAC ¶¶ 74, 164.)  Martinez does not include any facts to show what the

---

[4] King's statement refers to ADS-5102, which is how Adamas previously referred to GOCOVRI.  (SAC ¶ 160.)

7

"lowest pricing tier" was. Therefore, even when the Court accepts as true the allegations that payers would impose some access restrictions, the Court concludes there are insufficient facts to show this statement was materially misleading. The Court dismisses claims based on this statement.

**2.     King's Post-Launch Statements.**

Martinez also challenges statements that King made after Adamas launched GOCOVRI. The Court previously concluded Martinez sufficiently alleged that some of these statements were materially misleading, and the Court finds no basis to revisit those rulings. Therefore, for the reasons set forth in its previous Order, the Court concludes Martinez sufficiently alleges statements in the following paragraphs were materially misleading: 183, 187, 193, 196, and 206.a, 206.b, 206.c. (*See* Order at 27:7-11, 19-25.)

The Court previously concluded the challenged statement in paragraph 200 was non-actionable puffery and dismissed claims based on that statement without leave to amend. (Order at 16:16 (referring to first statement in FAC ¶ 281).) The Court finds no basis to revisit that decision. It also finds no basis to revisit its decision that Martinez fails to allege facts to show the statement in paragraph 194 was misleading. (*See id.* at 26:19-20 (citing FAC ¶ 272).) Martinez also challenges the statement, "I wouldn't say that," which was King's response to a question about whether GOCOVRI's price was a detractor to physicians. (*Id.* ¶ 204.) The Court previously concluded this statement was a non-actionable opinion. Having considered the allegations in paragraph 205, the Court concludes Martinez still fails to allege sufficient facts to render the opinion actionable. *See Dearborn Heights*, 856 F.3d at 615 (setting forth standards to plead an opinion is actionable under the PSLRA).

During a May 3, 2018 conference call, King stated, "We're hearing loudly and clearly from these patients about the successes they are seeing with GOCOVRI treatment." (SAC ¶ 179.) Defendants argue the statement is puffery. Martinez alleges this statement was materially misleading because, by that time, Adamas' sales force was reporting that patients were experiencing negative side effects associated with amantadine IR, which caused prescriptions to drop. (*Id.* ¶ 180.)

In general, "[s]tatements of mere corporate puffery, vague statements of optimism like good, well-regarded, or other feel good monikers, are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) ("*Intuitive Surgical*") (internal quotations and citations omitted). If, however, an optimistic statement "create[s] an impression of a state of affairs that differs in a material way from the one that actually existed," it may be actionable. *Quality Systems*, 865 F.3d at 1143-44 (internal quotations and citations omitted). Looking at the statement in context, King stated that Adamas was assessing whether there was "repeated and continuous" use of GOCOVRI. King did not simply state that Adamas had received "positive" feedback and leave it there. Rather, it is reasonable to infer that he was reporting that patients reported that treatment with GOCOVRI was successful. (*See* RJN, Ex. 15 at 4.) Accordingly, the Court concludes this statement is not puffery.

Martinez also challenges King's response to a question about initial physician feedback: "[s]o I think that feedback is positive, and its animated. And that, I think, reinforces that physician trial, which gets them to go to a second patient and a third patient." (*Id.* ¶ 189.) Although the Court concludes the first portion of this statement is puffery, the Court concludes Martinez now alleges sufficient facts to show physicians were not moving to second and third patients. (*See, e.g.,* SAC ¶¶ 111-116, 190.c). For the same reasons, the Court concludes Martinez sufficiently alleges the challenged statement in paragraph 202 was misleading. The Court will address King's knowledge in the scienter analysis.

Martinez challenges King's statements that Adamas had seen "support from payers" and could "get that access for patients reasonably straightforwardly." (SAC ¶¶ 181-182.)[5] He alleges these statements were misleading because payers were requiring step-throughs or were imposing other preconditions to reimbursement. (*Id.* ¶ 184.) However, each of these statements also

---

[5] The Court previously dismissed claims based on statements in the relevant paragraphs of the FAC because Martinez did not specify which of several statements were misleading. (Order at 12:5-6.)

9

includes representations by King that Adamas was seeing that the majority of prescriptions were being fulfilled, statements which Martinez does not allege were false or misleading. (*Id.*) When the Court evaluates the statements in context, it concludes Martinez fails to allege sufficient facts to show the statements were misleading.

During the May 3, 2018 conference call, King also addressed payer requirements for GOCOVRI, stating:

> I'm not aware of any plan that has a hard step for us through IR amantadine. I am aware of plans that have – are interested as to whether IR amantadine's been tried before in patients and has been shown to either be ineffective or not well tolerated. We've seen that, but I'm unaware of any plan which has a formal step through IR amantadine.

(*Id.* ¶ 185.)[6] Martinez includes allegations that define the term hard step, including information provided by FE5. The Court concludes FE5 would be in a position to provide such a definition. (*See* SAC ¶¶ 96, 98.) For the reasons the Court previously found similar statements in Adamas' SEC filings actionable, the Court concludes Martinez alleges sufficient facts to show the statements that payers were not requiring a "hard" or "formal" step-through were materially misleading. (*See* Order at 22:20-23:4.)

Martinez now challenges a statement King made during an August 2, 2018 conference call: "This positive reinforcement to the prescriber of the effects of a product is key to seeing continued and expanded usage by physicians over time." (*Id.* ¶ 198.) That statement followed preliminary discussions of the number of prescriptions filled and reimbursed, and King noted "[p]hysicians appear to be taking a thoughtful approach to GOCOVRI." (RJN, Ex. 22 (Transcript of conference call at 4).) He also stated there were "a lot of physicians who like what they see" but that it was taking longer for physicians to hear back from patients. (*Id.*) King then addressed the steps Adamas was taking to accelerate a patient's trial period with GOCOVRI and moved on to discuss reports from physicians about positive results with their patients. (*Id.*) In contrast to the

---

[6] Although Martinez emphasizes multiple statements in paragraph 185, he makes clear that his focus is on the portions of the statements regarding payers requiring "hard" or "formal" step-throughs. (*See* SAC ¶ 186.)

10

statements in paragraphs 189 and 202, when the Court evaluates this statement in context, even if not all physicians or patients had positive experiences, it concludes Martinez fails to allege facts to show this statement was materially misleading. The Court dismisses claims based on this statement.

### 3. Went's Post-Launch Statements.

Martinez challenges three statements that Went made during conference calls. First, he challenges Went's statement that Onboard was "a seamless access experience." (SAC ¶ 208; *see also* FAC ¶ 291.) Defendants argue this statement is puffery. The Court reaffirms its previous conclusion that this statement was puffery and dismisses claims based on that statement, with prejudice.[7]

Martinez continues to challenge Went's statement that "[o]ur market access and distribution with our special – single specialty pharmacy is going very well." (SAC ¶ 211; *see also* FAC ¶ 296.) For the reasons set forth in its previous Order, the Court concludes Martinez alleges facts to show this statement was misleading, in light of specific problems with the Onboard program.[8] (*See* Order at 27:7-18; SAC ¶¶ 112, 123-124.) The Court also found Martinez sufficiently alleged Went's statement that "[t]he prescriptions are being filled in a vast majority

---

[7] The statement in its entirety was that Adamas was "continu[ing] to improve and educate on the seamless access experience provided by GOCOVRI Onboard to support adoption and shorten times to fill." (RJN, Ex. 25 (Transcript of Nov. 1, 2018 conference call at 3)).) As the Court noted in the Order granting the motion to dismiss the FAC, "[t]he volume of alleged misstatements, the inconsistent use of emphasized text, and the decision to incorporate by reference earlier allegations" made it difficult for the Court to ascertain which statements were at issue in the FAC. (Order at 11:22-24; *see also id.* at 11:5-12:4).

Unfortunately, the Court has discovered that, despite its best efforts to identify the challenged statements correctly in its Order, it made some errors. For example, there were two bold statements in paragraph 291 of the FAC. The Court concluded Martinez failed to allege the first statement was false when made, but it also inadvertently referred to that statement in its ruling on puffery, when it intended to refer to the second bold statement. (*Id.* at 16:15-16, 26:7-8.)

Finally, even if the statement cannot be considered puffery, the Court concludes Martinez fails to allege facts to show that Adamas was not taking those actions.

[8] The Court also inadvertently referred to this statement twice in its previous Order, leading to inconsistent conclusions. (*Compare* Order at 26:11-15 *with id.* at 27:12-18.) To be clear, the Court concludes Martinez alleges sufficient facts to show the statement was misleading and addresses the issue of knowledge in the scienter analysis.

11

and they're being filled quickly" was materially misleading. (SAC ¶ 209; Order at 27:19-25 (citing FAC ¶ 292).) The Court has considered Defendants' arguments but finds no basis to revisit its decision on these statements. The Court will address whether Martinez sufficiently alleges that Went knew these statements were false in the scienter analysis. *See, e.g., Quality Systems*, 865 F.3d at 1143-44 (noting that an optimistic statement, "when taken in context, may form a basis for a securities fraud claim when [they] address specific aspects of a company's operation that the speaker knows to be performing poorly").

### 4. The Risk Factor Statements.

Martinez also alleges that various statements in Adamas' SEC filings, most of which were signed by Went and Merriweather, were materially misleading. First, Martinez challenges the statement that "although no payer has done so to date," payers might require a step-through of amantadine IR prior to covering GOCOVRI. (SAC ¶¶ 165 (Form 8-K, 1/22/18), 167 (Form 10-K, 2/22/18), 169 (Form 10-Q, 5/3/18).)[9] The Court will refer to this statement as the "Step-Through Statement." Second, Martinez challenges the statement that "there may be significant delays in obtaining final coverage and reimbursement decisions for GOCOVRI," which the Court will refer to as the "Delay Statement." (*Id.* ¶¶ 173 (Form 10-Q 6/30/18), 177 (Form 10-Q 11/2/2018).) For the reasons set forth in its previous Order, the Court concludes Martinez sufficiently alleges both of those statements were materially misleading. (Order at 22:20-23:19.) The Court will assess the Defendants' knowledge in the scienter analysis.

In its SEC filings, Adamas also stated "[w]e are heavily dependent on third-party logistics, pharmacy, and distribution partners. If they are unable to perform effectively or **if they do not provide efficient distribution of [GOCOVRI] to patients, our business will suffer**." (SAC ¶¶ 171 (Form 10-Q 6/30/18), 175 (Form 10-Q 11/2/2018).) Martinez alleges the bold section of this statement is misleading. Defendants argue the allegations that purport to show why that is so do not refer to failures by "third-party logistics, pharmacy, and distribution partners." (*Id.* ¶¶ 172, 176.) The Court agrees. Although Martinez claims that the Onboard specialty pharmacy was

---

[9]   Went and Merriweather did not sign the January 22, 2018 Form 8-K. (RJN, Ex. 10.)

"unable to manage the operational burden of timely securing payer reimbursement requirements," the remaining paragraphs place the blame on the payer's decisions to impose access restrictions and those decisions allegedly led physicians to decide not to prescribe GOCOVRI. *See, e.g., In re Eventbrite, Inc., Sec. Litig.*, No. 18-cv-02019-EJD, 2020 WL 2042078, at *12-13 (N.D. Cal. Apr. 28, 2020) (finding plaintiff failed to allege statements were misleading where "the reasons Plaintiffs offer[ed] to show falsity … bear no connection to the substance of the statements"). The Court dismisses claims based on this statement.

### 5. Conclusion on Falsity.

For the reasons set forth above, the Court concludes Martinez sufficiently alleges that statements in paragraphs 160, 165, 167, 169, 173, 177, 179, 183, 185, 187, 189, 193, 196, 202, 206, 209, and 211 were materially misleading. It now turns to the issue of whether Martinez sufficiently alleges the Individual Defendants acted with scienter when they made those statements.

## D. Scienter.

Martinez must allege particular and specific facts to show Adamas and the Individual Defendants intended to "deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976); *see also Zucco*, 552 F.3d at 991 (plaintiff must allege specific facts to show defendant acted "intentionally or with deliberate recklessness"); 15 U.S.C. § 78u-4(b)(2)).[10] Deliberate recklessness means that the reckless conduct "reflects some degree of intentional or conscious misconduct." *S. Ferry*, 542 F.3d at 782. The Court evaluates the allegations holistically, and the claims will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one would draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

Martinez argues the Individual Defendants knew the challenged statements were false. "The most direct way to show both that a statement was false when made *and* that the party making the statement knew that it was false is via contemporaneous reports or data, available to

---

[10] The Court set forth the relevant standards to plead scienter in its previous Order and will not repeat them in detail here. (*See* Order at 28:11-29:4.)

the party, which contradict the statement." *Nursing Home Pension Fund Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004) ("*Nursing Home*") (emphasis added). As he did before, Martinez also relies on the "core operations" inference to plead scienter. *See, e.g., Berson v. Applied Signal Tech.*, 527 F.3d 982, 988 (9th Cir. 2008); *In re Read-Rite Corp.*, 335 F.3d 843, 848 (9th Cir. 2003).

### 1. Merriweather.

The only statements attributable to Merriweather are the Step-Through and the Delay Statements. The Court previously concluded this was not the "exceedingly rare" case where the core operations alone would establish scienter, and the amendments do not alter the Court's view. (*See* Order at 31:12-:33:5.) Martinez alleges that payer decisions about step-through requirements were publicly available and, "on information and belief, were reported to Defendants by the payers when made." (SAC ¶¶ 87-89.) Martinez has not identified the facts that support his information and belief, which is not sufficient under the PLSRA. *See, e.g., In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999). Martinez also does not allege that any of the FEs had direct contact with Merriweather. (*See* SAC ¶¶ 41-46.)

Martinez alleges that "all executives at the level of Vice President and above" had access to "Tableau dashboards," which he claims would have included information about prescription fulfillment. Martinez does not allege Merriweather actually received that information; he merely states FE4 would have been "surprised" if Merriweather did not have it. (*Id.* ¶ 89; *see also id.* ¶¶ 236-241). For the reasons set forth in its previous Order, the Court concludes those allegations are too general to trigger the core operations inference. (*See* Order at 33:6-35:8.)

Looking at Martinez's allegations from a holistic perspective, including the lack of any suspicious stock sales by Merriweather, the Court concludes he has failed to allege Merriweather acted with scienter. Accordingly, the Court GRANTS Defendants' motion to dismiss the claims against Merriweather.

//
//
//

14

### 2. King and Went.

Although Martinez alleges that FE1, FE2, and FE3 would be in a position to know the information they provide, there are no allegations that they had direct contact with King or with Went. To the extent these FEs speculate that King or Went would have learned certain information from subordinates, the Court concludes those allegations do not add to the scienter analysis. *See, e.g., City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-cv-4844-BLF, 2019 WL 6877195, at *19 (N.D. Cal. Dec. 17, 2019) ("[M]erely speculative awareness of Individual Defendants' knowledge is not enough.") (internal quotations and citation omitted).

In *Nursing Home,* the court concluded that the plaintiffs sufficiently alleged the individual defendants had actual knowledge their statements were misleading because they admitted to reviewing information in an internal database, which contained contradictory information. 380 F.3d at 1231; *cf. Quality Systems*, 865 F.3d at 1145 (concluding defendants' admissions that they had "real-time access to, and knowledge of, sales information" supported strong inference of scienter). The plaintiffs in *Nursing Home* also included "hard numbers" about what that data showed. *Id.* The court reasoned those hard numbers distinguished the case from *Lipton v. Pathogenesis Corporation*, a case where the plaintiffs also relied on allegations that the defendants "could regularly track … sales data" and "patient demand" using data provided by a vendor. *Nursing Home,* 380 F.3d at 1231 (quoting *Lipton*, 284 F.3d 1027, 1035-36 (9th Cir. 2002)).

Martinez alleges that FE4 stated King and Went were present at meetings in July 2017, when the company that performed the payer surveys presented the results. Martinez also provides more detail about the results of those surveys, including that payers would require step-throughs. (SAC ¶ 74.) The Court concludes those allegations are sufficient to show that King had information that directly contradicted his assertion on August 8, 2017 that Adamas did not anticipate a step-through of amantadine IR before payers would approve GOCOVRI. However, the Court concludes that Martinez fails to plead facts to show King received the results of the physician surveys described by FE6 in paragraph 72. Therefore, the Court concludes Martinez fails to allege King acted with scienter with respect to the first bold statement in paragraph 160.

Adamas conducted the payer surveys at some point before July 2017, and each of the remaining statements the Court has found to be materially misleading were made on or after January 22, 2018. Given the temporal gap between the meeting at which the surveys were presented and the dates of the post-launch statements, the Court concludes those results alone are not sufficient to plead scienter.[11] In addition, as with Merriweather, Martinez does not allege facts to support his information and belief that *actual* decisions about coverage decisions were reported to the Defendants.

In contrast to his facts about Merriweather, Martinez includes facts to support his allegations that King and Went did have access to the Tableau dashboard data, which he alleges included "the rate of fulfillment, the time to fulfill, and the stats or reasons the prescription was not fulfilled or not yet fulfilled." (SAC ¶ 88.) He also alleges that FE4 "regularly discussed" fulfillment data with King and Went. (*Id.*; *see also id.* ¶¶ 74, 89.)[12] According to Martinez, that information would have shown payers were requiring step-throughs. However, Martinez does not include facts about when those discussions took place and, thus, does not connect those discussions to the dates on which King and Went made the allegedly misleading statements. *Cf. Lopes v. Fitbit, Inc.*, No. 18-cv-665-JST, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (finding "generalities about management's access to data" was insufficient and did not provide the "who, what, where, when, and how" each defendant gained access to the relevant information) (internal quotations and citations omitted). The same is true for Martinez's allegations that FE6 "recalled Went and King oftentimes discussing fulfillment issues." (*See, e.g.,* SAC ¶¶ 88-89, 238.)

FE5 also reported that Went was present at an Adamas Sales Advisory Board meeting in

---

[11]  Martinez alleges that Went fired a consultant in 2017 because he did not like the results of the consultant's forecasts. In light of the time gap between that event and the dates on which the Went made statements the Court has found misleading, the Court concludes those allegations do not provide a cogent or compelling inference of scienter, alone or when considered holistically.

[12]  Martinez also alleges that FE4 stated Adamas had an Excel spreadsheet "used for forecasting" and general information about the content of that spreadsheet. However, Martinez neither specifically alleges that King or Went received a copy of that spreadsheet nor alleges how frequently it was prepared.

the summer of 2018 where reimbursement and operational issues were discussed. (*Id.* ¶¶ 124, 239.) But, Martinez still fails to include details about the specific information he claims Went received during that meeting, and the Court concludes those allegations are not sufficient to establish a cogent and compelling inference of scienter. *See, e.g., Browning v. Amyris*, No. 13-cv-02209-WHO, 2014 WL 1285175, at *16 (N.D. Cal. Mar. 24, 2014) (allegations such as that a defendant "could regularly track its sales data" or "tracked [ ] demand using data" "[a]re insufficient to plead scienter under the PSLRA," if the plaintiff cannot allege "hard numbers or other specific information" about what the data showed) (quoting *Nursing Home*, 380 F.3d at 1231).

The Court also concludes that Martinez's allegations about King's and Went's statements that they got "daily feedback" from Adamas' field team and that they had been in contact with payers and had "research" about payers do not add to the scienter analysis. These statements simply are not the type of "specific admissions" that show King and Went had "detailed involvement" in the minutia of Adamas' operations, especially in connection with the speed of reimbursements. *See Nursing Home*, 380 F.3d at 1231-32.

Finally, the Court examines the allegations of scienter for the post-launch statements holistically, and it finds them lacking. Defendants have argued that Martinez's theory of scienter is implausible, and the Court agrees. (*See* Order at 28:6-10, 35:22-36:23.) That conclusion is reinforced by the lack of any suspicious stock sales, which is not dispositive but does undermine an inference of scienter. *See, e.g., Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) ("If defendants had sought to profit from this scheme in the interim, such as by selling off their stock or selling the company at a premium, the theory might have more legs."); *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("[W]e have recognized that a lack of stock sales can detract from a scienter finding.").

Accordingly, the Court concludes that Martinez fails to allege that either King or Went were intentionally or deliberately reckless with regard to the post-launch statements at issue and GRANTS Defendants' motion to dismiss. Because the only statement attributed to Adamas occurred post-launch, the Court also concludes Martinez fails to state a claim against the

corporation.

### E. The Court Dismisses the 20(a) Claim, in Part.

In order to show a violation of Section 20(a), Martinez must plead a primary violation of Section 10(b). *See Dearborn Heights*, 856 F.3d at 623 (stating that "without a primary violation of federal securities law, Plaintiff cannot establish control person liability") (internal quotations and citations omitted). Martinez has not alleged a primary violation of Section 10(b) against Merriweather or Went, and it GRANTS the motion to dismiss the 20(a) claim against them. Martinez may pursue the Section 20(a) claim against King, as limited by the Court's ruling above.

### F. Leave to Amend.

In general, the Court should grant leave to amend, but if a plaintiff has previously amended and failed to correct deficiencies, the Court's "discretion to deny leave to amend is particularly broad[.]" *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)). The Court cannot say that further amendment would be futile. Accordingly, the Court will grant Martinez one final opportunity to address the deficiencies identified in this Order, if he can do so in good faith and in compliance with the requirements of Rule 11.

## CONCLUSION

For the reasons set forth above, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion to dismiss. If Martinez intends to amend, he shall file an amended complaint by no later than February 3, 2023. Defendants shall answer or otherwise respond by no later than February 24, 2023. The parties shall appear for an initial case management conference on March 31, 2023 at 11:00 a.m. and shall file a joint case management conference statement by March 24, 2023.

**IT IS SO ORDERED**.

Dated: January 13, 2023

_____
JEFFREY S. WHITE
United States District Judge