**GLANCY PRONGAY & MURRAY LLP**
ROBERT V. PRONGAY (#270796)
LEANNE H. SOLISH (#280297)
CHRISTOPHER R. FALLON (#235684)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ALI ZAIDI, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>vs.<br><br>ADAMAS PHARMACEUTICALS, INC., *et al.*,<br><br>                              Defendants. | Case No. 4:19-cv-08051-JSW<br><br>**LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: April 5, 2024<br>Time: 9:00 a.m.<br>Location: Courtroom 5, 2nd Floor<br>Judge: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

NOTICE OF UNOPPOSED MOTION AND MOTION ................................................................ 1

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ................................... 1

III.  STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e) ..................... 4

IV.   ARGUMENT .................................................................................................................... 5

      A.    The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined
            by Rule 23(e)(2) and the Remaining *Hanlon* Factors ................................................ 5

            1.    Plaintiff and Lead Counsel Adequately Represented the Settlement Class .. 5

            2.    The Settlement is the Result of Arms'-Length Negotiations ....................... 6

            3.    The Settlement is an Excellent Result for the Settlement Class in Light of the
                  Benefits of the Settlement and the Risks of Continued Litigation ............... 6

                  (a)    The Strength of Plaintiff's Case and Risk of Continued Litigation .. 7

                  (b)    Risks of Maintaining Class Action Status ........................................ 9

            4.    Rule 23(e)(2)(C)(iii)-(iv) ............................................................................. 9

            5.    The Settlement Treats All Settlement Class Members Equitably Relative To
                  Each Other ................................................................................................. 11

            6.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of
                  Preliminary Approval .................................................................................. 11

V.    CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES ........ 14

      A.    The Settlement Class Is Sufficiently Numerous ..................................................... 15

      B.    Common Questions of Law Or Fact Exist .............................................................. 16

      C.    Plaintiff's Claims Are Typical of Those of the Settlement Class ........................... 16

      D.    Plaintiff and Lead Counsel Adequately Represent the Settlement Class ................ 17

      E.    The Predominance and Superiority Requirements Are Satisfied ............................ 17

VI.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ..................................... 18

VII.  THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA ....... 19

A.    Retention of Strategic Claims Services ..................................................... 19

B.    The Method of Notice is Adequate ........................................................... 20

C.    The Content of Notice is Adequate .......................................................... 21

D.    Claims Processing ................................................................................... 22

E.    Estimated Notice and Administrative Costs.............................................. 22

VIII.    ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES..... 23

IX.    PROPOSED SCHEDULE OF EVENTS ........................................................... 24

X.    CONCLUSION ............................................................................................. 25

1

# TABLE OF AUTHORITIES

2  CASES

3  *Amchem Prods., Inc. v. Windsor*,
4      521 U.S. 591 (1997) ................................................................ 15, 17

5  *Barani v. Wells Fargo Bank, N.A.*,
       2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ...................................... 20
6

7  *Barnes v. AT&T Pension Benefit Plan*,
       270 F.R.D. 488 (N.D. Cal. 2010) .................................................. 16
8

9  *Blackie v. Barrack*,
       524 F.2d 891 (9th Cir. 1975) ....................................................... 15

10 *Christine Asia Co. v. Yun Ma*,
       2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................... 10
11

12 *Churchill Vill., L.L.C. v. Gen. Elec.*,
       361 F.3d 566 (9th Cir. 2004) ......................................................... 5
13

14 *City of Detroit v. Grinnell Corp.*,
       495 F.2d 448 (2nd Cir. 1974) ....................................................... 12

15 *Class Plaintiffs v. City of Seattle*,
       955 F.2d 1268 (9th Cir. 1992) ...................................................... 18
16

17 *Dura Pharms., Inc., v. Broudo*,
       544 U.S. 336 (2005) .................................................................. 12
18

19 *Hanlon v. Chrysler Corp.*,
       150 F.3d 1011 (9th Cir. 1998) .............................................. *passim*
20

21 *Harris v. Palm Springs Alpine Estates, Inc.*,
       329 F.2d 909 (9th Cir. 1964) ....................................................... 15

22 *Hefler v. Wells Fargo & Co.*,
       2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ......................... 11, 13, 24
23

24 *In re Adobe Sys., Inc. Sec. Litig.*,
       139 F.R.D. 150 (N.D. Cal. 1991) .................................................. 15
25

26 *In re Advanced Battery Techs., Inc. Sec. Litig.*,
       298 F.R.D. 171 (S.D.N.Y. 2014) ................................................... 20

27 *In re American Apparel, Inc. Shareholder Litig.*,
28     2014 WL 10212865 (C.D. Cal. July 28, 2014) ................................. 24

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................... 20

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
   2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ........................................................ 16

*In re Cooper Cos. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ......................................................................... 15

*In re Diamond Foods, Inc.*,
   295 F.R.D. 240 (N.D. Cal. 2013) ........................................................................ 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) .................................................................................. 12

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................................... 14

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 8

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .................................................... 23

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ....................................................... 10, 12, 13, 24

*In re Mut. Funds Inv. Litig.*,
   2010 WL 2342413 (D. Md. May 19, 2010) ......................................................... 21

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
   2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ...................................................... 24

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1035 (N.D. Cal. 2008) ................................................................ 9

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................ 10, 24

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................... 8

*In re Washington Public Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................................... 23

*In re Xcel Energy, Inc., Sec., Deriv. & "ER*ISA" *Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................... 7

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................. 7

*Marshall v. Northrop Grumman Corp.*,
    2020 WL 5668935 (C.D. Cal. Sept. 18, 2020).............................................. 23

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) .............................................. 5, 6

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
    2009 WL 9100391 (C.D. Cal. June 24, 2009)............................................... 23

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989)........................................................................ 23

*Persky v. Turley*,
    1991 WL 329564 (D. Ariz. Dec. 20, 1991)................................................... 17

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009).......................................................................... 6

*Romero v. Producers Dairy Foods, Inc.*,
    2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ............................................. 23

*Rosenburg v. I.B.M.*,
    2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ................................................. 18

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................... 11

*Siemer v. Assocs. First Capital Corp.*,
    2001 WL 35948712 (D. Ariz. March 30, 2001)............................................ 16

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ........................................................................ 13

*Stewart v. Applied Materials, Inc.*,
    2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) .............................................. 14

*Sudunagunta v. NantKwest, Inc.*,
    2019 WL 2183451 (C.D. Cal. May 13, 2019)................................................. 6

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017)............................................... 13

*Vikram v. First Student Management, LLC*,
  2019 WL 1084169 (N.D. Cal. March 7, 2019) ........................................................ 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ........................................................................... 14

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ................................................. 5, 6, 7

*Yang v. Focus Media Holding Ltd.*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ......................................................... 11

<u>STATUTES</u>

15 U.S.C. §78u-4(a)(4) ........................................................................................ 24

15 U.S.C. § 78u-4(a)(7) ....................................................................................... 21

28 U.S.C. § 1715 (2005) ...................................................................................... 22

### NOTICE OF UNOPPOSED MOTION AND MOTION
### FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 5, 2024, at 9:00 a.m., in Courtroom 5 (2nd Floor), or as soon thereafter as the matter may be heard, Lead Plaintiff Ralph Martinez ("Plaintiff") will, and hereby does, move the Honorable Jeffrey S. White, United States District Judge, at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing Notice submitted herewith.[1]

As set forth in the memorandum of points and authorities, in accordance with Federal Rule of Civil Procedure 23(e), the proposed Settlement is within the range of what could be found to be fair, reasonable, and adequate, such that notice of the Settlement's terms is appropriate and may be disseminated to members of the proposed Settlement Class. Accordingly, Plaintiff requests that the Court: (i) grant preliminary approval of the proposed Settlement of this Action on the terms set forth in the Stipulation of Settlement and exhibits thereto; (ii) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; (iii) preliminarily certify the Settlement Class, and appoint Plaintiff as the class representative and Lead Counsel as class counsel for the Settlement Class; and (iv) set a hearing date to finally determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses should be approved.

The motion is based on the following memorandum, the Solish Declaration and exhibits thereto, including the Stipulation and further exhibits thereto, all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated February 29, 2024 ("Stipulation"). A true and correct copy of the Stipulation and its exhibits are attached as Exhibit 1 to the Declaration of Leanne H. Solish in Support of Motion for Preliminary Approval of Class Action Settlement (the "Solish Declaration"). Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Solish Declaration.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement of this Action that resolves all claims against Defendant in exchange for a cash payment of $4.65 million.  Plaintiff submits that the Settlement represents an excellent result for the Settlement Class and ultimately should be approved by this Court, especially given the risks, costs, and delays of continued litigation, including risks associated with Defendant's anticipated motions for summary judgment, trial and appeals.

The Settlement was reached after more than four years of hotly contested litigation, during which Lead Counsel, *inter alia*: (i) conducted a comprehensive investigation into the claims asserted against Defendant and subsequently dismissed defendants, that was assisted by an investigator who interviewed numerous former Adamas employees; (ii) drafted the 101-page (not including exhibits) Amended Class Action Complaint ("Amended Complaint"); (iii) fully briefed defendants' motion to dismiss the Amended Complaint; (iv) continued investigating the claims against Defendant and subsequently dismissed defendants and prepared the 90-page (not including exhibits) Second Amended Class Action Complaint ("Complaint" or "SAC") based thereon; (v) fully briefed defendants' motion to dismiss the SAC; (vi) drafted and served discovery on Defendant and third-party Adamas; and (vii) engaged in arms'-length negotiations with Defendant, which included an all-day mediation session with Robert Meyer, Esq. of JAMS, an experienced and highly respected mediator of complex class actions, on September 21, 2023.  The negotiations culminated in Mr. Meyer presenting a double-blind mediator's proposal that the Parties accepted that same day.  The $4.65 million Settlement is, therefore, the result of arm's-length negotiations overseen by a highly regarded mediator and conducted by experienced counsel who possessed ample information to evaluate the sufficiency of the Settlement Amount in light of the risks and uncertainties of continued litigation.

For the reasons set forth herein, and in the Solish Declaration, Plaintiff respectfully submits that the Settlement warrants preliminary approval by this Court.

## II.   SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

Plaintiff asserts claims on behalf of a putative class of investors pursuant to Section 10(b) of

the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Defendant Richard A. King, former Chief Operating Officer of Adamas Pharmaceuticals, Inc. ("Adamas"). Plaintiff alleges that between August 8, 2017 and March 4, 2019 (the "Settlement Class Period"), investors were misled by a statement Defendant made regarding Adamas's drug, GOCOVRI.

This case was filed on December 10, 2019. On February 10, 2020, Ralph Martinez and five other movants filed motions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") to be appointed lead plaintiff in the Action. On March 3, 2020, the Court appointed Mr. Martinez to serve as lead plaintiff for the Action and approved his selection of Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel") to serve as lead counsel. ¶¶2-4.

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Adamas's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, research reports prepared by doctors and securities and financial analysts, and news articles concerning Adamas, GOCOVRI, OSMOLEX, Parkinson's, levodopa induced dyskinesia, and amantadine, (c) Adamas's investor call transcripts, press releases and other public statements made by the defendants prior to, during, and after the Settlement Class Period, and (d) other publicly available material related to Adamas, including certain payer formularies and other documents concerning payer coverage decisions with respect to GOCOVRI, OSMOLEX, and amantadine; (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; and (3) consulting with a damages and loss causation expert. ¶5. On May 15, 2020, Plaintiff filed and served his Amended Complaint based on this investigation. ¶6.

The then-current defendants moved to dismiss the Amended Complaint on July 14, 2020. Further briefing followed, and on October 8, 2021, the Court granted the motion to dismiss with leave to amend certain allegations. ¶¶7-8.

Lead Counsel continued their investigation into Adamas and the alleged false and misleading statements and omissions. This continued investigation included additional interviews with many

former employees, as well as analysis into addressing the pleading deficiencies identified by the Court.  ¶9.  On November 5, 2021, Plaintiff filed the detailed SAC based on this investigation and analysis.  ¶10.

On December 10, 2021, the then-current defendants again moved to dismiss the SAC. Plaintiff responded, and defendants replied.  ¶11.  On January 13, 2023, the Court denied the' motion to dismiss in part.  The Court sustained Plaintiff's allegations regarding Defendant's August 8, 2017 statement that Adamas did not anticipate a step-through of amantadine IR before payers would approve GOCOVRI, but granted defendants' motion with respect to other all other allegations in the SAC.  The Court also granted Plaintiff leave to amend the SAC based on the deficiencies in pleading scienter as explained in the Court's Order.  ¶12.

On February 27, 2023, Plaintiff filed a notice informing the Court and defendants that he did not intend to amend his complaint at this time, and that the SAC would remain the operative pleading.  ¶13.  On April 28, 2023, Defendant filed and served an answer to the SAC.  ¶16.

The Parties exchanged Initial Disclosures on May 12, 2023, and fact discovery thereafter commenced.  ¶17.  Plaintiff served document requests on Defendant on May 19, 2023, to which Defendant responded on June 20, 2023.  Plaintiff also served a third-party subpoena to former defendant Adamas.  The Parties thereafter negotiated and filed a stipulated protocol for electronically-stored information and a protective order (ECF Nos. 109 & 110).  ¶17.

During this time, the Parties, under the auspices of Mr. Meyer, began discussions to resolve the Action.  In an effort to preserve the Parties' resources, and in the interest of judicial economy, on July 28, 2023, the Parties entered a stipulation and proposed order to stay the Action until October 4, 2023, which the Court granted that same day. ¶18.

On September 21, 2023, the Parties participated in a full-day, virtual mediation session overseen by Mr. Meyer, a highly experienced, mediator of complex actions.  ¶ 20.  In advance of the mediation, the Parties each submitted and exchanged detailed mediation statements (and exhibits) outlining their respective analyses of the claims and defenses in this case.  ¶ 21.  The session culminated in a mediator's proposal to resolve the Action for $4.65 million on a class-wide basis that both Parties accepted.  ¶22.  The Parties memorialized the agreement to settle in a term

sheet executed on October 27, 2023, and notified the Court of the settlement.  ECF No. 115.

Following further negotiations, on February 29, 2024, the Parties executed the Stipulation.  ¶24;

Ex. 1.

## III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement

must be presented for Court approval, and be approved if the Court finds it "fair, reasonable, and

adequate."  FED. R. CIV. P. 23(e)(2).  Rule 23(e)(1) provides that preliminary approval should be

granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under

Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  *Id.*  Rule

23(e)(2)—which governs final approval—requires courts to consider the following questions in

determining whether a proposed settlement is fair, reasonable, and adequate:

> (A)    have the class representatives and class counsel adequately represented the class;
> (B)    was the proposal negotiated at arm's length;
> (C)    is the relief provided for the class adequate, taking into account:
> > (i)    the costs, risks, and delay of trial and appeal;
> > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and
> > (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D)    does the proposal treat class members equitably relative to each other.

The Rule 23(e)(2) factors are not exclusive, nor intended to displace any factor previously

adopted by the courts.  Thus, the Ninth Circuit's traditional factors utilized to evaluate the propriety

of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[2]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v.*

*Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1146042,

---

[2] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed
Settlement has not yet been provided to the Settlement Class.  There is no government participant.

1   at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain

2   Hanlon factors.").[3]  As set forth below, the proposed Settlement satisfies the preliminary approval

3   criteria under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

## IV.    ARGUMENT

### A.    The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Hanlon* Factors

#### 1.    Plaintiff and Lead Counsel Adequately Represented the Settlement Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement.  Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests; rather, Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members.  *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").  Additionally, Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class. ¶69.

Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases.  Lead Counsel has successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country.  *See* Ex. 2 (GPM firm résumé).  Lead Counsel vigorously prosecuted the

---

[3] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

Settlement Class's claims throughout the litigation, by, *inter alia*, conducting an extensive investigation, drafting two detailed complaints, briefing two motions to dismiss, and obtaining a $4.65 million Settlement for the benefit of the Settlement Class following two orders dismissing the vast majority of Plaintiff's claims.  ¶¶5-22.  *PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

### 2.    The Settlement is the Result of Arms'-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).[4]  The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, the Parties agreed to mediate with Mr. Meyer in April 2023, the negotiations were extensive, and they continued until Parties accepted the mediator's proposal.  ¶¶15, 18, 20-22.  The arm's-length nature of the settlement negotiations and the involvement of a mediator with substantial experience in securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion.  *See, e.g.*, *Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("The Agreement is the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq." and the "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

### 3.    The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with

---

[4]  Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

1  other relevant factors.  FED. R. CIV. P. 23(e)(2)(C).[5]  As discussed below, each of these factors

2  supports the Settlement's approval.

3               **(a)**        **The Strength of Plaintiff's Case and Risk of Continued Litigation**

4        In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court

5  "must balance against the continuing risk of litigation, including the strengths and weaknesses of

6  plaintiff's case, against the benefits afforded to class members, including the immediacy and

7  certainty of a recovery."  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

8        The risks of continued litigation here were considerable.  Plaintiff and Lead Counsel

9  recognized that Defendant has several factual and legal defenses that could preclude any recovery.

10  Indeed, the Court dismissed all but one of the alleged false and/or misleading statements or

11  omissions during the Settlement Class Period.  *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA"*

12  *Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own

13  order dismissing the shareholder … litigation to assess the risks involved.").

14        For the one statement that the Court sustained, further risks followed.  For example, to defeat

15  a summary judgment motion and prevail at trial, Plaintiff would have to prove by a preponderance

16  of the evidence, among other things, that: (i) the remaining statement was false and/or misleading;

17  (ii) Defendant had the requisite scienter in connection with the remaining statement; and (iii) the

18  alleged putative class suffered damages as a result of such false statement.  In response, Defendant

19  would likely continue to assert that Plaintiff would not be able to prove that the remaining statement

20  was false and/or misleading, was not actionable because it was forward looking and protected by

21  the safe harbor provision, and that the statement was not material because it concerned Defendant's

22  expectations of payers' reimbursement requirements and, at the time, investors knew that

23  GOCOVRI had not been approved by the FDA, and thus, payers had not completed their evaluation.

24        Moreover, Defendant would assert that even if Plaintiff could prove the existence of a false

25  and/or misleading statement, that it was not made with the state of mind required for Plaintiff to

26  ────────────────

27  [5] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor).  *Arlo*,

28  2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

1   prevail on his securities fraud claims. Thus, Plaintiff faces the very real risk that a jury would find

2   that the only remaining statement alleged to be materially false and/or misleading was not, and that

3   Defendant did not act with the intent to defraud or recklessness. Although Plaintiff and Lead

4   Counsel believe that the case has merit, they recognize establishing liability beyond the pleading

5   stage is uncertain. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal.

6   2007) (approving settlement and noting that "the Court also recognizes that the issues of scienter

7   and causation are complex and difficult to establish at trial.").

8       On top of the risks to proving liability, the determination of causation and damages is itself

9   a complicated and uncertain process involving conflicting expert testimony. Plaintiff alleged that

10  the truth was partially revealed through three corrective disclosures made on October 5, 2018,

11  November 1, 2018, and March 4, 2019. However, Defendant would have argued that the truth of

12  the remaining statement was fully disclosed in the October 5, 2018 Bank of America report revealing

13  the impact of step therapy requirements on physician interest and demand for GOCOVRI.

14  Moreover, Defendant would likely argue that the existence of step-therapy requirements was

15  revealed to the market prior to October 5, 2018. If either of these arguments were successful,

16  damages would have been either reduced dramatically or completely eliminated. Such arguments

17  would also pose a substantial risk to class certification as Defendant would argue a lack of price

18  impact. Indeed, Plaintiff anticipates Defendant would have engaged a highly respected market

19  efficiency and loss causation expert to help them make arguments that the reasons for the stock-

20  price declines on those dates were unrelated to the alleged fraud. *See In re Tyco Int'l, Ltd.*, 535 F.

21  Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult.

22  Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing

23  'battle of the experts' over damages.").

24      Attendant to the above-discussed legal risks, continued litigation would be long, complex,

25  and costly. Fact discovery would need to be completed, experts would need to be designated and

26  expert discovery completed, Defendant's expected motion for summary judgment would have to be

27  successfully briefed and argued, and trials are innately expensive, risky, and

28  uncertain. Additionally, any judgment favorable to the Settlement Class likely would be the subject

of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant). Any recovery that shareholders may ultimately see is diluted by the escalating costs accumulated in the process.

In sum, continued litigation would be risky and uncertain, as well as complex, costly, and lengthy. By contrast, the $4.65 million Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk of continued litigation.

### (b)     Risks of Maintaining Class Action Status

While Plaintiff and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* Sec. V, *infra*) a class has not yet been certified, and Plaintiff is aware that there is a risk the Court could disagree. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendant might have sought decertification or modification of the class"). Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendant undoubtedly would have challenged class certification if Plaintiff had reached that stage.

### 4.     Rule 23(e)(2)(C)(iii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the Settlement Class is adequate. FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). These factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their Claim(s), and, lastly, mail or

wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiff nor Defendant possesses the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[6]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Postcard Notice, Summary Notice, and Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. As discussed in detail below (*see* Sec. VIII, *infra*), a proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upholding fee award of one-third of $1.725 million settlement). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶35.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendant may terminate the Settlement if Class Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

---

[6] This is not a claims-made settlement. If the Settlement is approved, Defendant will not have any right to the return of a portion of the Settlement based on the number or value of the Claims submitted. *See* Stipulation ¶13.

5. **The Settlement Treats All Settlement Class Members Equitably Relative To Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period.").

6. **The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval**

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[7] These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *9 (N.D. Cal. Dec. 18, 2018). "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and

---

[7] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

weaknesses of plaintiffs' case").  Indeed, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2nd Cir. 1974).

Here, Plaintiff's damages expert estimates that if Plaintiff had prevailed on his remaining claim, and if the Court and jury subsequently accepted all of Plaintiff's liability and damages theories, including proof of loss causation as to each of the ***three*** alleged stock price drop dates— *i.e.*, Plaintiff's ***best case scenario***—the total ***maximum*** damages would be approximately $164.2 million.  Under such a scenario, the $4.65 million recovery represents approximately 2.83% of the estimated maximum damages potentially available in this Action.

However, had this litigation continued, Defendant would have raised serious arguments relating to Plaintiff's loss causation allegations.  *See* Sec. IV.A.3(a), *supra*.  If, for example, the Court or jury found that the truth of the remaining alleged statement was fully disclosed on October 5, 2018, recoverable damages would have been an estimated $21.1 million—in which case the Settlement Amount equates to a 22.03% recovery.  A recovery in the range of 2.83-20.3% is consistent with, or higher than, those obtained in securities cases with similarly sized damages.  *See* Ex. 4 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024), at p. 25 (Fig. 21) (median recovery for securities class actions that settled between January 2014 and December 2023 was 2.9% for cases with estimated damages between $100-$199 million and 5.1% for those with estimated damages of $20-$49 million).  Moreover, the estimated damages for each of these scenarios assumes that Plaintiff is given full credit for each of the respective drops and does not take into account any disaggregation arguments that Defendant may have raised.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) ("to establish loss causation, *Dura* requires plaintiffs to disaggregate those losses caused by changed economic circumstances, 'changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events,' from disclosures of the truth behind the alleged misstatements." quoting *Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 343 (2005)).

Of course, Defendant would have continued to challenge all aspects of the case, and the

prospect that Plaintiff would have obtained **any** recovery was far from guaranteed. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."). Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs strongly in favor of preliminary approval.

**The Extent of Discovery Completed and the Stage of the Proceeding:** In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *E.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Although discovery was at its infancy at the time of the settlement, Lead Counsel conducted an extensive investigation of the claims asserted in this Action (*see* Sec II, *supra*, detailing Lead Counsel's investigation), which included consultation with experts in the fields of loss causation and damages and contacting numerous former employees. Moreover, Lead Counsel drafted two amended complaints, engaged in substantial briefing on two motions to dismiss, and had the benefit of this Court's insight into the case through its two rulings on the motions to dismiss. The Parties also exchanged detailed mediation briefs, and participated in a mediation process in conjunction with an experienced mediator. ¶¶5-22, 37. The significant amount of information garnered through this process enabled Plaintiff and Lead Counsel to make an informed assessment of the strengths and weaknesses of this Action, as well as the mediator's settlement proposal. *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

1    **The Experience and Views of Counsel:** Courts also give weight to the opinion of

2    experienced and informed counsel supporting the settlement. *See, e.g.*, *Stewart v. Applied*

3    *Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017).  Here, Lead Counsel has

4    extensive experience in securities litigation and has obtained a thorough understanding of the merits

5    and risks of the Action.  Under such circumstances, Lead Counsel's conclusion that the Settlement

6    is fair and reasonable and in the best interests of the Settlement Class supports preliminary approval.

7    *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("The

8    recommendation of experienced counsel carries significant weight in the court's determination of

9    the reasonableness of the settlement.").

10    **V.    CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES**

11    At the Settlement Hearing, Plaintiff will request final approval to the Settlement on behalf

12    of the Settlement Class.  Thus, it is appropriate for the Court to consider, at the preliminary approval

13    stage and solely for purpose of the Settlement, whether class certification appears to be appropriate.

14    *Hanlon*, 150 F.3d at 1019.  Rule 23(a) sets forth four prerequisites to class certification: (i)

15    numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation.  *Wolin v. Jaguar Land*

16    *Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  In addition, the Court must find that at

17    least one of the three conditions of Rule 23(b) is satisfied.  *Id.*  Under subsection (b)(3), the Court

18    must find that common questions of law or fact to the class predominate over any questions affecting

19    only individual members and that a class action is superior to other available methods for the fair

20    and efficient adjudication of the controversy.  *Id.*

21    The proposed Settlement Class consists of: "all persons and entities that purchased or

22    otherwise acquired the publicly traded common stock of Adamas, between August 8, 2017 and

23    March 4, 2019, both dates inclusive (the "Settlement Class Period"), and were damaged thereby."

24

25

26

27

28

Stipulation, ¶1(qq).[8]  Plaintiff believes this Action satisfies all the factors for certification of a class[9] and, if the Action were to proceed toward trial, class certification would be appropriate.  The Ninth Circuit and numerous courts within held that class actions are generally favored in securities fraud actions.  *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).[10]

### A.    The Settlement Class Is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is difficult or inconvenient to join all members of the Class.  *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-914 (9th Cir. 1964).  Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class.  *Id*.  Lead Counsel estimates that there were hundreds if not thousands of purchasers of Adamas common stock during the Settlement Class Period.  The threshold presumption of impracticability of joinder is thus easily exceeded.  *See, e.g.*

---

[8] Excluded from the Settlement Class are: (a) persons and entities that suffered no compensable losses; (b) all shares of Adamas common stock purchased or acquired directly in Adamas' January 24, 2018 secondary public offering (which stock was issued pursuant to Adamas' November 21, 2016 Registration Statement and January 24, 2018 Prospectus Supplement and all materials incorporated therein) ("Covered Purchases"); and (c)(i) Defendant and Adamas; (ii) any person who served as a partner, control person, officer, and/or director of Adamas during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Adamas; (iv) any entity in which the Defendant or Adamas has or had a controlling interest; (v) any trust of which Defendant is the settler or which is for the benefit of the Defendant and/or member(s) of his Immediate Family; (vi) Defendant's liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof.  Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.  For the avoidance of doubt: (i) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with Adamas or the Defendant; and (ii) Covered Purchases are excluded from this Settlement.  *Id.*

[9] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

[10] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation."  *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("Rule 23 is . . . liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.").

*Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) ("As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.").

### B.    Common Questions of Law Or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied if there is one issue common to the class members.  *Hanlon*, 150 F.3d at 1019.  Generally, courts have liberally construed the commonality prerequisite, requiring only that "the named plaintiffs share at least one question of fact or law with the grievances of the proposed class."  *Siemer v. Assocs. First Capital Corp.*, 2001 WL 35948712, at *14 (D. Ariz. March 30, 2001).  Not all questions of fact and law need be common to satisfy Rule 23(a)(2).  *Hanlon*, 150 F.3d at 1019.  This factor is "construed permissively, and the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id*. at 1019 (cleaned up).  Rule 23(a)(2) is plainly satisfied here.  Plaintiff's claims that Defendant violated the federal securities laws by omitting and/or misrepresenting material facts about whether Adamas anticipated a step-through of amantadine IR before payers would approve GOCOVRI in a publicly disseminated statement during the Settlement Class Period unquestionably raises issues of common interest to the Settlement Class.

### C.    Plaintiff's Claims Are Typical of Those of the Settlement Class

Like other Settlement Class Members, Plaintiff alleges that he purchased Adamas common stock during the Settlement Class Period and was subsequently damaged due to Defendant's conduct.  The other members of the Settlement Class were allegedly affected in the same way.

Similarly, the interest of Plaintiff in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members.  Under the proposed Plan of Allocation, Plaintiff will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class.  Accordingly, the typicality requirement is met.  *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members.  They are, therefore, typical of the class.").

**D.    Plaintiff and Lead Counsel Adequately Represent the Settlement Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.  The adequacy inquiry also factors in competency and conflicts of class counsel."  *In re Diamond Foods, Inc*., 295 F.R.D. 240, 252 (N.D. Cal. 2013).

Plaintiff prosecuted this Action, negotiated with Defendant through counsel, and approved the Settlement for the benefit of all Settlement Class Members.  ¶69.  Moreover, Plaintiff is represented by qualified counsel with extensive experience in the prosecution of securities class actions and they have vigorously pursued the Action for the more than four years.  Thus, the requirements of Rule 23(a)(4) are met.

**E.    The Predominance and Superiority Requirements Are Satisfied**

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or fact common to the members of the Settlement Class predominate over any questions affecting individual members.  Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendant's alleged violations of the securities laws.  *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action….  A class action solves this problem[.]").  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In securities claims, it is common for factual variations among shareholders related to stock transaction dates and sizes, "sophistication of investors and degree of reliance" to exist, but common questions of fact related to misrepresentation claims "will predominate over the individual issues." *Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).

## VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Counsel also seek preliminary approval of the proposed Plan of Allocation of the settlement proceeds, which is set forth in the Notice to be mailed to Class Members. *See* Exhibit A-1 to the Stipulation ("Notice") at ¶¶53-71.  The Court's review of the proposed Plan of Allocation for a class action settlement under Rule 23 is governed by the same standards of review applicable to the settlement itself—it must be fair and reasonable. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).  A plan of allocation's objective is to provide an equitable basis upon which to distribute the settlement fund among eligible class members.  An allocation formula must be "rationally related to the relative strengths and weakness of the case." *Rosenburg v. I.B.M.*, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007).

The proposed Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Claim Form.  The Plan of Allocation was developed by Lead Counsel, with the assistance of a consulting damages expert, and reflects an assessment of damages that Plaintiff contends could have been recovered under the theories of liability asserted in the Action.  In developing the Plan of Allocation, Plaintiff's expert calculated the estimated amount of artificial inflation in the per-share closing price of Adamas's common stock that was allegedly caused by Defendant's alleged false and misleading statement. *See* Notice ¶55.  In so doing, she considered the price changes in Adamas's common stock in reaction to the public disclosures that allegedly corrected the alleged misrepresentation and adjusted for market and industry factors. *Id.*

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Adamas common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided.  The calculation of Recognized Loss Amounts will depend upon several factors, including when the stock was purchased and sold and the purchase and sales price.  In general, Recognized Loss Amounts will be the lower of: (i) the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, and (ii) the difference between the actual purchase price and sales price.  Notice ¶59.  For shares sold during or after the 90-day period following the end of the

Settlement Class Period, the Plan also limits Recognized Loss Amounts based on the average price of the stock during that 90-day period, consistent with the PSLRA. Notice ¶57. Under the Plan of Allocation, Claimants who purchased shares during the Settlement Class Period but did not hold those shares through at least one of the alleged corrective disclosures will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud. Notice ¶56. The sum of a Claimant's Recognized Loss Amounts for all Class Period purchases is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Notice ¶¶62, 68.

One hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. Moreover, if any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. Notice ¶69. The Solish Declaration also identifies the Public Justice Foundation as the proposed *cy pres* recipient for any residual funds that may remain after all cost-effective distributions of the Net Settlement Fund to Authorized Claimants have been completed. *See* N.D. Cal. Guid. at ¶8. The Public Justice Foundation is an appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action, and this Court, as well as others in this District, have approved it as a *cy pres* recipient in similar actions, including *Yaron v. Intersect ENT, Inc.*, Case No. 4:19-CV-02647-JSW (ECF No. 86) (White, J.); *In re Rambus Sec. Litig.*, Nos. 5:06-cv-04346-JF; C-07-1238-RMV (N.D. Cal.) (Fogel, J.). Lead Counsel believe that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who submit valid claims.

## VII.  THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA

### A.  Retention of Strategic Claims Services

Plaintiff proposes that the notice and claims process be administered by Strategic Claims Services ("SCS")**,** an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. Ex. 3 (Declaration of Paul Mulholland Regarding Procedures for Securely Handling Class Members Data; Comparative Settlements; and

Administrative Services and Costs ("Mulholland Decl.")) at ¶2 & Ex. A.  SCS was selected after a competitive bidding process in which three firms submitted proposals to be selected as administrator.  Each proposal involved comparable methods of providing notice and claims processing, including use of first-class mail and identifying potential Class Members through brokers and nominee owners.  ¶¶48-49.  Lead Counsel has engaged SCS to serve as settlement administrator in several other cases in the past two years and found SCS to be a reliable administrator for these types of cases.  ¶51.

### B.   The Method of Notice is Adequate

Rule 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.  Here, the Parties propose to mail, by first class mail, individual copies of the Postcard Notice (Exhibit A-4 to the Stipulation), and/or to email a link to the Notice and Claim Form, to all Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.  Contemporaneously with the mailing of the Postcard Notice, copies of the Notice and the Claim Form (Exhibit A-2 to the Stipulation) will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded, and where claims can be submitted online.  Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.  No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to the Stipulation) will be published in the national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire*.

Courts routinely find that these methods of notice are sufficient.  In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).[11]

---

[11] *See also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973

Significantly, with an estimated mailing size of 75,000 (Mulholland Decl., ¶14), a full printed Notice and Claim Form sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount.  Thus, Plaintiff respectfully submits that the combination of the mailed and emailed notice, published Summary Notice, and online availability of the Notice provides "the best notice that is practicable under the circumstances."

### C.     The Content of Notice is Adequate

Plaintiff respectfully submits that the Court should approve the form and content of the proposed Notice and Summary Notice.  *See* Exhibits A-1 and A-3 to the Stipulation.  The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Settlement Class Members will have.  Consistent with Rules 23(c)(2)(B) and 23(e)(1)(A), the Notice objectively and neutrally apprises all Settlement Class Members of the nature of the Action, the definition of the Settlement Class, the claims, that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Settlement Class Members.

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(7).  It states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel, who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement.  *Id.*

The Notice also meets the Northern District of California Procedural Guidance for Class Action Settlements in that it includes, among other things, (1) "contact information for class counsel to answer questions"; (2) the address for the settlement website; and (3) "instructions on how to

---

(N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-*7 (D. Md. May 19, 2010) (finding that a combination of postcard notice, summary notice, and a detailed notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements").

access the case docket." N.D. Cal. Guid. at ¶3. The Notice will also disclose the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Claim Forms, requests for exclusion from the Settlement Class, and objections to any aspect of the Settlement, the Plan of Allocation, or attorneys' fees and expenses.[12]  *See* Fed. R. Civ. P. 23(e)(5).

### D.   Claims Processing

The net proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to SCS. SCS will review and process the claims under the supervision of Lead Counsel, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their pro rata share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.

SCS estimates that a total of 75,000 copies of the Postcard Notice will be mailed and that approximately 15,000 Claims will be received (a 20% response rate is estimated). Mulholland Decl., ¶¶14-15. These estimates are based on the experience of SCS and Lead Counsel in comparable securities class action settlements.

### E.   Estimated Notice and Administrative Costs

A.B. Data's fees for administration of the Settlement are charged on a per-claim basis and its expenses will be billed separately (including expenses for printing and mailing the Postcard Notice, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline). Because the costs are dependent on how many copies of the Postcard Notice are ultimately mailed and how many claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided. Based on the estimates of Postcard Notices to be mailed and claims received discussed above, SCS estimates that the total Notice and Administration Costs for the Action will be approximately $140,000. These costs are necessary in order to effectuate the Settlement and are

---

[12] The Parties also agreed that, no later than ten calendar days following the filing of the Stipulation with the Court, Defendant shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005), et seq. ("CAFA"). *See* Stipulation ¶22; *see also* N.D. Cal. Guid. at ¶10.

reasonable in relation to the value of the Settlement (the estimated administrative costs represent 3.01% of the Settlement Amount). Mulholland Decl., ¶17. If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund. *See* Stipulation ¶14.

## VIII.  ATTORNEYS' FEES, LITIGATION EXPENSES AND PLAINTIFF'S EXPENSES

As explained in the Postcard Notice, Summary Notice, and Notice, Lead Counsel intends to seek an award of attorneys' fees of 33⅓% of the Settlement Fund (*i.e.*, one-third of the Settlement Amount, or $1,550,000, plus interest earned thereon at the same rate as the Settlement Fund), and payment of Litigation Expenses not to exceed $120,000. Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the Settlement Hearing. However, for purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel respectfully submits that the fee Lead Counsel will request is within the range of reasonableness.

In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989), the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees. However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994). As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*,; *see also In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (awarding 33⅓% of $104,750,000 and stating: "a fee award of one-third is within the range of awards in this Circuit."); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third."); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common

fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery,'" *citing* 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)). "This is particularly true in securities class actions such as this." *In re American Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014); *see also In re Pacific Enters.*, 47 F.3d at 379 (affirming a 33% attorneys' fees award in a case where the settlement fund was $12 million); *In re Mego Fin. Corp.*, 213 F.3d at 463 (affirming award of one-third of the total recovery). Accordingly, an attorneys' fee request of one-third of the Settlement Fund would be fair and reasonable.

A lodestar cross-check confirms the reasonableness of the request. The requested fee will represent a modest, or perhaps negative, multiplier on counsel's lodestar. ¶66. Such a multiplier is below the range of multipliers commonly awarded in class actions and other similar cases.[13] *See, e.g.*, *Hefler*, 2018 WL 6619983, at *14 (approving 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017) (approving 3.66 multiplier), *aff'd*, 2019 WL 1752610 (9th Cir. Apr. 17, 2019).

Lead Counsel also intend to seek reimbursement of Litigation Expenses not to exceed $120,000, which includes costs for the investigator who assisted with Lead Counsel's fact investigation, mediation fees, and expert fees. ¶67. As part of this request, Lead Counsel intends to seek an award for Plaintiff, pursuant to the PSLRA (15 U.S.C. §78u-4(a)(4)), as reimbursement for his time representing the Settlement Class in an amount not to exceed $10,000. ¶¶68-69. Lead Counsel believe this amount is fully supported by the work that Plaintiff performed throughout the Action, which will be presented to the Court in connection with Plaintiff's request for reimbursement. N.D. Cal. Proc. Guid. ¶7.

## IX.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and

---

[13] Lead Counsel will present a more detailed statement of Plaintiffs' Counsel's total lodestar in connection with its attorneys' fee application.

deadlines for submitting claims or for objecting to the Settlement.  The Parties propose the following schedule, set forth in the proposed Preliminary Approval Order ("Prelim. Appr. Order"):

| Event | Proposed Timing |
|-------|-----------------|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Co-Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶27) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶14) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶27) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶11) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

Plaintiff respectfully requests that the Court schedule the Settlement Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

## X.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.  As this motion is unopposed, Plaintiff respectfully requests that the Court consider this motion for preliminary approval on the papers.

///

///

///

1   Dated: March 1, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Leanne H. Solish*
Robert V. Prongay
Leanne H. Solish
Christopher R. Fallon
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
          lsolish@glancylaw.com
          cfallon@glancylaw.com

*Counsel for Lead Plaintiff Ralph Martinez and*
*Lead Counsel for the Settlement Class*

1

**<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

2

I, the undersigned, say:

3

I am not a party to the above case, and am over eighteen years old.  On March 1, 2024, I

4

served true and correct copies of the foregoing document, by posted the document electronically to

5

the ECF website of the United States District Court for the Northern District of California, for receipt

6

electronically by the parties listed on the Court's Service List.

7

I affirm under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct.  Executed on March 1, 2024, at Los Angeles, California.

9

*s/ Leanne H. Solish*

10

Leanne H. Solish

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28