**GLANCY PRONGAY & MURRAY LLP**
ROBERT V. PRONGAY (#270796)
LEANNE H. SOLISH (#280297)
CHRISTOPHER R. FALLON (#235684)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ALI ZAIDI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ADAMAS PHARMACEUTICALS, INC., *et al.*,<br><br>Defendants. | Case No. 4:19-cv-08051-JSW<br><br>**DECLARATION OF LEANNE H. SOLISH IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 4:19-cv-08051-JSW

**TABLE OF CONTENTS**

I.      HISTORY AND BACKGROUND OF THE LITIGATION ................................................. 1

II.     INFORMATION ABOUT THE SETTLEMENT ................................................................. 6

        A.      Settlement Class Definition ................................................................................ 6

        B.      The Releases ........................................................................................................ 7

        C.      The Anticipated Recovery Under the Settlement ................................................. 9

        D.      The Proposed Plan of Allocation of the Settlement Fund .................................. 10

        E.      Estimate of Claims Rate ................................................................................... 12

        F.      There Will Be No Reversion to the Defendant ................................................. 12

III.    SETTLEMENT ADMINISTRATION SELECTION PROCESS ..................................... 12

IV.     THE NOTICE PROGRAM ............................................................................................. 14

        A.      The Notice Distribution Plan ............................................................................ 14

        B.      The Contents Of The Notice Are Adequate ...................................................... 15

V.      OPT-OUTS ...................................................................................................................... 16

VI.     OBJECTIONS ................................................................................................................. 16

VII.    ATTORNEYS' FEES AND LITIGATION EXPENSES ................................................. 16

VIII.   PLAINTIFF'S REQUEST FOR REIMBURSEMENT UNDER THE PSLRA ................ 17

IX.     *CY PRES* AWARD ........................................................................................................ 18

X.      TIMELINE ...................................................................................................................... 18

XI.     PAST DISTRIBUTIONS ................................................................................................ 19

I, Leanne H. Solish, declare as follows:

1.    I am an attorney admitted to practice before this Court and a partner with the law firm of Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel"), counsel of record for Lead Plaintiff and Court-appointed Lead Counsel in the above-captioned action (the "Action").[1]  I make this declaration, together with the attached exhibits, in support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.  I have personal knowledge of the matters stated herein, and if called upon, I could and would testify competently thereto.

## I.    HISTORY AND BACKGROUND OF THE LITIGATION

2.    On December 10, 2019, a class action complaint was filed in the United States District Court for the Northern District of California (the "Court"), styled *Ali Zaidi v. Adamas Pharmaceuticals Inc., et al*., 4:19-cv-08051-JSW.  ECF No. 1.  The complaint alleged violations of the Securities Exchange Act of 1934 (the "Exchange Act") against defendants Adamas Pharmaceuticals, Inc. ("Adamas" or the "Company"), Gregory T. Went ("Went"), and Alfred G. Merriweather ("Merriweather").

3.    On February 10, 2020, Ralph Martinez and five other movants filed motions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") to be appointed lead plaintiff in the Action.  ECF Nos. 14, 19, 24, 28, 32, 42.

4.    On March 3, 2020, the Court appointed Ralph Martinez to serve as lead plaintiff for the Action ("Lead Plaintiff" or "Plaintiff") and approved his selection of GPM[2] to serve as lead counsel.  ECF No. 56.

5.    Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into the defendants' allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) Adamas's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, research reports prepared by doctors and securities and

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated February 29, 2024 (the "Stipulation"). A true and correct copy of the Stipulation is attached hereto as Exhibit 1.

[2] Attached hereto as Exhibit 2 is a true and correct copy of GPM's firm résumé.

financial analysts, and news articles concerning Adamas, GOCOVRI, OSMOLEX, Parkinson's, levodopa induced dyskinesia, and amantadine, (c) Adamas's investor call transcripts, press releases and other public statements made by the defendants prior to, during, and after the Settlement Class Period and (d) other publicly available material related to Adamas, including certain payer formularies and other documents concerning payer coverage decisions with respect to GOCOVRI, OSMOLEX, and amantadine; and (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information.  Lead Counsel also consulted with a damages and loss causation expert.

6.    On May 15, 2020, Plaintiff filed and served his 106-page (396-paragraph) Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"). ECF No. 60.  The Amended Complaint asserted claims against defendant Richard A. King ("Defendant" or "King"), and the subsequently dismissed defendants, Adamas, Gregory T. Went ("Went"), Alfred G. Merriweather ("Merriweather"), Rajiv Patni ("Patni"), and Vijay Shreedhar ("Shreedhar").   Among other things, the Amended Complaint alleged that defendants made materially false and misleading statements and omissions, in violation of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, about: (i) whether payers, physicians, and patients understood the value proposition of GOCOVRI (Adamas's only FDA-approved drug), and differentiated it from the generic amantadine IR; (ii) payer reimbursement for GOCOVRI, including step-therapy requirements; (iii) the ease of distributing GOCOVRI through Onboard, a specialty pharmacy; (iv) the impact that the high cost, lack of free samples, and low levels of reimbursement for GOCOVRI were having on demand; (v) the impact payer reimbursement requirements and Onboard were having on fulfillment; and (vi) the market opportunity for GOCOVRI as treatment for multiple sclerosis walking impairment.  Plaintiff further alleged that the prices of Adamas's publicly traded securities were artificially inflated as a result of the defendants' allegedly false and misleading statements and that the price of Adamas's common stock declined when the truth was revealed.  Plaintiff asserted these allegations on behalf of himself and a putative

class of Adamas shareholders who, between August 8, 2017 through August 8, 2019, inclusive, purchased or otherwise acquired the publicly traded common stock of Adamas. *Id.*

7. On July 14, 2020, defendants moved to dismiss the Amended Complaint. ECF No. 70. Plaintiff filed his opposition to the motion to dismiss on August 28, 2020. ECF No. 72. On September 28, 2020, defendants filed a brief in reply in support of their motion to dismiss the Amended Complaint. ECF No. 76.

8. The Court granted defendants' motion to dismiss the Amended Complaint with leave to amend certain allegations on October 8, 2021. ECF No. 79.

9. Following the Court's dismissal of the Amended Complaint, Lead Counsel continued its investigation into Adamas and the alleged false and misleading statements and omissions. This continued investigation included many additional interviews with former employees, as well as analysis into ways of addressing the pleading deficiencies identified by the Court.

10. On November 5, 2021, Plaintiff filed his 96-page (274-paragraph) Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint" or "SAC") which asserted claims under the Exchange Act against Defendant, Adamas, Went and Merriweather. ECF No. 82. The SAC narrowed the categories of alleged misleading statements and omissions, narrowed the class period from August 8, 2017 through March 4, 2019, and did not name Patni or Shreedhar as defendants. *Id.*

11. On December 10, 2021, defendants moved to dismiss the SAC. ECF No. 85. On January 12, 2022, Plaintiff filed his opposition to Defendants' motion to dismiss. ECF No. 88. On February 2, 2022, defendants filed a reply in support of the motion to dismiss the SAC. ECF No. 90.

12. On January 13, 2023, the Court granted in part, and denied in part, defendants' motion to dismiss the SAC. The Court sustained Plaintiff's claim against Defendant for a statement he made on August 8, 2017, asserting that Adamas did not anticipate a step-through of amantadine IR before payers would approve GOCOVRI, but dismissed Plaintiff's claims against defendants Adamas, Went, and Merriweather. The Court also granted Plaintiff leave to amend the SAC based

on the deficiencies in pleading scienter as explained in the Court's Order.  ECF No. 94; *Zaidi v. Adamas Pharmaceuticals, Inc., et al.*, 2023 WL 187501 (N.D. Cal. Jan. 13, 2023).

13.     Following the January 13, 2023 order, Lead Counsel continued to investigate Plaintiff's allegations and worked with their investigator to locate and interview additional former Adamas employees.  On February 27, 2023, Plaintiff filed a notice informing the Court and defendants that he did not intend to amend his complaint at this time, and that the SAC would remain the operative pleading.  ECF No. 97.

14.     On March 8, 2023, Lead Counsel and counsel for Defendant met and conferred pursuant to Rule 26(f), pursuant to which the Parties thereafter filed a joint case management statement on March 24, 2023.  ECF No. 98.  On March 29, 2023, the Court vacated the initial case management conference and entered the Trial Scheduling Order.  ECF No. 102.  Also on March 29, 2023, the Court entered an order dismissing Plaintiff's Section 20(a) of the Exchange Act claim against Defendant based on the Court's January 13, 2023 Order on the motion to dismiss the SAC.  ECF No. 103.

15.     On April 7, 2023, as required under the local rules, the Parties filed a stipulation and ADR certification in which they agreed to privately mediate with Robert A. Meyer, Esq. of  JAMS or a similar private mediation provider on or before October 4, 2023 (ECF No. 104), which proposed schedule the Court approved the same day (ECF No. 105).

16.     On April 28, 2023, Defendant filed and served an answer to the SAC.  ECF No. 108.

17.     With the automatic discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") having been lifted following Defendant's filing and serving his answer to the SAC, the Parties exchanged Initial Disclosures on May 12, 2023, and, thereafter, fact discovery commenced.  Plaintiff served his first set of document requests on Defendant on May 19, 2023, to which Defendant responded on June 20, 2023.  Plaintiff also served a third-party subpoena to former defendant Adamas, to which Adamas responded on July 24, 2023.  The Parties filed a stipulated protocol for electronically-stored information and a proposed protective order (ECF Nos. 109 & 110), both of which the Court approved on June 28, 2023 (ECF Nos. 111 & 112).

18.     During this time, the Parties, under the auspices of Mr. Meyer, began discussions to

resolve the Action. In an effort to preserve the Parties' resources, and in the interest of judicial economy, on July 28, 2023, the Parties entered a stipulation and proposed order to stay the Action until October 4, 2023, and to move all remaining dates in the Trial Scheduling Order (ECF No. 113). The Court entered the order the same day (ECF No. 114).

19.    On July 31, 2023, Lead Counsel notified former defendant Adamas that discovery had been stayed pending an October 2023 mediation and if the Parties were unable to reach a settlement, Lead Counsel would notify Adamas and arrange to discuss Adamas's responses to the subpoena at that time.

20.    On September 21, 2023, Lead Counsel and Defendant's Counsel met with Mr. Meyer, a highly experienced mediator of complex cases, who presided over a full-day, virtual mediation between the Parties.

21.    In advance of the mediation session, the Parties each submitted and exchanged detailed mediation statements (and exhibits) outlining their respective analyses of the claims and defenses concerning liability and damages in the case.

22.    The full-day mediation session began with each of Parties having full and frank discussions concerning the merits of this Action with Mr. Meyer. Thereafter, during the negotiation process, the Parties fully vetted the strengths and weaknesses of their respective claims and defenses. The session culminated in a recommendation by Mr. Meyer that the Parties settle the action for a $4.65 million cash payment to the proposed Settlement Class, in return for a release of the Settlement Class's claims against Defendant. The Parties accepted Mr. Meyer's recommendation that same day (the "Mediator's Proposal").

23.    Over the course of the next several weeks, the Parties memorialized the Mediator's Proposal in a term sheet (the "Term Sheet"), which was executed on October 27, 2023. The Term Sheet sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendant in the Action in return for a cash payment by or on behalf of Defendant of $4,650,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

24.     On February 29, 2024, the Parties executed the Stipulation.  Annexed as exhibits to the Stipulation are the following documents:

| Exhibit | Description |
| --- | --- |
| A | Preliminary Approval Order |
| A-1 | Notice |
| A-2 | Proof of Claim and Release Form |
| A-3 | Summary Notice |
| A-4 | Postcard Notice |
| B | Final Judgment and Order |

## II.     INFORMATION ABOUT THE SETTLEMENT

### A.     Settlement Class Definition

25.     Under the terms of the Settlement, the Parties agreed, subject to Court approval, to certification of a Settlement Class defined as: "all persons and entities that purchased or otherwise acquired the publicly traded common stock of Adamas, between August 8, 2017 and March 4, 2019, both dates inclusive (the 'Settlement Class Period'), and were damaged thereby."  Stipulation, ¶1(qq).

26.     Excluded from the Settlement Class are:

(a) persons and entities that suffered no compensable losses; (b) all shares of Adamas common stock purchased or acquired directly in Adamas' January 24, 2018 secondary public offering (which stock was issued pursuant to Adamas' November 21, 2016 Registration Statement and January 24, 2018 Prospectus Supplement and all materials incorporated therein) ("Covered Purchases"); and (c)(i) Defendant and Adamas; (ii) any person who served as a partner, control person, officer, and/or director of Adamas during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Adamas; (iv) any entity in which the Defendant or Adamas has or had a controlling interest; (v) any trust of which Defendant is the settler or which is for the benefit of the Defendant and/or member(s) of his Immediate Family; (vi) Defendant's liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof.  Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.  For the avoidance of doubt: (i) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common

control with Adamas or the Defendant; and (ii) Covered Purchases are excluded from this Settlement. *Id.*

27. The only differences between the class initially proposed in the SAC and the proposed Settlement Class is that the Stipulation: (i) clarifies and specifies that the Adamas securities subject to the Settlement includes only publicly traded common stock traded on the NASDAQ under the symbol "ADMS;" and (ii) excludes Covered Purchases.

28. In the SAC Adamas securities was not specifically defined. *See* ECF No. 82 at ¶ 1. Clarifying and specifying that the only Adamas securities subject to the Settlement are shares of Adamas common stock publicly traded on the NASDAQ is appropriate as it makes clear that non-publicly traded Adamas securities are not part of the Settlement. The limitation to common stock (as opposed to other, infrequently traded types of securities, such as options (which were not widely traded during the Settlement Class Period)) will also aid in the orderly administration of the Settlement.

29. The Complaint also did not specifically exclude Covered Purchases, *i.e.*, those shares of Adamas common stock that were purchased or acquired directly in Adamas' January 24, 2018 secondary public offering. Excluding Covered Purchased is appropriate because those claims were released in the Stipulation of Settlement dated November 30, 2020, which was entered into by the parties in *Plymouth County Contributory Retirement System v. Adamas Pharmaceuticals, Inc. et al.*, Case No. RG19018715 (Cal. Super. Ct., Alameda), and are barred from any double recovery. *See* ECF Nos. 106 & 106-1.

**B.      The Releases**

30. Under the terms of the proposed Settlement, the Parties have agreed that Plaintiff and each of the other Settlement Class Members shall waive and release each and every Released Plaintiff's Claim against the Defendant and the other Defendant's Releasees in exchange for a payment by or on behalf of Defendant of $4,650,000 in cash, as set forth in greater detail in paragraphs 4-7 of the Stipulation.

31. Released Plaintiff's Claims are defined in the Stipulation (*see* Stipulation, ¶1(ll)) as "all claims and causes of action of every nature and description, whether known claims or Unknown

Claims, whether arising under federal, state, common or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the SAC; and/or (ii) could have asserted in any forum that arise out of, relate to, or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the SAC and that relate to the purchase and/or acquisition of publicly traded Adamas common stock during the Settlement Class Period.  Released Plaintiff's Claims do not include: (i) any claims relating to the enforcement of the Settlement; and (ii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court."

32.     Defendant's Releasees means "(i) Defendant and Adamas; (ii) the Immediate Family members of the Defendant; (iii) direct and indirect parent entities, subsidiaries, related entities, affiliates, and successors of Adamas; (iv) any trust of which Defendant is the settler or which is for the benefit of the Defendant and/or his Immediate Family members; (v) for any of the entities listed in parts (i) through (iv), their respective past and present general partners, limited partners, principals, shareholders, joint venturers, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, insurers, trustees, trustors, agents, attorneys, predecessors, successors, assigns, heirs, executors, administrators, and any controlling person thereof; and (vi) any entity in which Defendant or Adamas has a controlling interest; all in their capacities as such. For avoidance of doubt, the Defendant's Releasees includes Supernus Pharmaceuticals, Inc., and all of its parents, subsidiaries, affiliates, and related entities."  Stipulation, ¶1(n).

33.     The scope of this release is reasonable as it is limited to claims that related to: (i) the purchase of Adamas common stock during the Settlement Class Period; and (b) the same factual allegations that were set forth in the SAC filed in this Action.  While this release includes claims not in the SAC, the release of these additional claims, including unknown claims and other claims that "could have [been] asserted" in this Action, the release of such claims is appropriate because all released claims are based on the "identical factual predicate" of the claims asserted in this Action.

The proposed Settlement does not release any claims to enforce the Settlement, or claims of any person or entity that excludes themselves from the proposed Settlement Class.

### C.    The Anticipated Recovery Under the Settlement

34.    The $4.65 million cash Settlement Amount amounts to an estimated average recovery of approximately $0.27 per damaged share before the deduction of Court-approved fees and expenses and costs of notice and claims administration, pursuant to the proposed Plan of Allocation.

35.    The costs of the notice and claims administration (*see* ¶¶50-52, *infra*), is estimated to be approximately $0.0082 per damaged share.  If Lead Counsel requests attorneys' fees of 33⅓% of the Settlement Fund and reimbursement of the maximum amount of Litigation Expenses listed in the Notice ($120,000) (*see* Sec. VII, *infra*), and the Court approves such request, the cost is estimated to be $0.098 per damaged share.  After deduction of these fees, costs, and expenses, the estimated average recovery is approximately $0.17 per damaged share, pursuant to the proposed Plan of Allocation.

36.    If Plaintiff had fully prevailed in his remaining claim—despite the Court dismissing the Amended Complaint, and dismissing all but one statement alleged in the SAC—certified the same class period as the Settlement Class, overcame summary judgment and completed a successful jury trial, and if the Court and jury accepted Plaintiff's damages theory, including proof of loss causation as to each of the three stock price drop dates alleged in this case (*i.e.*, Plaintiff's best-case scenario), estimated total maximum damages are approximately $164.2 million.  Thus, the $4.65 million Settlement Amount represents approximately 2.83% of the total maximum damages potentially available in this Action.

37.    Lead Plaintiff's decision to accept the Mediator's Proposal was informed by, *inter alia*:

- Lead Counsel's extensive investigation, factual discovery, and legal research of the claims asserted in this Action;

- Lead Counsel's work and research in opposing Defendants' two motions to dismiss;

- the Court's dismissal of the Amended Complaint, with leave to amend, which included finding that: (i) a wide range of the statements Plaintiff challenged were not materially false or misleading; (ii) other statements were non-actionable puffery, non-actionable opinion, and/or were forward looking statements protected by the PSLRA safe harbor; and (iii) Lead Plaintiff failed to adequately plead scienter; and

- the Court's opinion on the motion to dismiss the SAC, which, although the Court found that Plaintiff sufficiently alleged the falsity of several challenged statements made by Defendant and former defendants Adamas and Went, also determined—except as to one statement made by Defendant—that Lead Plaintiff had not sufficiently alleged scienter.

38. As a result, following years of investigation, research, and briefing, Lead Plaintiff and his counsel had a very good of understanding of the strengths and weaknesses of the one remaining allegedly false and misleading statement (*i.e.*, Defendant's August 8, 2017, assertion that Adamas did not anticipate a step-through of amantadine IR before payers would approve GOCOVRI). Proving this claim would be extremely tough, and would require Lead Plaintiff to demonstrate, among other things, that the remaining statement was material and that it was made with scienter. This would not be an easy task; rather, it would be subject to numerous risks and obstacles, including adverse testimony from the former defendants, and the complicated nature of the alleged fraud. Moreover, even if Lead Plaintiff could marshal the evidence to prove liability, he would still need to prove loss causation and damages through expert testimony, which would certainly be contested by Defendant's own expert(s). Simply put, this was an extremely complex case, and success was far from a *fait accompli*.

39. In the light of these risks, and many others, Lead Counsel believes that the percentage of recovery is reasonable under the circumstances.

**D.     The Proposed Plan of Allocation of the Settlement Fund**

40. The Plan of Allocation is detailed in the long-form Notice. *See* Notice, ¶¶53-71. The full Notice will be posted online at www.AdamasSecuritiesSettlement.com, is downloadable, and will be mailed to Settlement Class Members upon request.

41. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, which is the Settlement Fund (*i.e.*, the $4.65 million Settlement Amount plus any and all interest earned thereon) less any: (i) Taxes; (ii) Notice

and Administration Costs; (iii) Litigation Expenses awarded by the Court; and (iv) attorneys' fees awarded by the Court. Specifically, an Authorized Claimant's *pro rata* share will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

42.    The Plan of Allocation is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Plaintiff contends could have been recovered under the theories of liability asserted in the Action. More specifically, the Plan of Allocation reflects, and is based on, Plaintiff's allegation that the price of Adamas common stock was artificially inflated during the period between August 8, 2017 and March 4, 2019, due to Defendant's alleged materially false and misleading statement. The Plan of Allocation is based on the premise that the decrease in the price of Adamas common stock following the alleged corrective disclosures that occurred on October 5, 2018, November 2, 2018, and March 5, 2019 may be used to measure the alleged artificial inflation in the price of Adamas common stock prior to these disclosures.

43.    The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged violations of the Exchange Act, as opposed to losses caused by market, industry, or Company-specific factors or factors unrelated to the alleged violations of law, and takes into consideration of when each Claimant purchased and/or sold shares of Adamas common stock and the prices paid/received.

44.    An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of Adamas common stock the Claimant purchased, acquired, or sold during the Settlement Class Period and when that Claimant bought, acquired, or sold the shares. If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Adamas stock during the Settlement Class Period, or if the Claimant purchased shares during the Settlement Class Period but did not hold any of those shares through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have

been caused by the revelation of the alleged fraud. Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members who submit valid claims.

### E.       Estimate of Claims Rate

45.       Lead Plaintiff is proposing Strategic Claims Services ("SCS" or the "Claims Administrator") to serve as the Claims Administrator in the Action.[3] As more fully explained in the Mulholland Declaration, SCS estimates that, based on Adamas's trading history during the Settlement Class Period, approximately 75,000 copies of the Postcard Notice or an email link to the Notice and Proof of Claim will be mailed or emailed to potential Settlement Class Members. *See* Mulholland Decl., ¶14.

46.       SCS also estimates a claims rate of 20%, and would, therefore, expect to receive approximately 15,000 Claims. *Id.*, ¶15 & Ex. C.

### F.       There Will Be No Reversion to the Defendant

47.       The Settlement is non-reversionary. Under the terms of the Stipulation, no portion of the Settlement Amount will revert to the Defendant or the D&O carriers once the Effective Date occurs, regardless of the number of claims made. *See* Stipulation, ¶13.

## III.       SETTLEMENT ADMINISTRATION SELECTION PROCESS

48.       Lead Counsel retained the SCS, subject to Court approval, in order to: (i) provide notice of the proposed Settlement to the Settlement Class; and (ii) administer the claims process.

49.       Prior to retaining SCS, Lead Counsel solicited requests for proposals for notice and administration of the Settlement from three experienced and respected settlement administrators. Lead Counsel carefully compared the submitted proposals, taking into consideration each administrator's estimated cost to administer the entire Settlement, the cost of the notice program, and the cost of each processed Claim. Lead Counsel also considered certain fixed costs associated

---

[3] SCS has served as the Claims Administrator in hundreds of class actions, including securities class actions in this district. *See* Exhibit A to the Declaration of Paul Mulholland Regarding Procedures for Securely Handling Class Members Data; Comparative Settlements; and Administrative Services and Costs ("Mulholland Decl." or "Mulholland Declaration"), which is attached hereto as Exhibit 3.

with the administration of the settlement, such as the construction and maintenance of the settlement website.

50.     Pursuant to Lead Counsel's request, the potential settlement administrators proposed notifying the Settlement Class by Postcard Notice and/or emailing the Notice and Claim Form. Settlement Class Members may also request to have the Notice and Claim Form mailed to them. Payment will be by paper check or wire.

51.     In the past two years, SCS has administered, or is administering, the following settlements in which GPM served as lead or co-lead counsel: *In re RCI Hospitality Holdings Inc., Securities Litigation*, Master File No. 4:19-cv-01841-AHB (S.D. Tex.); *Goodman v. UBS Financial Services Inc.*, Civil Action No. 2:21-cv-18123-KM-MAH (D.N.J.); *Miller v. Sonus Networks, Inc. et al.*, Case No.: 1:18-cv-12344-GAO (D. Mass.); *In re Stable Road Acquisition Corp. Securities Litigation*, No. 2:21-CV-5744-JFW(SHKx) (C.D. Cal.); *In re Loop Industries, Inc. Securities Litigation*, Case No. 7:20-cv-08538-NSR (S.D.N.Y.); and *Rodriguez et al. v. Alfi Inc., et al.*, Case No. 1:21-cv-24232-KMW (S.D. Fla.).

52.     SCS's fees for administration of the Settlement will be charged on a per-claim basis and expenses will be billed separately (such as expenses for printing and mailing the Postcard Notices, and upon request, the Claims Form, publishing Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone line).

53.     At this time, SCS estimates that the Notice and Administration Costs, *i.e.*, the anticipated costs administering the notice, processing Claims, and distributing the Net Settlement Fund, among others, will generate professional services fees and expenses of approximately $140,000, excluding broker/nominee charges.  *See* Mulholland Decl., ¶17 & n.3.

54.     These costs are necessary to effectuate the Settlement, and at approximately 3.01% of the total Settlement Amount, or $0.0082 per damaged share, are reasonable in relation to the value of the Settlement.  *Id.*  If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.  Stipulation, ¶14.

DECLARATION OF LEANNE H. SOLISH

## IV.    THE NOTICE PROGRAM

### A.    The Notice Distribution Plan

55.    In accordance with the terms of the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith, SCS will promptly either email links to the location of the Notice and Proof of Claim, or mail the Postcard Notice to all Settlement Class who can be identified through reasonable effort.  SCS will also  contact brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock to inform them of their obligation to either: (i) provide the names and addresses of their clients who may be Settlement Class Members to SCS; or (ii) request copies of the Postcard Notice or an email link to the Notice and Claim Form so that they can provide notice directly to their customers and clients.  As explained above, in consultation with the Claims Administrator, Lead Counsel estimates that the Postcard mailing will be sent to approximately 75,000 Settlement Class Members.  *See* Sec. II.E *supra*; Mulholland Decl. at ¶14.

56.    Contemporaneously with the mailing/emailing of notice, Lead Counsel will cause the Claims Administrator to post downloadable copies of the Notice and Claim Form online at www.AdamasSecuritiesSettlement.com.  Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form to Settlement Class Members.

57.    Additionally, no more than ten (10) business days after is mailed/emailed, the Summary Notice will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

58.    Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement.  Significantly, with an estimated mailing to 75,000 shareholders, a full printed Notice and Claim Form (*i.e.*, a Notice Packet) sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount.  Thus, Lead Counsel respectfully submits that the combination of the mailed/emailed notice, published Summary Notice, and availability online of the Notice provides the best notice that is practicable under the circumstances.

59.     Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Yaron v. Intersect ENT, Inc. et al*, Case No. 4:19-cv-02647-JSW, ECF No. 67 at ¶8 (combination of postcard notice, publication and posting of full notice online was "the best notice practicable under the circumstances"); *Hunt v. Bloom Energy Corp.*, 2023 WL 7167118, at *9 (N.D. Cal. Oct. 31, 2023) (finding that similar proposed notice process, with postcard notice was "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement."); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer action); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6 (D. Md. May 19, 2010) (finding that a combination of postcard notices, summary notices, and a long form notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements.").

**B.      The Contents Of The Notice Are Adequate**

60.     As more fully explained in the accompanying Memorandum of Points and Authorities in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, the notice program satisfies the requirements of Rule 23(c)(2) and the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), and does so in easily understandable language.

61.     In addition, the notice program includes the following information required by the Northern District of California's Procedural Guidance for Class Action Settlements ("Class Settlement Guidelines"): (i) the contact information for Lead Counsel to answer questions (*see* Notice, ¶¶6, 89; Summary Notice, p. 2-3); (ii) the settlement website address (*see* Notice, pp. 1, 5, 7, 11, 18, 21, 22); Summary Notice, pp. 1-3; Postcard Notice), which will be maintained by SCS and which will contain links to the Notice, the motions for preliminary approval and final approval of settlement; (iii) instructions on how to access the case docket via PACER or in person using the

language suggested in item 3 of the preliminary approval Class Settlement Guidelines (*see* Notice, ¶88).

62.    All blanks in the Notice, Claim Form, Summary Notice, and Postcard Notice will be filled in once the Court sets those dates and these documents are finalized prior to mailing and publication.

## V.    OPT-OUTS

63.    The notice program instructs potential Settlement Class Members who wish to opt out from the Settlement Class to send such a request to the Claims Administrator so that it is received by the required deadline.   The notice program also clearly advises potential Settlement Class Members of the deadline to opt out, the method to opt out, and the consequences of opting out.  *See* Notice, ¶¶73-76, Summary Notice, p. 2, Postcard Notice. These instructions set forth the information needed to be properly identified and to opt out of the Settlement.  *Id.*  The identification the Adamas common shares that each potential Settlement Class Member requesting exclusion purchased/acquired and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase/acquisition and sale, is required to identify if such person or entity would otherwise be a Settlement Class Member.

## VI.    OBJECTIONS

64.    The notice program instructs potential Settlement Class Members who wish to object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  *See* Notice, ¶¶77-85, Summary Notice, p. 2, Postcard Notice.  The instructions in the Notice largely follow the Class Settlement Guidelines suggested language.  *Id.*

## VII.    ATTORNEYS' FEES AND LITIGATION EXPENSES

65.    For their efforts on behalf of the Settlement Class, Lead Counsel will be applying for a percentage of the common fund fee award to compensate them for the services they have rendered on behalf of the Settlement Class. Lead Counsel will be applying to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the $4.65 million dollar Settlement Fund (or up to $1,550,000, plus interest earned at the same rate as the Settlement Fund).

DECLARATION OF LEANNE H. SOLISH

66.     Plaintiff's Counsel's total current lodestar is $1,407,766.00 consisting of $1,295,814.50 for 2,011.85 hours of attorney time and $111,951.50 for 319.95 hours of professional support staff time. Plaintiff's Counsel's total lodestar amount includes the amount of time Plaintiff's Counsel attorneys and professional support staff billed from inception of the Action through and including January 31, 2024, and the lodestar calculation for those individuals based on Plaintiff's Counsel's 2023 billing rates. The anticipated requested fee results in a multiplier of 1.1 to Plaintiff's Counsel's current total lodestar of $1,407,766.00. Plaintiff's Counsel's current total lodestar also does not include, among other things, time that will be spent responding to Settlement Class Members inquiries, or work related to drafting the preliminary approval, final approval, and distribution motions.

67.     Lead Counsel will also apply for reimbursement of Litigation Expenses from the Settlement Fund an amount not to exceed $120,000. These Litigation Expenses were paid or incurred in connection with the institution, prosecution, and resolution of the Action. This amount will likely include an application for reimbursement of the reasonable costs and expenses (including lost wages) incurred by Plaintiff directly related to his representation of the Settlement Class pursuant to the PSLRA. *See* Sec. VIII, *infra*.

## VIII.   PLAINTIFF'S REQUEST FOR REIMBURSEMENT UNDER THE PSLRA

68.     Plaintiff will likely seek reimbursement, pursuant to 15 U.S.C. §78u-4(a)(4), of his reasonable costs and expenses (including lost wages) directly incurred in connection with his representation of the Settlement Class, in an amount not to exceed $10,000. Mr. Martinez estimates that he has devoted, at minimum, around 20 hours spent in executing his duties and responsibilities as Plaintiff in this Action. The time Mr. Martinez spent on this case is time he otherwise would have devoted to his job as an investment advisor, in addition to his investment activities.

69.     Mr. Martinez was highly involved in each phase of the litigation and communicated frequently with Lead Counsel. Mr. Martinez took his role as Lead Plaintiff seriously, and, among other things: (i) regularly communicated with Lead Counsel regarding the posture and progress of the case; (ii) compiled and produced his trading records to his attorneys; (iii) reviewed the pleadings and briefs filed in the Action; (iv) reviewed Court Orders; (v) prepared for the mediation by, among

other things, discussing with counsel the mediation strategy; (vi) made himself available during the mediation and consulted with counsel regarding settlement negotiations; (vii) evaluated the Settlement Amount, conferred with counsel, and ultimately approved the Settlement; and (viii) communicated with counsel regarding the process of finalizing the Settlement.

## IX.    *CY PRES* AWARD

70.    Lead Counsel Lead Counsel proposes Public Justice Foundation as the *cy pres* recipient of any residual funds that may remain after one or more distributions of the Net Settlement Fund to Authorized Claimants.

71.    Here, 100% of the Net Settlement Fund will be distributed to Authorized Claimants, and if any funds remain after the initial distribution (for example, due to uncashed or returned checks), further distributions to Authorized Claimants who would receive at least $10.00 from such a re-distribution will be conducted as long as they are cost effective.

72.    The Public Justice Foundation is a nonsectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy, and thus, is an appropriate *cy pres* recipient. *See Stein v. Eagle Bancorp, Inc. et al.*, No. 1:19-cv-06873-LGS, ECF No. 117 (S.D.N.Y. July 19, 2023) ("Applying that standard [that a *cy pres* designee must 'reasonably approximate' the interests of the class] here, Public Justice is an appropriate *cy pres* beneficiary, as it is a non-profit organization advocating on behalf of investors and consumers pursuing claims under federal and state securities laws."); *Yaron v. Intersect ENT, Inc., et al.*, No. 4:19-cv-02647-JSW, ECF No. 86, at ¶8 (N.D. Cal. April 10, 2023) (approving Public Justice Foundation as the *cy pres* beneficiary in a securities class action);  *In re Loop Industries, Inc. Sec. Litig.*, 2023 WL 6458976, at *2 (S.D.N.Y. Oct. 4, 2023) (same).  In addition, the Parties and their counsel do not have any relationship with the Public Justice Foundation.

73.    However, due to the potential multiple rounds of distributions as long as it is cost effective, it is likely that only a small amount of the funds will be directed to the Public Justice Foundation.

## X.    TIMELINE

74.    In connection with preliminary approval of the Settlement, Lead Plaintiff is

requesting that the Court establish: (i) dates by which notice of the Settlement will be distributed to Settlement Class Members; (ii) a date by which Settlement Class Members may exclude themselves from the Settlement; (iii) a date by which Settlement Class Members who wish to object to any aspect of Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of litigation expenses must submit that objection; and (iv) a date on which the Court will hold the final Settlement Hearing.

75.    The following proposed schedule was agreed to by the Parties and is set forth in the proposed Preliminary Approval Order:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶7(b)) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Co-Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶27) | Not later than 35 calendar days prior to the Settlement Fairness Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶14) | Not later than 21 calendar days prior to the Settlement Fairness Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶27) | 7 calendar days prior to the Settlement Fairness Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶11) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

## XI.    PAST DISTRIBUTIONS

76.    The Procedural Guidance for Class Action Settlements requests information regarding a previous distribution for at least one of Lead Counsel's past comparable class action settlements. The following chart represents the requested information for two other class action settlements for violations of the federal securities laws in which GPM, served as Lead Counsel:

| Matter | *In re K12 Inc. Securities Litigation*, Case No. 4:16-cv-4069-PJH (N.D. Cal.) | *Yaron v. Intersect, ENT, Inc., et al*, Case No.: 4:19-cv-02647-JSW (N.D. Cal) |
|---|---|---|
| **Total Settlement Fund** | $3,500,000.00 | $1,900,000 |
| **Method of Notice** | Postcard Notice and Publication | Postcard Notice and Publication |
| **Total Number of Sent Notices[4]** | 12,492 | 16,746 |
| **The Number of Claims Forms Submitted** | 3,833 | 9,254 |
| **Percentage of Claim Forms Submitted** | 30% | 55% |
| **The Number of Acceptable (In Whole or In Part) Claim Forms Submitted** | 1,410 | 6,087 |
| **Average Recovery per Claimant (based on number of Acceptable Claims)** | $552.79 | $883.97 |
| ***Cy Pres* Recipient** | Sesame Workshop | Public Justice Foundation |
| **Amount Distributed to *Cy Pres* Recipient** | $11,289.92 | This case is still in the distribution of the net settlement fund. |
| **Administrative Costs** | $91,688.25 | $125,395.77 |
| **Attorneys' Fees** | $1,160,000.00 | $633,333 |
| **Litigation Expenses** | $172,478.92 | $93,929.16 |

77.     Attached as Exhibit 4 hereto is a true and correct copy of excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024).

78.     I believe that the proposed Settlement before the Court is fair, reasonable, and adequate in light of the strengths and weaknesses of the asserted claims and that entering into the proposed Settlement is in the best interests of the Settlement Class.

---

[4] In a securities class action, like in these examples, the "total number of class members" is typically not known precisely because the securities are widely traded and there is no definitive list of class members available to the parties.  Accordingly, notices are mailed to all potential class members who can be identified through reasonable efforts, including through requests to brokers and nominees to identify all potential class members.

Case 4:19-cv-08051-JSW    Document 124    Filed 03/01/24    Page 23 of 24

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.  Executed on March 1, 2024 in Los Angeles, California.

_s/ Leanne H. Solish_
Leanne H. Solish

DECLARATION OF LEANNE H. SOLISH

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case, and am over eighteen years old.  On March 1, 2024, I served true and correct copies of the foregoing document, by posted the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 1, 2024, at Los Angeles, California.

*s/ Leanne H. Solish*
Leanne H. Solish