Robert V. Prongay (#270796)
Joseph D. Cohen (#155601)
Leanne H. Solish (#280297)
Christopher R. Fallon (#235684)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ALI ZAIDI, Individually and on Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>vs.<br><br>ADAMAS PHARMACEUTICALS, INC., *et al.*,<br><br>                                   Defendants. | Case No. 4:19-cv-08051-JSW<br><br>**LEAD PLAINTIFF'S: (1) NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Hearing Date: September 27, 2024<br>Time: 9:00 a.m.<br>Location: Courtroom 5, 2nd Floor<br>Judge: Hon. Jeffrey S. White |

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION ................................................................................................2

3

II.     PROCEDURAL AND FACTUAL BACKGROUND.........................................4

4

III.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ......5

5

        A.      Class Certification Remains Appropriate ................................................5

6

        B.      The Settlement Warrants Final Approval ................................................5

7

        C.      The Proposed Settlement Satisfies The Requirements Of Rule 23(e)(2) ................7

8

9

                1.      Rule 23(e)(2)(A): Lead Plaintiff and His Counsel Have Adequately Represented the Settlement Class ................................7

10

                2.      Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's-Length After Mediation With an Experienced Mediator ......................8

11

12

                3.      Rule 23(e)(2)(C)(i): The Proposed Settlement is Adequate Considering the Costs, Risk and Delay of Trial and Appeal.........................................10

13

                        a.      The Strength of Plaintiff's Case and Risks of Continued Litigation.........................11

14

15

                        b.      The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation ........................13

16

                        c.      Risks of Maintaining Class Action Status .....................................14

17

                4.      The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval.................15

18

                5.      Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class Settlement Members Equitably Relative to Each Other ..........................16

19

        D.      The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval ........................17

20

                1.      Discovery Completed and Stage of the Proceedings ...............................17

21

                2.      Experienced Counsel Believe the Settlement is Fair, Reasonable, and Adequate ...................18

22

23

                3.      The Reaction of Settlement Class Members to the Settlement.................18

24

                4.      The Amount Offered in Settlement.............................................................19

25

                5.      The Presence of a Government Participant..................................................21

26

IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION............................21

27

28

1

V.      THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS .....................24

2

VI.     CONCLUSION.........................................................................................................25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

3    <u>CASES</u>

4    *Buettgen v. Harless*,
         2013 WL 12303143 (N.D. Tex. Nov. 13, 2013)................................................................. 13

5

6    *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*,
         2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ..................................................................... 10

7

8    *Christine Asia Co., Ltd. v. Yun Ma*,
         2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................... 12, 16

9    *Churchill Village L.L.C. v. Gen. Elec.*,
         361 F.3d 566 (9th Cir. 2004) .............................................................................................. 6

10

11   *City of Detroit v. Grinnell Corp.*,
         495 F.2d 448 (2nd Cir. 1974)............................................................................................. 20

12
     *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
13       2021 WL 911216 (S.D.N.Y. Mar. 7, 2021) ....................................................................... 8

14   *Class Pls. v. City of Seattle*,
         955 F.2d 1268 (9th Cir. 1992) ........................................................................................... 21
15

16   *Dura Pharms., Inc. v. Broudo*,
         544 U.S. 336 (2005)..................................................................................................... 11, 20

17

18   *Eiesen v. Porsche Cars N. Am., Inc.*,
         2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ...................................................................... 8

19

20   *Feyko v. aAD Partners LP*,
         2014 WL 12572678 (C.D. Cal. Mar. 7, 2014) .................................................................... 8

21   *Fleming v. Impax Labs. Inc.*,
         2022 WL 2789496 (N.D. Cal. July 15, 2022)..................................................................... 5
22

23   *Garner v. State Farm Mut. Auto. Ins. Co.*,
         2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................................... 5
24

25   *Gross v. GFI Grp., Inc.*,
         784 F. App'x. 27 (2d Cir. Sept. 13, 2019) ........................................................................ 12

26

27   *Hanlon v. Chrysler Corp.*,
         150 F.3d 1011 (9th Cir. 1998) ................................................................................... *passim*

28

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................................... 6, 10, 19, 21

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................................ 14, 25

*In re Amgen Inc. Sec. litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................................................ 21

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................................... 8, 10

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ................................................................ 16

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ........................................................................................ 13

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2019 WL 2554232 (N.D. Cal. May 3, 2019) .................................................................... 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ......................................................................................... 20

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................................... 14

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................... 9, 18, 19, 24

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ......................................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................................... 15, 17

*In re Mut. Funds Inv. Litig.*,
    2010 WL 2342413 (D. Md. May 19, 2010) .................................................................... 25

*In re Northern Dynasty Minerals Ltd. Sec. Litig.*,
    2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) .................................................................... 10

*In re OCA, Inc. Sec. and Deriv. Litig.*,
    2009 WL 512081 (E.D. La. Mar. 2, 2009) ...................................................................... 17

*In re Omnivision Tech., Inc.*,
    559 F. Supp. 2d 1035 (N.D. Cal. 2008) ......................................................................... 14

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..................................................... 18, 19, 21

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................. 15

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................. 7

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................................... 9

*In re Regulus Therapeutics Inc. Sec. Litig.*,
    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .......................................... 16

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .............................................................. 5

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ................................................... 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020) .......................................... 14

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................... 13

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .......................................... 17

*Longo v. OSI Sys., Inc.*,
    2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022) ........................... 9

*Mendoza v. Hyundai Motor Co.*,
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ............................................ 6

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 9

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016) ....................................................... 15

*Officers for Just. v. Civil Serv. Comm. of Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .............................................................. 10

*Redwen v. Sino Clean Energy, Inc.*,
    2013 WL 12303367 (C.D. Cal. July 9, 2013) .......................................... 11

*Rodriguez v. Nike Retail Servs., Inc.*,
  2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ............................................................ 18

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................. 8, 18

*Schueneman v. Arena Pharms., Inc.*,
  2020 WL 3129566 (S.D. Cal. June 12, 2020) .................................................. 24

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................... 19

*Silverman v. Motorola Sols., Inc.*,
  739 F.3d 956 (7th Cir. 2013) .................................................................... 20

*Smith v. Dominion Bridge Corp.*,
  2007 WL 1101272 (E.D. Pa. Apr. 11, 2007) ................................................. 12

*Sudunagunta v. NantKwest, Inc.*,
  2019 WL 2183451 (C.D. Cal. May 13, 2019) ................................................... 9

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .................................................................... 13

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ................................................ 18

*Vataj v. Johnson*,
  2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ................................................ 21

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ................................................. 14

*Vikram v. First Student Mgmt., LLC*,
  2019 WL 1084169 (N.D. Cal. March 7, 2019) ............................................... 19

*Vinh Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) .................................................. 17

*Wong v. Arlo*,
  2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ............................................ 7, 10

*Yang v. Focus Media Holding Ltd.*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ................................................. 17

*Zaidi v. Adamas Pharms., Inc.*,
  650 F. Supp. 3d 848 (N.D. Cal. 2023) .................................................... 2, 12

STATUTES

15 U.S.C.A. § 78u–4(b)(3)(B) ...................................................................... 17

RULES

Fed. R. Civ. P. 23 ................................................................... *passim*

1  **NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF**

2  **CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

3  **TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

4  PLEASE TAKE NOTICE that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure,

5  the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary

6  Approval Order," ECF No. 128), and the Court's Order to Continue the Final Fairness Hearing (ECF

7  No. 132), on September 27, 2024, at 9:00 a.m., before the Honorable Jeffrey S. White, in Courtroom

8  5, 2nd Floor, at the United States District Court for the Northern District of California, 1301 Clay

9  Street, Oakland, California, lead plaintiff Ralph Martinez ("Lead Plaintiff") will, and hereby does,

10 respectfully move the Court for entry of a judgment granting final approval of the proposed Settlement

11 and entry of an order granting approval of the proposed Plan of Allocation.[1]  This motion is based on

12 the following Memorandum of Law; the Solish Declaration, and all exhibits thereto, including the

13 Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice, (B) Publication of the

14 Summary Notice, and (C) Report on Requests for Exclusion and Objections (Ex. 2, "Craig Decl.");

15 the Stipulation; all prior pleadings and papers filed herein; arguments of counsel; and any other matters

16 properly before the Court.  Defendant does not oppose this motion.

17

18

19

20

21

22

23

24

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated February 29, 2024 (ECF No. 124-1; the "Stipulation"), or the concurrently filed Declaration of Leanne H. Solish in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Solish Declaration" or "Solish Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Solish Declaration.

1

**MEMORANDUM OF LAW**

2      In accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure, Lead Plaintiff, on

3  behalf of himself and all other members of the Settlement Class, respectfully submits this

4  memorandum in support of his motion for: (1) final approval of the proposed settlement resolving the

5  Action in exchange for payment of $4.65 million in cash for the benefit of the Settlement Class (the

6  "Settlement"); and (2) approval of the proposed plan of allocation of the proceeds of the Settlement.[2]

7  **I.      INTRODUCTION**

8      After over four years of hard-fought litigation, Lead Plaintiff, through his counsel, obtained a

9  $4.65 million (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the

10 Settlement Class.  This is an extremely favorable result for the Settlement Class, and it was secured in

11 a procedurally fair manner.

12      Substantively, the Settlement represents a recovery in the range of approximately 2.8% to

13 22.03%, of the $21.1 to $164.2 million in **maximum** damages **potentially** available in this Action.

14 Such a recovery is consistent with, or significantly higher than, the 2.9%-5.1% median recovery in

15 securities cases with similar damages that settled between January 2014 and December 2023.  *See* Ex.

16 5 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action*

17 *Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024), at p. 25 (Fig. 21) (median recovery for

18 securities class actions that settled between January 2014 and December 2023 was 2.9% for cases with

19 estimated damages between $100-$199 million, and 5.1% for those with estimated damages of $20-

20 $49 million).  The recovery is all the more favorable when put in context; the case was fully dismissed

21 once and, following repleading, only one defendant, one cause of action, and one of the alleged

22 misstatements in the Second Amended Class Action Complaint for Violations of the Federal Securities

23 Laws ("SAC") survived further dismissal efforts.  *See* ECF No. 79 (granting motion to dismiss

24 Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended

25 Complaint") with leave to amend); *Zaidi v. Adamas Pharms., Inc.*, 650 F. Supp. 3d 848 (N.D. Cal.

26 2023) (granting motion to dismiss the SAC except for one alleged misstatement by Defendant King);

27

28

---

[2] The terms of the Settlement are set forth in the Stipulation.

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & PLAN OF
ALLOCATION & MEMO OF POINTS & AUTH IN SUPPORT THEREOF                                    - 2 -

1   ECF No. 103 (dismissing Section 20(a) claim against Defendant King). Had the litigation continued,

2   Lead Plaintiff would have faced numerous hurdles, any one of which could have resulted in a recovery

3   smaller than the Settlement Amount, or no recovery of at all. For these reasons, and as further

4   discussed herein and in the Solish Declaration, the Settlement is substantively fair.

5           Moreover, the process by which the Settlement was obtained evidences a lack of collusion

6   amongst the Parties and supports a finding of procedural fairness. By the time the Settlement was

7   reached, Lead Plaintiff and his counsel were well informed about the strengths and weaknesses of the

8   claims and Defendant's defenses. Prior to reaching the Settlement, Lead Counsel had, *inter alia*:

9           • moved for the appointment of Lead Plaintiff pursuant to the PSLRA;

10          • conducted a comprehensive investigation of the claims asserted in the Action, which
11            included, among other things: (a) reviewing and analyzing (i) Adamas's filings with the
              U.S. Securities and Exchange Commission, (ii) public reports, research reports prepared
12            by doctors and securities and financial analysts, and news articles concerning Adamas,
              GOCOVRI, OSMOLEX, Parkinson's, levodopa induced dyskinesia, and amantadine, (iii)
13            Adamas's investor call transcripts, press releases and other public statements made by the
              defendants prior to, during, and after the Settlement Class Period, and (iv) other publicly
14            available material related to Adamas, including certain payer formularies and other
              documents concerning payer coverage decisions with respect to GOCOVRI, OSMOLEX,
15            and amantadine; (b) retaining and working with a private investigator who conducted an
              investigation that involved, *inter alia*, numerous interviews of former Company employees
16            and other sources of relevant information; and (c) consultation with a damages and loss
17            causation expert;

18          • utilized the comprehensive investigation and additional research to draft and file the 106-
              page (396-paragraph) Amended Complaint, which asserted violations of the Securities
19            Exchange Act of 1934 ("Exchange Act");

20          • researched, drafted, and filed an opposition to defendants' motion to dismiss the Amended
              Complaint, after which the Court granted defendants' motion;

21          • conducted additional investigation and analysis, and then filed the 96-page (274-
22            paragraph) SAC;

23          • researched, drafted, and filed an opposition to defendants' motion to dismiss the SAC,
              after which the Court granted in part, and denied in part, defendants' motion;

24          • prepared for and participated in a Rule 26(f) Conference;

25          • negotiated a protective order and ESI protocol, both of which were subsequently entered
              by the Court;

26          • drafted and propounded requests for production on Defendant, as well as a subpoena *duces*
27            *tecum* on Adamas;

28          • engaged in a mediation process overseen by a highly experienced third-party mediator,

Robert A. Meyer, Esq., of JAMS, which involved, *inter alia*: (a) an exchange of written submissions concerning the facts of the case, liability and damages; (b) a full-day formal mediation session; (c) extensive consultation with Lead Plaintiff's expert on damages and loss causation; and (d) a mediator's recommendation to settle the case for $4.65 million, which was accepted by the Parties;

- negotiated a detailed confidential settlement term sheet with Defendant's Counsel, which was executed on October 27, 2023;

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendant's Counsel;

- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly; and

- drafted the preliminary approval motion and supporting papers.  ¶¶12-36.

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.

As discussed in greater detail below and in the Solish Declaration, Lead Plaintiff and his counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class.  Accordingly, Lead Plaintiff respectfully requests that the Court grant the Settlement final approval.

Lead Plaintiff also moves for approval of the proposed Plan of Allocation of the Net Settlement Fund.  The Plan of Allocation was developed by Lead Counsel, together with Lead Plaintiff's consulting damages expert, and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members.  No Settlement Class Member is favored over another under the proposed Plan; rather, all Settlement Class Members—including Lead Plaintiff—are treated in the same manner. *See* Ex. 2-C at ¶¶53-71.  Therefore, the Plan of Allocation is fair and reasonable and, as such, it too should be approved.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The Solish Declaration is an integral part of this submission.  For the sake of brevity in this memorandum, the Court is referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶10-38); the nature of the claims asserted (¶¶4, 10, 15, 19); the negotiations leading to the Settlement (¶¶28-33); the risks and uncertainties of continued litigation (¶¶39-56), and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶12-36,

79-81).

## III. STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

### A. Class Certification Remains Appropriate

In granting preliminary approval, the Court found this case appropriate for class certification for settlement purposes, and appointed Ralph Martinez as class representative and Glancy Prongay & Murray LLP as class counsel. ECF 128, ¶¶ 1-3. Nothing has changed since preliminary approval that would undermine the Court's conclusion, and class certification for settlement purposes remains appropriate. *See Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022).

### B. The Settlement Warrants Final Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).[3] Indeed, class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation; the settlement of such complex cases greatly contributes to the conservation of scarce judicial resources. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court.").

According to Rule 23(e)(2), which governs final approval, courts must determine if a proposed settlement is fair, reasonable, and adequate after considering whether:

   (A)    the class representatives and class counsel have adequately represented the class;

   (B)    the proposal was negotiated at arm's length;

   (C)    the relief provided for the class is adequate, taking into account:

---

[3] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitable relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors, which went into effect on December 1, 2018, do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e) advisory committee's notes to 2018 amendment, 324 F.R.D. 904, 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

Prior to the Rule 23(e)(2) amendment, courts in the Ninth Circuit considered the following "*Hanlon* factors":

(1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998);[4] *Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

In granting preliminary approval, the Court considered the Rule 23(e)(2) and Ninth Circuit factors when assessing the Settlement and found that it was fair, reasonable, and adequate, subject to further consideration at the final approval hearing. *See* ECF 128, ¶4. The Court's conclusion on preliminary approval is equally true now as nothing has changed between April 2, 2024 and the

---

[4] "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

1    present.  *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg.*, *Sales Practices, & Prods. Liab. Litig.*, 2019

2    WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval]

3    stand and counsel equally in favor of final approval now.").

4        As explained below and in the Solish Declaration, application of each of the four factors

5    specified in Rule 23(e)(2) and the relevant, non-duplicative *Hanlon* factors demonstrates that the

6    Settlement warrants final approval.[5]

7    **C.    The Proposed Settlement Satisfies The Requirements Of Rule 23(e)(2)**

8        **1.    Rule 23(e)(2)(A): Lead Plaintiff and His Counsel Have Adequately
             Represented the Settlement Class**

9

10        The Court should consider whether the "class representative[] and class counsel have

11   adequately represented the class" when determining whether to approve a class action settlement.  Fed.

12   R. Civ. P. 23(e)(2)(A).  "Resolution of two questions determines legal adequacy: (1) do the named

13   plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

14   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*,

15   150 F.3d at 1020.

16        Here, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class both

17   during the litigation of this Action and during its settlement.  *See generally* Solish Declaration and

18   Declaration of Ralph Martinez in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class

19   Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys'

20   Fees and Litigation Expenses (Ex. 1, "Martinez Decl.").  The Settlement negotiated on the Settlement

21   Class's behalf is the result of the diligent prosecution of this Action for over four years.  Lead Plaintiff

22   has no interests antagonistic to those of other Settlement Class Members; rather, they share the

23   common interest in obtaining the largest possible recovery from Defendant.  *See In re Polaroid ERISA*

24   *Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common

25   goal of maximizing recovery, there is no conflict of interest between the class representatives and other

26

27   _____
     [5] Fed. R. Civ. P. 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the
     non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings."
28   *Wong v. Arlo*, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (citing *Hanlon*, 150 F.3d at 1026).

1  class members.").  Moreover, Plaintiff's Counsel are highly qualified and experienced in securities

2  litigation (*see* Exs. 3-C & 4-C (firm résumés)), actively pursued the claims of Adamas investors in this

3  Court, and advocated vociferously for the Settlement Class's best interests throughout this litigation.

4  ¶¶12-36.  Thus, this factor supports final approval.

5          **2.      Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's-Length After Mediation With an Experienced Mediator**

6

7          The Court must also consider whether the settlement was "negotiated at arm's length" in

8  weighing approval of a class-action settlement.  Fed. R. Civ. P. 23(e)(2)(B).  Circumstances related to

9  this "procedural" fairness determination of a settlement traditionally include: (i) whether counsel has

10  a thorough understanding of the strength [and weakness] of the plaintiff's case[6] based on factors like

11  "the extent of discovery completed and the stage of the proceedings";[7] (ii) the "experience and views

12  of counsel";[8] and (iii) the absence of any indicia of collusion.[9]  Each of these factors supports approval

13  of the Settlement.

14          The Ninth Circuit, as well as district courts, "put a good deal of stock in the product of an arms-

15  length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. W.*

16  *Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also Eiesen v. Porsche Cars N. Am., Inc.*, 2014

17  WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement when record established that "all

18  counsel had ample information and opportunity to assess the strengths and weaknesses of their claims

19  and defenses").  Courts also recognize that "[s]ettlements reached with the help of a mediator are likely

20  non-collusive."  *Feyko v. aAD Partners LP*, 2014 WL 12572678, at *7 (C.D. Cal. Mar. 7, 2014).

21          Here, the Settlement is the product of extensive arm's-length negotiations facilitated by a well-

22  respected mediator, Robert Meyer, Esq., of JAMS, who has significant experience mediating securities

23  class actions and other complex litigation.  ¶¶28-31; *see also City of Warren Police & Fire Ret. Sys.*

24  *v. World Wrestling Ent., Inc.*, 2021 WL 911216, at *11 (S.D.N.Y. Mar. 7, 2021) (referring to Mr.

---

25  [6] *Hanlon*, 150 F.3d at 1026 (first factor).

26  [7] *See id.* (fifth factor).

27  [8] *See id.* (sixth factor).

28  [9] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & PLAN OF
ALLOCATION & MEMO OF POINTS & AUTH IN SUPPORT THEREOF                      - 8 -

Meyer as "a well-respected and experienced mediator"). In fact, the Settlement Amount is the result of a "mediator's recommendation" by Mr. Meyer following the submission of substantial mediation briefs, and an all-day mediation session with Mr. Meyer in which the Parties' positions were extensively debated. *See* ¶¶30-31; *see also Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *3 (C.D. Cal. May 13, 2019) ("The Agreement is the outcome of an arms-length negotiation conducted with the help of an experienced mediator, Robert Meyer, Esq." and the "assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

Furthermore, courts accord "significant weight" to the recommendations of counsel, who are "most closely acquainted with the facts of the underlying litigation." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005). Such should be the case here, where Plaintiff's Counsel have a thorough understanding of the strengths and weakness of the claims after more than four years of litigation, extensive prior experience litigating securities class action cases, and strongly believe that the $4.65 million Settlement is in the best interests of the Settlement Class given the significant risks of continued litigation. ¶¶39-55. As evidenced by the record in this case, and as detailed the Solish Declaration, Plaintiff's Counsel spent extensive amounts of time investigating the facts of this case, drafting pleadings, opposing two motions to dismiss, including successfully opposing the motion to dismiss the SAC, and have the benefit of the Court's two motion to dismiss decisions. Under these circumstances, there can be no question that counsel "had a sound basis for measuring the terms of the settlement." *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022).

It is also important to note that the Court-appointed Lead Plaintiff, who was involved in all aspects of the litigation, supports the Settlement. *See* Martinez Decl. at ¶¶7-8. Lead Plaintiff's support for the Settlement should be afforded "special weight" because a plaintiff "ha[s] a better understanding of the case than most members of the class." *Nat'l Rural Telecom. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *5 (N.D. Cal. Nov. 26, 2007) (noting Congress's intent to foster involvement of lead plaintiff when passing PSLRA and stating that "the role taken by the lead plaintiff in the settlement process supports settlement because lead plaintiff was intimately involved in the settlement negotiations.").

Finally, the Settlement has none of the indicia of collusion identified by the Ninth Circuit. *See*

1    *Bluetooth Headset*, 654 F.3d at 947 ("subtle signs" of collusion include a "disproportionate

2    distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement

3    providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for

4    "fees not awarded to revert to defendants rather than be added to the class fund").[10]

5         These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not

6    the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for*

7    *Just. v. Civil Serv. Comm. of Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re*

8    *Northern Dynasty Minerals Ltd. Sec. Litig.*, 2024 WL 308242, at *9 (E.D.N.Y. Jan. 26, 2024) (finding

9    that all-day mediation session with Mr. Meyer "support[ed] the conclusion that the settlement process

10   was procedurally fair.").

11            **3.      Rule 23(e)(2)(C)(i):  The  Proposed  Settlement  is  Adequate**
                        **Considering the Costs, Risk and Delay of Trial and Appeal**
12

13        Pursuant to Rule 23(e)(2)(C), the Court also must consider the substantive adequacy of the

14   proposed Settlement in determining final approval.  Rule 23(e)(2)(C)(i) evaluates whether "the relief

15   provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal"

16   along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[11]  While Lead Plaintiff believes his

17   claims have merit and that the Settlement Class would have prevailed at summary judgment and trial,

18   he nevertheless recognizes the numerous risks and uncertainties inherent in continuing to litigate.

19   Indeed, courts have repeatedly acknowledged that securities class actions "are highly complex and

20   securities class litigation is notably difficult and notoriously uncertain." *Hefler*, 2018 WL 6619983,

21   at *13; *Carpenters Health & Welfare Fund v. The Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D.

22   Ga. Oct. 20, 2008) ("Stockholder litigation is notably difficult and notoriously uncertain.").  As

23   discussed below, the benefits conferred on Settlement Class Members by the Settlement outweigh the

───

24   [10] This is not a claims-made settlement.  If the Settlement is approved, Defendant will not have any
25   right to the return of a portion of the Settlement based on the number or value of the claims submitted.
     *See* Stipulation ¶13.

26   [11] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of
27   plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation
     (second factor); and the risks of maintaining class action status through the trial (third factor). *Arlo*,
28   2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

costs, risks, and delay of further litigation, and confirm the adequacy and reasonableness of the Settlement.

### a. The Strength of Plaintiff's Case and Risks of Continued Litigation

In order to prove liability under the Exchange Act, a plaintiff must demonstrate, *inter alia*, that: (i) defendants were responsible for materially false or misleading statements; (ii) defendants acted with scienter (*i.e.*, that defendants made their misrepresentations knowingly or with deliberate recklessness); (iii) that plaintiffs' losses were caused by defendants' misrepresentations (*i.e.*, "loss causation"); and (iv) that plaintiffs and the class members suffered damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Lead Plaintiff would be required to prove each of these elements to prevail, whereas Defendant needed only to succeed on one defense to defeat the entire action. Although Lead Plaintiff is confident in the abilities of Lead Counsel to prove the case, he is also cognizant of the fact that the Court already dismissed the entire case once, has dismissed all but one of the defendants from the case, and that it found only one of the alleged false and/or misleading statements actionable. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved."); *see also Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.").

Here, Defendant and the dismissed defendants advanced several plausible arguments disputing both liability and damages. *See* Solish Decl., ¶¶41-42, 46. For example, Defendant forcefully argued in both motions to dismiss, and undoubtedly would continue to argue at summary judgment and trial, that: (i) Lead Plaintiff would not be able to prove that the sole remaining alleged misstatement was false and/or misleading; (ii) the statement was not actionable because it was forward looking and protected by the PSLRA's safe harbor provision; (iii) the statement was a materialization of a repeatedly warned of risk; (iv) the statement was King's opinion based on his interpretation of data available to him at the time; and (v) the statement was not material because it concerned Defendant's

1    expectations of payers' reimbursement requirements and, at the time, investors knew that GOCOVRI

2    had not been approved by the FDA, and thus, payers had not completed their evaluation. *Id.,* ¶41.

3    Plaintiff's Counsel know from painful experience that surviving a motion to dismiss on the issues of

4    materiality and falsity—even under the heightened pleading standard of the PSLRA—does not

5    guarantee a recovery. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019)

6    (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not,

7    as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b),"

8    despite the trial court ***twice*** finding the statement actionable).

9            In addition to claiming that he did not make a material misstatement, Defendant also disputed

10   that he acted with the requisite scienter. ¶42. This posed a major risk because scienter is notoriously

11   "complex and difficult to establish at trial." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166,

12   1172 (S.D. Cal. 2007). Juries cannot read minds and evidence of a mental state is rarely direct;

13   meaning the jurors must infer it. *See, e.g., Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *5

14   (E.D. Pa. Apr. 11, 2007) ("Since stockholders normally have little more than circumstantial and

15   accretive evidence to establish the requisite scienter, proving scienter is an uncertain and difficult

16   necessity for plaintiffs."). Defendant maintained that he was simply sharing his honestly held belief

17   about what payer coverage might look like for GOCOVRI should it be approved by the FDA. ¶42.

18   He also repeatedly asserted that Lead Plaintiff could not point to any evidence, such as stock trading

19   or incentive-based compensation tied to stock price to establish a motive for him to commit securities

20   fraud. *Id.* While the Court found that Lead Plaintiff had sufficiently alleged scienter with respect to

21   Defendant King at the motion to dismiss stage, it also recognized that defendants' argument against

22   scienter "is reinforced by the lack of any suspicious stock sales, which is not dispositive but does

23   undermine an inference of scienter." *Adamas Pharms.*, 650 F. Supp. 3d at 864. The facts underlying

24   this negative inference would not have changed had the litigation continued, making scienter all the

25   harder to establish. Accordingly, Lead Plaintiff's ability to establish scienter was far from a *fait*

26   *accompli. See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019)

27   ("Proving scienter is hard to do.").

28           If Lead Plaintiff succeeded in establishing liability, he would still have to overcome

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & PLAN OF
ALLOCATION & MEMO OF POINTS & AUTH IN SUPPORT THEREOF                                    - 12 -

1    Defendant's arguments regarding loss causation and damages.  Lead Plaintiff alleged that corrective

2    disclosures removed the artificial inflation from the price of Adamas common stock on October 5,

3    2018, November 2, 2018, and March 5, 2019 (the "Corrective Disclosure Dates").  Defendant,

4    however, would have likely asserted that there was no corrective disclosure at all because the existence

5    of step-therapy requirements was revealed to the market prior to October 5, 2018, and, to the extent

6    there was a corrective disclosure, it occurred in full on October 5, 2018, when Bank of America issued

7    a report revealing the impact of step therapy requirements on physician interest and demand for

8    GOCOVRI.  ¶46.  Had either of these arguments been accepted by the trier of fact, damages would

9    been eliminated, or significantly reduced.  *See infra* § III.D.4.

10        Moreover, the five months between the first and last Corrective Disclosure Dates created a

11   very real risk to proving that the share price declines were solely a result of the disclosures as opposed

12   to other non-fraud related information.  *See, e.g.*, *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at

13   *9 (N.D. Cal. Oct. 27, 2015) ("[I]t is difficult for plaintiff to prove loss causation and damages at trial."

14   (cleaned up)).  Lead Plaintiff anticipates Defendant would have engaged a highly respected market

15   efficiency and loss causation expert to support his arguments that the reasons for the stock-price

16   declines on those dates were unrelated to the alleged fraud.  This would have led to a "battle of the

17   experts," and "[o]ne cannot predict which expert's testimony or methodology a jury would find

18   reliable.  If the jury agreed with Defendants, Plaintiffs would have had their damages significantly

19   reduced or their claims fail as a matter of law." *Buettgen v. Harless*, 2013 WL 12303143, at *8 (N.D.

20   Tex. Nov. 13, 2013); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001)

21   ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures

22   to the jury and with no guarantee whom the jury would believe.").

23        For these reasons, as well as many others, success in this case was far from a forgone

24   conclusion.

25              **b.    The Proposed Settlement Eliminates the Additional Cost
                        and Delay of Continued Litigation**

26

27        Courts have consistently recognized that "the cost, complexity and time of fully litigating the

28   case" are key factors in evaluating the reasonableness of a settlement. *Torrisi v. Tucson Elec. Power*

1   *Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

2   2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020) ("[F]urther litigation would have delayed any

3   potential recovery . . . and would have been costly and risky.  By contrast, the Settlement provides . . .

4   timely and certain recovery."); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021)

5   ("Unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

6   expensive litigation with uncertain results.").

7            Here, Lead Plaintiff and his counsel recognize that further litigation of this Action would have

8   presented considerable pre-trial, post-trial and appellate obstacles and delays, and that failure on any

9   of the relevant elements would have been fatal to Lead Plaintiff's claims.  The Settlement, which

10  results in an immediate and substantial $4.65 million recovery, without the considerable risk, expense

11  and delay of further litigation is a far better option for the Settlement Class.  *See In re Advanced Battery*

12  *Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 176 (S.D.N.Y. 2014) ("The present value of a certain recovery

13  at this time, compared to the slim chance for a greater one down the road, supports approval of a

14  settlement that eliminates the expense and delay of continued litigation, as well as the significant risk

15  that the Class could receive no recovery").

16                          c.       **Risks of Maintaining Class Action Status**

17           While Lead Plaintiff and Lead Counsel are confident that the Settlement Class meets the

18  requirements for certification (*see* ECF No. 130,  Sec. V), a class has not yet been certified and Lead

19  Plaintiff is cognizant of the risk that the Court could: (i) disagree with his arguments; or (ii) accept the

20  Defendant's argument that the Court should end the class period on October 5, 2018—the date of the

21  first alleged corrective disclosure.  Even if the Court were to certify the class, there is always a risk

22  that the class could be decertified at a later stage in the proceedings.  *See, e.g.*, *In re Omnivision Tech.,*

23  *Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee

24  the certification would survive through trial, as Defendant might have sought decertification or

25  modification of the class").  Thus, the risks and uncertainty surrounding class certification also support

26  approval of the Settlement.  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y.

27  2019)  ("Although the risk of maintaining a class through trial is present in [every] class action ... this

28  factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & PLAN OF
ALLOCATION & MEMO OF POINTS & AUTH IN SUPPORT THEREOF                                          - 14 -

1  class certification if the case were to be litigated.").

2  **4.    The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval**

3  Under Rule 23(e)(2)(C)(ii)-(iv), courts also must consider whether the relief provided for the

4  class is adequate in light of "the effectiveness of any proposed method of distributing relief to the

5  class, including the method of processing class-member claims," "the terms of any proposed award of

6  attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule

7  23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the Settlement's approval

8  or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

9  **Rule 23 (e)(2)(C)(ii):** Here, the method for processing Settlement Class Members' claims and

10  distributing the Net Settlement Fund to eligible claimants is well-established and effective. Strategic

11  Claims Services ("SCS"), the Court-approved Claims Administrator, will process claims under the

12  guidance of Lead Counsel, provide claimants with an opportunity to cure any deficiency in their claim

13  or request review of any denial of their claim, and, ultimately, mail or wire Authorized Claimants their

14  *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, after submission

15  and Court-approval of Lead Plaintiff's distribution motion. This type of claims processing is standard

16  in securities class action settlements and it is effective, as well as necessary, insofar as neither Lead

17  Plaintiff nor Defendant possess the individual investor trading data required for a claims-free process

18  to distribute the Net Settlement Fund. *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,

19  315 F.R.D. 226, 233-34, 242 (E.D. Mich. 2016) (approving settlement with a nearly identical

20  distribution process), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

21  **Rule 23(e)(2)(C)(iii):** The relief provided for the Settlement Class is also adequate when the

22  terms of the proposed award of attorneys' fees is considered. As detailed in the accompanying fee and

23  expenses memorandum, a proposed attorneys' fee of 33⅓% of the Settlement Fund (which, by

24  definition, includes interest earned on the Settlement Amount) is reasonable in light of the work

25  performed and the results obtained. The proposed attorneys' fee is also consistent with awards in

26  similar complex class action cases. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

27  (approving fee equal to 33% percent of a $12 million settlement fund); *In re Mego Fin. Corp. Sec.*

28  *Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upholding fee award of one-third of $1.725 million

1    settlement).  More importantly, approval of the requested attorneys' fees is separate from approval of

2    the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys'

3    fees.  *See* Stipulation ¶35.

4        **Rule 23(e)(2)(C)(iv):** Finally, in accordance with Rules 23(e)(2)(C)(iv) and 23(e)(3), and as

5    Lead Plaintiff noted in his preliminary approval papers, the Parties entered into a confidential

6    agreement that establishes certain conditions pursuant to which Defendant King may terminate the

7    Settlement if Settlement Class Members who collectively have damages equating to a certain dollar

8    amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement.  "This type

9    of agreement is standard in securities class action settlements and has no negative impact on the

10   fairness of the Settlement." *Christine Asia Co.*, 2019 WL 5257534, at *15 *appeal withdrawn sub nom.*

11   *Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020); *see also In re Carrier IQ, Inc.,*

12   *Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval

13   of class action settlement and observing that such "opt-out deals are not uncommon as they are

14   designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").[12]

15   **5.    Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
          Settlement Members Equitably Relative to Each Other**

16

17       Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members

18   equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Under the proposed Plan of Allocation,

19   each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.

20   Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized

21   Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total

22   amount in the Net Settlement Fund. ¶71. Lead Plaintiff will receive the same level of *pro rata*

23   recovery, based on his Recognized Claim as calculated by the Plan of Allocation, as all other similarly

24   situated Settlement Class Members. "Moreover, the service award Lead Plaintiff seeks is reasonable

25   and does not constitute inequitable treatment of class members." *In re Regulus Therapeutics Inc. Sec.*

26   *Litig.*, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020).  Accordingly, this factor favors final

27
28   [12] The Court requested and was provided the Supplemental Agreement for its *in camera* review. *See*
     ECF 128 at 1.

approval of the Settlement. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period."); *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

### D. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s factors.[13] These factors, viewed in light of the Rule 23(e)(2) factors identified above, either support final approval or are neutral.

#### 1. Discovery Completed and Stage of the Proceedings

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459. "Instead, courts look for indications the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016).

Although discovery was in its infancy at the time of the settlement as a result of the PSLRA's automatic stay of discovery,[14] Lead Counsel conducted an extensive investigation into the claims asserted in this Action, which included a far-reaching review of publicly available information, significant work with a private investigator, and consultation with experts in the fields of financial analysis, loss causation and damages.  ¶¶14, 18, 22.  Additionally, Plaintiff's Counsel drafted the complaints, opposed defendants' two motions to dismiss, participated in a mediation process in which each side put forth their best arguments, and reviewed and analyzed the Court's decisions. ¶¶14-31,

---

[13] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

[14] *See In re OCA, Inc. Sec. and Deriv. Litig.*, 2009 WL 512081, at *12 (E.D. La. Mar. 2, 2009) ("Because the PSLRA prohibits formal discovery during the pendency of any motion to dismiss, the parties were prohibited from engaging in formal discovery until the Court ruled on defendants' motion to dismiss ....") (citing 15 U.S.C.A. § 78u–4(b)(3)(B).

79-81.  As a result of these efforts, Lead Plaintiff and his counsel had a thorough understanding of the claims and defenses asserted in the Action, and the significant risks to establishing liability and damages.  This understanding enabled Lead Plaintiff and Plaintiff's Counsel to negotiate the Settlement intelligently and responsibly.  *See Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry.  The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

### 2.    Experienced Counsel Believe the Settlement is Fair, Reasonable, and Adequate

The Ninth Circuit recognizes that parties "represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967.  Thus, courts grant great weight to the recommendations and opinions of experienced counsel.  *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . . favors approving the settlement" and highlighting counsel's "thorough understanding of the strengths and weaknesses of th[e] case and their extensive experience litigation prior . . . class actions cases").

Here, Plaintiff's Counsel have extensive experience in securities litigation and have obtained a thorough understanding of the merits and risks of the Action.  Under such circumstances, Plaintiff's Counsel's conclusion that the Settlement is fair and reasonable and in the best interests of the Settlement Class supports final approval.  *Heritage Bond*, 2005 WL 1594403, at *9 ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

### 3.    The Reaction of Settlement Class Members to the Settlement

The eighth *Hanlon* factor—the reaction of the Class—overlaps with Rules 23(c)(2)(B)(vi), on

1   the opportunity for exclusion, and 23(e)(5), on the opportunity to object. "[T]he absence of a large

2   number of objections to a proposed class action settlement raises a strong presumption that the terms

3   of a proposed class action settlement are favorable to class members." *Omnivision*, 559 F. Supp. 2d

4   at 1043; *see also Hanlon*, 150 F.3d at 1027 (that the "overwhelming majority" stayed in the class is

5   "objective positive commentary as to its fairness").

6         Here, as required by Rules 23(c)(2)(B)(vi) and 23(e)(5), the Settlement affords Settlement

7   Class Members the opportunity to request exclusion from, or object to, the Settlement.  Ex. 2-C

8   (Notice) at p.3 & ¶¶73-75, 79-83. In total, as of July 15, 2024, 30,085 potential Settlement Class

9   Members were either mailed Postcard Notice or emailed a link to the Notice and Claim Form.  Ex. 2

10  (Craig Decl.), ¶¶5-11.  To date, not a single request for exclusion has been received, and no objections

11  have been filed with the Court. *Id*. at 12-13; Solish Decl., ¶67.[15]  The Settlement Class's universally

12  positive reaction strongly supports final approval of the Settlement.  *Omnivision*, 559 F. Supp. 2d at

13  1043 ("By any standard, the lack of objection of the Class Members favors approval of the

14  Settlement."); *Heritage Bond*, 2005 WL 1594403, at *10 ("The Court finds the lack of class members

15  that have manifested any disapproval of the Settlement further demonstrates the fairness, adequacy

16  and reasonableness of the Settlement.").

17                      **4.    The Amount Offered in Settlement**

18        "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs'

19  expected recovery against the value of the settlement offer." *Hefler*, 2018 WL 6619983, at *9.  "This

20  determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may

21  be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong

22  claim for the same amount." *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *3 (N.D.

23  Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y.

24  Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in

25  the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

26  _____

27  [15] The deadline to request exclusion from, or to object to any aspect of, the Settlement is September 6,
    2024.  If any objections or opt-outs are received after the date of this filing, they will be addressed on

28  reply.

1    Indeed, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a

2    hundredth or even a thousandth part of a single percent of the potential recovery." *City of Detroit v.*

3    *Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2nd Cir. 1974).

4         Here, Lead Plaintiff's damages expert estimates that if Plaintiff had prevailed on his remaining

5    claim, and if the Court and jury subsequently accepted all of Plaintiff's liability and damages theories,

6    including proof of loss causation as to each of the ***three*** alleged stock price drop dates—*i.e.*, Plaintiff's

7    ***best case scenario***—the total ***maximum*** damages would be approximately $164.2 million. Under such

8    a scenario, the $4.65 million recovery represents approximately 2.83% of the estimated maximum

9    damages potentially available in this Action.

10        However, had this litigation continued, Defendant would have raised serious arguments

11   relating to Lead Plaintiff's loss causation allegations. *See supra* § III.C.3.a. If, for example, the Court

12   or jury found that the truth of the remaining alleged statement was fully disclosed on October 5, 2018,

13   recoverable damages would have been an estimated $21.1 million—in which case the Settlement

14   Amount equates to a 22.03% recovery. A recovery in the range of 2.83-20.3% is consistent with, or

15   four times higher than, those obtained in securities cases with similarly sized damages. *See* Ex. 5

16   (NERA Report), at p. 25 (Fig. 21) (median recovery for securities class actions that settled between

17   January 2014 and December 2023 was 2.9% for cases with estimated damages between $100-$199

18   million and 5.1% for those with estimated damages of $20-$49 million). Moreover, the estimated

19   damages for each of these scenarios assumes that Lead Plaintiff is given full credit for each of the

20   respective drops and does not take into account any disaggregation arguments that Defendant may

21   have raised. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) ("to

22   establish loss causation, *Dura* requires plaintiffs to disaggregate those losses caused by changed

23   economic circumstances, 'changed investor expectations, new industry-specific or firm-specific facts,

24   conditions, or other events,' from disclosures of the truth behind the alleged misstatements." quoting

25   *Dura Pharms.*, 544 U.S. at 343).

26        Of course, Defendant would have continued to challenge all aspects of the case, and the

27   prospect that Plaintiff would have obtained ***any*** recovery was far from guaranteed. *See Silverman v.*

28   *Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright

1   in many securities suits."); *Hefler*, 2018 WL 6619983, at *13 ("Plaintiffs' Counsel faced substantial

2   risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the

3   demanding pleading standards of the PLSRA.").  Consequently, the amount recovered, when balanced

4   against the risks of continued litigation, weighs strongly in favor of preliminary approval.

5                    **5.        The Presence of a Government Participant**

6        "Because no government entities are participants in this case, this factor is neutral."  *In re*

7   *Amgen Inc. Sec. litig.*, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016).

8                                          *        *        *

9        As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors either supports a

10  finding that the Settlement is fair, reasonable, and adequate, or is neutral.  Final approval is, therefore,

11  appropriate.

12  **IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

13       Lead Plaintiff also requests final approval of the Plan of Allocation.  A plan of allocation in a

14  class action "is governed by the same standards of review applicable to approval of the settlement as

15  a whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045 (citing

16  *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)).  The allocation formula used in

17  a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by

18  experienced and competent counsel." *Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20,

19  2021).

20       The proposed Plan of Allocation, developed by one of Lead Plaintiff's economic expert

21  consultants working in conjunction with Lead Counsel, is based on an out-of-pocket theory of damages

22  consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that

23  Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted

24  in the Action.[16]  More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's

25  allegation that the price of Adamas common stock was artificially inflated during the Settlement Class

26

27  _____

28  [16] The proposed Plan of Allocation is set forth in the Notice posted on the Settlement Website.  *See* Craig Decl., Ex. C (Notice), at ¶¶53-71.

1  Period due to Defendant's alleged materially false and misleading statement.  Lead Plaintiff alleges

2  that corrective disclosures removed the artificial inflation in the price of Adamas common stock on

3  the following dates: October 5, 2018, November 2, 2018, and March 5, 2019.  *See* Craig Decl., Ex. C

4  (Notice), at ¶55.

5       Lead Plaintiff's consulting damages expert reviewed publicly available information regarding

6  Adamas and performed statistical analyses of the price movements of Adamas common stock relative

7  to the price performance of market and peer indices during the Settlement Class Period.  From this

8  data, she calculated the alleged artificial inflation by isolating the losses in Adamas common stock

9  that resulted from the alleged violations of the federal securities laws, eliminating losses attributable

10  to market factors, industry factors, or alleged Company-specific factors unrelated to the alleged

11  violations of law.  The amount of artificial inflation in Adamas common stock on each day of the

12  Settlement Class Period is set forth in Table 1 in the Notice.  *See id.*, at ¶¶54, 56.  In order for a

13  Settlement Class Member to have a Recognized Loss under the Plan of Allocation, shares of Adamas

14  common stock must have been purchased or acquired during the Settlement Class Period and held

15  through at least one of the Corrective Disclosure Dates.  *Id.* at ¶55.

16       Under the Plan of Allocation, a Recognized Loss will be calculated for each share of Adamas

17  common stock purchased or otherwise acquired during the Settlement Class Period.  The calculation

18  of Recognized Loss will depend upon several factors, including when the shares were purchased or

19  otherwise acquired during the Settlement Class Period and in what amounts, and whether those shares

20  were sold, and if sold, when they were sold, and for what amounts. The Recognized Loss is not

21  intended to estimate the amount a Settlement Class Member might have been able to recover after a

22  trial, nor to estimate the amount that will be paid to Authorized Claimants pursuant to the Settlement.

23  *Id.* at ¶53.  The Recognized Loss is the basis upon which the Net Settlement Fund will be

24  proportionately allocated to the Authorized Claimants.  *Id.*

25       In general, the Recognized Loss for Adamas common stock acquired during the Settlement

26  Class Period will be the difference between the estimated artificial inflation on the date of acquisition

27  and the estimated artificial inflation on the date of sale, or the difference between the actual purchase

28

1  price and sale price, whichever is less.[17]  The Recognized Loss calculation also incorporates the "90-

2  day look back" provision of the PSLRA.  *See id.* at ¶¶57, 59.

3      The sum of a Claimant's Recognized Loss is the Claimant's "Recognized Claim," and the Net

4  Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative

5  size of their Recognized Claims, subject to a $10 *de minimis* provision.  *See id.* at ¶¶62, 68.  More

6  precisely, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized

7  Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total

8  amount in the Net Settlement Fund.  *Id.* at ¶68.  If a Claimant has an overall market *gain* with respect

9  to his, her, or its transactions in Adamas common stock during the relevant period, the Claimant is not

10  entitled to recover under the Plan of Allocation.  *Id.* at ¶¶66-67.

11      If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed

12  or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost

13  effective.  Ex. 2-C (Notice) at ¶69.  At such time as it is determined that the re-distribution of funds

14  remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be

15  contributed—subject to Court approval—to the Public Justice Foundation.  *See* N.D. Cal. Pro.

16  Guidance for Class Action Settlements, at ¶8.  The Public Justice Foundation is a nonsectarian, not-

17  for-profit organization dedicated to, among other things, investor education and advocacy and is an

18  appropriate *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action.

19  Courts in this District and elsewhere have approved it as a *cy pres* recipient in other similar actions.

20  *See Stein v. Eagle Bancorp, Inc. et al.*, No. 1:19-cv-06873-LGS, ECF No. 117 (S.D.N.Y. July 19,

21  2023) ("Applying that standard [that a *cy pres* designee must 'reasonably approximate' the interests

22  of the class] here, Public Justice is an appropriate *cy pres* beneficiary, as it is a non-profit organization

23

24  ─────────────────────

25  [17] With respect to Adamas publicly traded common stock purchased or sold through the exercise of an option, the purchase/sale date of the stock is the exercise date of the option and the purchase/sale price of the stock is the exercise (strike) price of the option. Any Recognized Loss Amount arising from purchases of Adamas publicly traded common stock acquired during the Settlement Class Period through the exercise of an option on Adamas publicly traded common stock shall be computed as provided for other purchases of Adamas publicly traded common stock in the Plan of Allocation. *See* Craig Decl., Ex. C (Notice), at ¶65.

26

27

28

1   advocating on behalf of investors and consumers pursuing claims under federal and state securities

2   laws.") (Ex. 8); *Yaron v. Intersect ENT, Inc., et al.*, No. 4:19-cv-02647-JSW, ECF No. 86, at ¶8 (N.D.

3   Cal. April 10, 2023) (approving Public Justice Foundation as the *cy pres* beneficiary in a securities

4   class action) (Ex. 9).

5          Plaintiff's Counsel believe that the Plan of Allocation will result in a fair and equitable

6   distribution of the Settlement proceeds among Settlement Class Members who submit valid claims.

7   *See Schueneman v. Arena Pharms., Inc.*, 2020 WL 3129566, at *6 (S.D. Cal. June 12, 2020)

8   (approving substantially similar plan of allocation).  To date, no objections to the Plan of Allocation

9   have been filed on this Court's docket.  ¶76.  Accordingly, Lead Plaintiff respectfully requests that the

10  Court approve the proposed Plan of Allocation.  *See Heritage Bond*, 2005 WL 1594403, at *12 ("In

11  light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal

12  of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and

13  adequate.").

14  **V.     THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS**

15         The Court approved the proposed notice program in the Preliminary Approval Order, and

16  Plaintiff's Counsel executed the notice program in accordance with the provisions therein.  ¶¶57-66.

17  Notice was given to potential Settlement Class Members via mail, email, the Settlement Website

18  (www.AdamasSecuritiesSettlement.com), and publication.[18]  Craig Decl. at ¶¶3-7, 9, 11.  As of July

19  15, 2024, a total of 30,085 potential Settlement Class Members and nominees were either mailed

20  Postcard Notice or emailed the link to the Notice and Claim Form.  *Id.* at ¶71.

21         On May 13, 2024, the Court-approved Summary Notice was published in *Investors' Business*

22  *Daily* and transmitted once over the *PR Newswire*.  Craig Decl. ¶9 & Ex. D.  The published Summary

23  Notice clearly and concisely provided information concerning the Settlement and the means to obtain

24  a copy of the Notice.  *See id.*

25         Finally, the Claims Administrator posted the Notice, Claim Form, Stipulation, SAC, and other

26

27  [18] The Settlement Website was established on April 23, 2024.  Ex. 2 (Craig Decl.) at ¶11.  From this
    website, potential Settlement Class Members can, *inter alia*, download copies of the Notice and Claim
28  Form and submit claims online.  *Id.*

relevant documents online at the Settlement Website, and provided a toll-free telephone number for Settlement Class Members to call with any questions concerning the Settlement. *Id.* at ¶¶10-11. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See Advanced Battery*, 298 F.R.D. at 182-83 n.3 (collecting cases and stating that "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-7 (D. Md. May 19, 2010) (approving combination of postcard notice, summary notice, and detailed notice available online as "the best notice practical").

## VI.    CONCLUSION

For the reasons stated in this memorandum and in the Solish Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and approve the proposed Plan of Allocation.

DATED:  July 30, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Leanne H. Solish*
Robert V. Prongay
Joseph D. Cohen
Leanne H. Solish
Christopher R. Fallon
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
        jcohen@glancylaw.com
        lsolish@glancylaw.com
        cfallon@glancylaw.com

*Counsel for Lead Plaintiff Ralph Martinez and Lead Counsel for the Settlement Class*

1

**<u>PROOF OF SERVICE</u>**

2

    I hereby certify that on this 30th day of July, 2024, a true and correct copy of the foregoing

3

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

4

5

                       *s/ Leanne H. Solish*
                       Leanne H. Solish

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT & MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & PLAN OF
ALLOCATION & MEMO OF POINTS & AUTH IN SUPPORT THEREOF