Robert V. Prongay (#270796)
Joseph D. Cohen (#155601)
Leanne H. Solish (#280297)
Christopher R. Fallon (#235684)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| ALI ZAIDI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>ADAMAS PHARMACEUTICALS, INC., *et al.*,<br><br>    Defendants. | Case No. 4:19-cv-08051-JSW<br><br>**LEAD COUNSEL'S: (1) NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; AND (2) MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Hearing Date: September 27, 2024<br>Time: 9:00 a.m.<br>Location: Courtroom 5, 2nd Floor<br>Judge: Hon. Jeffrey S. White |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................................ 2

II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ........................... 5

III.  THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST ................... 5

      A.    Plaintiff's Counsel Are Entitled To An Award Of Attorneys' Fees From The
            Common Fund ..................................................................................................... 5

      B.    The Court Should Calculate The Requested Fee As A Percentage Of The
            Common Fund ..................................................................................................... 5

      C.    The Requested Attorneys' Fee Is Supported By The Factors Considered By
            Courts In The Ninth Circuit ............................................................................... 7

            1.    The Quality Of The Result Achieved Supports The Fee Request ............... 7

            2.    The Substantial Risks Of The Litigation Support The Fee Request ........... 9

            3.    The Skill Required And The Quality Of The Work ................................. 13

            4.    The Contingent Nature Of The Fee And The Financial Burden Carried
                  By Counsel Support The Fee Request....................................................... 14

            5.    A 33⅓% Fee Award Is Consistent With Fee Awards In Similar,
                  Complex, Contingent Litigation................................................................ 16

            6.    The Reaction Of The Class Supports The Requested Fee ........................ 19

      D.    A Lodestar Cross-Check Supports The Requested Fee ....................................... 19

IV.   PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
      APPROVED ............................................................................................................... 23

V.    PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS AND
      EXPENSES UNDER 15 U.S.C. §78u-4(a)(4) ........................................................... 24

VI.   CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ................................................................................................. 9

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ............................................................................................... 3

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ............................................................................................................ 18

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
    2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ........................................................................ 4

*Bickley v. Schneider Nat'l Carriers, Inc.*,
    2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) ..................................................................... 18

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .............................................................................................................. 5

*Boyd v. Bank of America Corp.*,
    2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .................................................................... 18

*Brown v. China Integrated Energy Inc.*,
    2016 WL 11757878 (C.D. Cal. July 22, 2016) ................................................................... 12

*Cabiness v. Educ. Fin. Sols., LLC*,
    2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) .................................................................... 22

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................................. 9, 12

*Chun–Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................................ 22

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................................................ 10

*Craft v. Cty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) .............................................................................. 17

*Dakota Medical, Inc. v. RehabCare Group, Inc.*,
    2017 WL 4180497 (E.D. Cal. Sept. 21, 2017) ................................................................... 21

*Davis v. Yelp, Inc.*,
    2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ............................................................... 19, 25

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016).................................................................... 8, 14, 15

*Ellison v. Steven Madden, Ltd.*,
  2013 WL 12124432 (C.D. Cal. May 7, 2013)....................................................................... 6

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003)............................................................................................ 9

*Fernandez v. Victoria Secret Stores, LLC*,
  2008 WL 8150856 (C.D. Cal. 2008).................................................................................. 19

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002)............................................................................................ 21

*Glass v. UBS Fin. Servs., Inc.*,
  331 Fed. Appx. 452 (9th Cir. 2009) ............................................................................... 7, 21

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015)............................................................................................ 16

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................................... 10

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013).......................................................................................... 20

*Gross v. GFI Group, Inc.*,
  310 F. Supp. 3d 384 (S.D.N.Y. 2018) .............................................................................. 15

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019)................................................................... 24

*Hageman v. AT & T Mobility LLC*,
  2015 WL 9855925 (D. Mon. Feb. 11, 2015)..................................................................... 20

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)................................................................................................ 23

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................................... 2

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .......................................................................................................... 7

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .............................................................................. 6, 17

MOTION FOR AN AWARD OF ATTORNEYS' FEES                              Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

iii

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,*
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ............................................................ 14

*In re Alstom SA Sec. Litig.,*
  741 F. Supp. 2d 469 (S.D.N.Y. 2010) ...................................................................... 15

*In re Am. Apparel Inc. S'holder Litig.,*
  2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) .......................................................... 21

*In re Amgen Inc. Sec. Litig.,*
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ......................................................... 20

*In re Apollo Grp. Inc. Sec. Litig.,*
  2012 WL 1378677 (D. Ariz. 2012) ........................................................................... 21

*In re Apple Computer Sec. Litig.,*
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .......................................................... 3, 16

*In re Banc of California Sec. Litig.,*
  2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) .......................................................... 18

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........................................................ 3, 16

*In re Bausch & Lomb, Inc. Sec. Litig.,*
  183 F.R.D. 78 (W.D.N.Y. Oct. 28,1998) .................................................................. 10

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.,*
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................... 12

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) ......................................................................... 6, 7, 22

*In re Cendant Corp. Litig,*
  264 F.3d 201 (3d Cir. 2001) ..................................................................................... 12

*In re Centurylink Sales Practices and Sec. Litig.,*
  2021 WL 3080960 (D. Minn. July 21, 2021) ........................................................... 13

*In re Charles Schwab Corp. Sec. Litig.,*
  2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ............................................................ 7

*In re Equity Funding Corp. Sec. Litig.,*
  438 F. Supp. 1303 (C.D. Cal. 1977) ......................................................................... 14

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.,*
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ....................................................... 15, 22

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  2018 WL 6168013 (S.D.N.Y. Nov. 26, 2018) .................................................................. 9

*In re Genworth Fin. Sec. Litig.*,
  2016 WL 5400360 (E.D. Va. Sep. 26, 2016) .................................................................. 20

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ............................................................... 11

*In re Google Referrer Header Privacy Litig.*,
  869 F.3d 737 (9th Cir. 2017) ........................................................................................ 19

*In re Gulf Oil/Cities Service Tender Offer Litig.*,
  142 F.R.D. 588 (S.D.N.Y. 1992) ................................................................................... 10

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................... 13, 14, 19

*In re High-Tech Emp. Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ................................................................. 23

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................... 19, 21, 23, 25

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................................................... 16

*In re K12 Inc. Sec. Litig.*,
  2019 WL 3766420 (N.D. Cal. July 10, 2019) ................................................................ 18

*In re Leapfrog Enter., Inc. Sec. Litig.*,
  237 F. Supp. 3d 943 (N.D. Cal. 2017) .......................................................................... 11

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................................................... 17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................................. 9, 24

*In re Media Vision Tech. Sec. Litig.,*
  913 F. Supp. 1362 (N.D. Cal. 1996) ............................................................................. 23

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ........................................................................................ 19

*In re Myford Touch Consumer Litig.*,
  2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) ............................................................... 22

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998)........................................................................................ 16

*In re Ocean Power Tech., Inc., Sec. Litig.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................................................................... 3

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal 2008) ......................................................................... *passim*

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 16, 2009) .................................................................... 16

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)........................................................................................... 13, 19

*In re Peanut Farmers Antitrust Litig.*,
  2021 WL 9494033 (E.D. Va. Aug. 10, 2021) .................................................................... 10

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)...................................................................... 4

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)......................................................................................... 6, 21

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013) ........................................................................... 11

*In re Scientific Atl., Inc. Sec. Litig.*,
  754 F. Supp. 2d 1339 (N.D. Ga. 2010) ................................................................................ 8

*In re Tezos Sec. Litig.*,
  2020 WL 13699946 (N.D. Cal. Aug. 28, 2020)................................................................... 18

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) .................................................................................... 20

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011) ................................................................................... 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .................................................................... 22

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)...................................................................................... 20

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994)............................................................................... 5, 14, 17

*In re Waste Mgmt., Inc. Sec Litig.*,
   2002 WL 35644013 (S.D. Tex. May 10, 2002) .......................................................... 10

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................ 11, 12, 16, 24

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
   564 U.S. 135 (2011) .................................................................................................. 16

*Jenson v. First Trust Corp.*,
   2008 WL 11338161 (C.D. Cal. June 9, 2008).......................................................... 22

*Kendall v. Odonate Therapeutics, Inc.*,
   2022 WL 1997530 (S.D. Cal. June 6, 2022) ........................................................... 18

*Lea v. TAL Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ......................................................... 21

*Leach v. NBC Universal Media, LLC*,
   2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ....................................................... 22

*Marshall v. Northrop Grumman Corp.*,
   2020 WL 5668935 (C.D. Cal. Sept. 18, 2020)......................................................... 17

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)........................................................................ 10

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) .................................................................................................. 21

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003)................................................................................ 19

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) .................................................................................................. 16

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   2009 WL 9100391 (C.D. Cal. June 24, 2009).......................................................... 17

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989)........................................................................ 16, 17, 20

*Perez v. Rash Curtis & Associates*,
   2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ......................................................... 19

*Pierrelouis v. Gogo Inc.*,
   2022 WL 7950362 (N.D. Ill. Oct. 13, 2022) ........................................................... 25

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997)...................................................................................... 3, 16

*Rodman v. Safeway*,
   2018 WL 4030558 (N.D. Cal. Aug. 22, 2018).................................................................... 7

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012)............................................................................................... 7

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)............................................................................................... 7

*Romero v. Producers Dairy Foods, Inc.*,
   2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ................................................................. 17

*Ross v. Trex Co., Inc.*,
   2013 WL 12174133 (N.D. Cal. Dec. 16, 2013) .................................................................. 4

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ......................................................... 2, 11, 14

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013)............................................................................................... 3

*Silverman v. Motorola, Inc.*,
   2012 WL 1597388 (N.D. Ill. May 7, 2012) ...................................................................... 10

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016)............................................................................................. 18

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016)............................................................................................. 5

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004).................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ......................................................................................................... 18

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ................................................................. 25

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)............................................................................................... 16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012).............................................................................................. 6

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) .................................................................................. 17, 20

*Varljen v. H.J. Meyers & Co., Inc.*,
   2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000) ....................................................................... 24

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ........................................................................................................ 5

*Vinh Nguyen v. Radient Pharm. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................................................ 6

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2012) ................................................................................... 7, 9, 17, 20

*Yaron v. Intersect ENT, Inc.*,
   2021 WL 5150051 (N.D. Cal. Nov. 5, 2021) ............................................................................ 18

*Zaidi v. Adamas Pharm., Inc.*,
   650 F. Supp. 3d 848 (N.D. Cal. 2023) .................................................................................. 3, 12

STATUTES

15 U.S.C. §78u-4(a)(4)24.................................................................................................... 2, 24

15 U.S.C. § 78u-1(a)(6)............................................................................................................ 6

15 U.S.C. §§ 78u-4(b)(1)-(b)(2)(A) ...................................................................................... 2

15 U.S.C. §§ 78u-4(b)(1)-(b)(3)(B) ...................................................................................... 2

**NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES**

**<u>AND REIMBURSEMENT OF LITIGATION EXPENSES</u>**

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 128), and the Court's Order to Continue the Final Fairness Hearing (ECF No. 132), on September 27, 2024, at 9:00 a.m., before the Honorable Jeffrey S. White, in Courtroom 5, 2nd Floor, at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, lead counsel Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel") will, and hereby, does move the Court for an Order awarding attorneys' fees and reimbursement of Litigation Expenses in the above-captioned securities class action (the "Action").[1]

This Motion is based on the following Memorandum of Law; the Solish Declaration and exhibits thereto, including the Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections (Ex. 2, "Craig Decl."); the Stipulation; all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.[2]

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated February 29, 2024 (ECF No. 124-1), or the concurrently filed Declaration of Leanne H. Solish in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Solish Declaration" or "Solish Decl."). Citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Solish Declaration.

[2] Defendants take no position with respect to this motion.

**MEMORANDUM OF LAW**

Lead Counsel, on behalf of all Plaintiff's Counsel,[3] respectfully submits this memorandum of law in support of its Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

## I.   PRELIMINARY STATEMENT

Plaintiff's Counsel have succeeded in obtaining a $4,650,000 non-reversionary, all cash, settlement (the "Settlement") for the benefit of the Settlement Class.  This is an extremely favorable outcome in the face of substantial risks, and it is the result of Plaintiff's Counsel's vigorous, persistent, and skilled efforts.  Lead Counsel now respectfully moves this Court for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (*i.e.*, $1,550,000, plus interest at the same rate as the Settlement Fund), and reimbursement of $89,750.65 in Litigation Expenses.  The Litigation Expenses consist of $79,750.65 in out-of-pocket costs incurred by Plaintiff's Counsel while prosecuting the Action, and $10,000 to Court-appointed lead plaintiff Ralph Martinez ("Plaintiff") for reimbursement of the reasonable costs (including the cost of time spent) incurred in prosecuting the Action on behalf of the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

Achieving the Settlement was not easy.  Defendants were represented by highly skilled litigators, and Plaintiff's Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment.  *See* 15 U.S.C. §§ 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B).  These are not idle risks.  *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *32 (N.D. Tex. Nov. 8, 2005) ("the risk of no recovery in complex [securities] cases of this type is very

---

[3] Plaintiff's Counsel are Lead Counsel, and Robbins Geller Rudman & Dowd LLP ("RGRD").

real.").[4]  As a result, a significant number of cases—***like this one***—are dismissed in whole or in part at the pleading stage.  *See* ECF No. 79 (granting motion to dismiss First Amended Complaint with leave to amend); *Zaidi v. Adamas Pharm., Inc.*, 650 F. Supp. 3d 848 (N.D. Cal. 2023) (granting motion to dismiss Second Amended Complaint except for one alleged misstatement by Defendant King); ECF No. 103 (dismissing Section 20(a) claim against Defendant King).[5]

Nor do the risks end at the pleading stage.  Even when a plaintiff is successful at trial, payment is far from guaranteed.  *See In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).[6]  There was, therefore, a strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *In re Ocean Power Tech., Inc., Sec. Litig.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016)  ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain.")

Despite facing long odds, Plaintiff's Counsel vigorously pursued this case for more than four years—working 2,090.30 hours and advancing $79,750.65 in out-of-pocket expenses, all on a fully contingent basis.  *See* ¶¶12-36, 79-81.  As compensation for Plaintiff's Counsel's considerable efforts

---

[4] Unless otherwise noted, all internal citations and quotation marks are omitted and all emphasis is added.

[5] *See also* Ex. 5 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) ("NERA Report") at p. 15-16 (Fig. 14) (finding motion to dismiss were filed in 96% of securities class action lawsuits, with a decision reached in 74% of these cases, and stating that "[a]mong the cases where a decision was reached, 60% were granted (with or without prejudice) while 40% were denied either in part or in full").

[6] *See also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting judgment as a matter of law for defendants after jury returned verdict for plaintiffs), *aff'd sub nom.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares).

MOTION FOR AN AWARD OF ATTORNEYS' FEES    Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

on behalf of the Settlement Class, Lead Counsel respectfully requests a fee award in the amount of 33⅓% of the Settlement Fund. The requested fee is consistent with fee awards in comparable class action settlements, whether considered as a percentage of the Settlement Fund or in relation to Plaintiff's Counsel's lodestar. In fact, the requested fee represents a "negative" or fractional multiplier of 0.92 on Plaintiff's Counsel's lodestar, which itself is a strong indication of the reasonableness of the requested fee. *See Ross v. Trex Co., Inc.*, 2013 WL 12174133, at *1 (N.D. Cal. Dec. 16, 2013) (White, J.) ("Plaintiffs sought no extraordinary award of fees; to the contrary, they sought less than their lodestar, which further supports the reasonableness of the fees requested and awarded."); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").

Lead Counsel also seek reimbursement of $79,750.65 in out-of-pocket litigation expenses incurred by Plaintiff's Counsel in prosecuting this Action. *See* ¶¶91-98. This amount is below the $120,000 limit on Litigation Expenses disclosed in the Notice—which, by definition, included a PSLRA award to Plaintiff. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Plaintiff respectfully requests a PSLRA award in the amount of $10,000 to compensate him for the time and effort he expended on behalf of the Settlement Class. Ex. 1, ¶¶12-13. Plaintiff, *inter alia*: (i) produced his trading records to his attorneys; (ii) moved to serve as lead plaintiff in the Action; (iii) reviewed all significant pleadings and briefs filed in the Action; (iv) regularly communicated with Lead Counsel regarding the posture and progress of the case; (v) reviewed Court orders and discussed them with his attorneys; (vi) consulted with counsel regarding the mediation and Settlement Amount; and (vii) evaluated and approved the proposed Settlement. *Id.* at ¶¶4-6. But for his "commitment to pursuing these claims, the successful recovery for the Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Solish Declaration, Lead Counsel respectfully request that the Court award attorneys' fees equal to 33⅓% of the Settlement Fund, approve

reimbursement of $79,750.65 in litigation expenses incurred by Plaintiff's Counsel, and grant a PSLRA award of $10,000 to Plaintiff.

## II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Solish Declaration is an integral part of this submission.  For the sake of brevity in this memorandum, the Court is referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶10-38); the nature of the claims asserted (¶¶4, 10, 15, 19); the negotiations leading to the Settlement (¶¶28-33); the risks and uncertainties of continued litigation (¶¶39-56), and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶12-36, 79-81).

## III.   THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A.   Plaintiff's Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").  Indeed, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have  a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.") ("*WPPSS*"); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).  This rule, known as the "common fund" doctrine, is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal 2008).

### B.   The Court Should Calculate The Requested Fee As A Percentage Of The Common Fund

District courts in the Ninth Circuit retain discretion to award attorneys' fees in common fund

MOTION FOR AN AWARD OF ATTORNEYS' FEES                                Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

cases based upon either the percentage-of-the-fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method used. *See, e.g.*, *Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *Omnivision*, 559 F. Supp. 2d at 1046 (same).

Most courts have found the percentage approach superior in cases with a common fund recovery because: it parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; and reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis. *See Omnivision*, 559 F. Supp. 2d at 1046; *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires."); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked district courts").

Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons, among others, Lead Counsel respectfully requests that the Court award

MOTION FOR AN AWARD OF ATTORNEYS' FEES                    Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

attorneys' fees in this case on a percentage-of-the-fund basis, and use an informal lodestar cross-check to assess the reasonableness of the percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2012) ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure ….."); *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

## C. The Requested Attorneys' Fee Is Supported By The Factors Considered By Courts In The Ninth Circuit

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Class; and (6) awards made in similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048-51); *see also In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011). The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but rather, should be evaluated in light of the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048-50. As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

### 1. The Quality Of The Result Achieved Supports The Fee Request

Courts have consistently acknowledged that the quality of the result achieved is the most important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."); *Rodman v. Safeway*, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 22, 2018); *Omnivision*, 559 F. Supp. 2d at 1046. Lead Counsel submits that the $4,650,000 proposed Settlement is an excellent result for the Settlement Class given the many risks of continued litigation and the procedural posture of the case at the time of settlement.

Here, Plaintiff's consulting damages expert estimates that if the putative class had fully prevailed

MOTION FOR AN AWARD OF ATTORNEYS' FEES                                    Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

on its remaining Exchange Act claim, and if the Court and jury accepted Plaintiff's liability and damages theories, including proof of loss causation as to each of the *three* alleged corrective disclosure dates—*i.e.*, Plaintiff's *best case scenario*—the total *maximum potential aggregate damages* would be approximately $164.2 million. ¶52.[7]  Under such a scenario, the $4.65 million recovery represents approximately 2.83% of the estimated maximum aggregate damages potentially available in this Action.

This case was not, however, risk free, and there were meaningful barriers to a full recovery.  Had this litigation not settled, Defendant would have continued to challenge Plaintiff's ability to prove loss causation.  *See*, *e.g.*, ECF Nos. 70 at 24-25; 76 at 24-25.  Defendant would have argued, *inter alia*, that: (i) there were no damages because none of the alleged disclosure dates revealed new information (*see id.*); and (ii) the alleged corrective disclosures on November 1, 2018 and March 4, 2019 did not correct Mr. King's statement because the disclosures on those dates were unrelated to the step-through requirements at the heart of the one remaining misstatement.  Assuming, *arguendo*, that the Court or jury agreed with the latter argument, but found in Plaintiff's favor with respect to the October 5, 2018 disclosure, recoverable damages would have been an estimated $21.1 million—in which case the Settlement Amount equates to a 22.03% recovery.  ¶53.  A recovery in the range of 2.83-20.3% is consistent with, or significantly higher than, those obtained in securities cases with similarly sized damages.  *See* NERA Report at p. 25 (Fig. 21) (median recovery for securities class actions that settled between January 2014 and December 2023 was 2.9% for cases with estimated damages between $100-$199 million and 5.1% for those with estimated damages of $20-$49 million).

Moreover, the estimated damages for both of these scenarios assumes that Plaintiff is given full credit for the alleged corrective disclosures and does not take into account any disaggregation arguments that Defendant may have raised.  *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("[L]oss causation might have been particularly difficult for Lead Plaintiff to prove, as Defendants would have argued that Plaintiff's expert could not apportion losses to Defendants' misstatements as opposed to other events and information available on the market …."); *In re Scientific*

---

[7] Plaintiff alleged that that corrective disclosures removed the artificial inflation from the price of Adamas common stock on October 5, 2018, November 2, 2018, and March 5, 2019.

MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES

Case No. 4:19-cv-08051-JSW

8

*Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).

While Plaintiff's Counsel believed they had the better argument on these issues, Plaintiff bore the burden of proof, and a win by the Defendant would have eliminated or substantially reduced damages. *See* C*hristine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) ("While Plaintiffs proceeded as though they had the better arguments, the risk remained that Defendants could have defeated loss causation, or significantly diminished damages, for the one remaining alleged corrective disclosure date."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("There is the undeniable risk that a jury could be swayed by experts for the Defendants, who could minimize the amount of Plaintiffs' losses."). Given the range of possible results in this litigation, including a strong possibility of no recovery whatsoever, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee.

**2.      The Substantial Risks Of The Litigation Support The Fee Request**

The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees). While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J. (Ret.)) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").[8]

---

[8] *See also In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 2018 WL 6168013, at *15 (S.D.N.Y. Nov. 26, 2018) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain."); *Teachers' Ret. Sys. of La. v. A.C.L.N.,*

This Action was no exception; in fact, it was far riskier than the average securities fraud class action.

While Plaintiff's Counsel believe that the claims of Plaintiff and the Settlement Class are meritorious, Plaintiff's Counsel also recognized from the outset that there were substantial risks in the litigation and that Plaintiff's ability to succeed at trial and obtain a large judgment was far from certain. *See, e.g.*, *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("It is well-established that litigation risk must be measured as of when the case is filed."); *In re Waste Mgmt., Inc. Sec Litig.*, 2002 WL 35644013, at *28 (S.D. Tex. May 10, 2002) ("These risks must be assessed as they existed at the inception of the litigation, and not in light of the settlement achieved in the end."). Nevertheless, Lead Counsel accepted the challenge.

One proxy for assessing "the attorney's risk is whether a relevant government action was instituted against the defendant." *In re Bausch & Lomb, Inc. Sec. Litig.*, 183 F.R.D. 78, 87 (W.D.N.Y. Oct. 28,1998) (*citing City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974) (factors that comprise "risk of litigation" include whether "a relevant government action [has] been instituted or, perhaps, even successfully concluded against the defendant"). This is because the risk is not uniform in all class actions, and the risk of nonpayment is higher in cases where there has been no government action. *See In re Peanut Farmers Antitrust Litig.*, 2021 WL 9494033, at *3 (E.D. Va. Aug. 10, 2021).

Here, there were no proceedings initiated by the SEC or DOJ investigation into the allegations at issue. Indeed, "[t]his is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill." *In re Gulf Oil/Cities Service Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992). Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *Peanut Farmers*, 2021 WL 9494033, at *3 (award of one-third of settlement fund supported by fact that "Class Counsel achieved this result without the benefit of a prior governmental investigation.").[9]

---

*Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

[9] *See also Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (fee request supported by fact that "there were no governmental investigations or prosecutions related to the alleged

Another indicium of risk is the fact that this was not a restatement case. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (noting that one of the many hurdles plaintiffs faced was the fact that the case did not involve a restatement of financials). When companies restate their financials, they admit to a material misstatement of their financial reporting. A case predicated on a restatement is, therefore, less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See Schwartz*, 2005 WL 3148350, at *29 ("From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, which did not involve restatement of TXU's previously issued financial statements or any other acknowledgments of wrongdoing."); *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744 at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement).

The case's riskiness was also heightened by the lack of insider trading. As defendants pointed out in their motion to dismiss papers, "no Defendant sold stock during the Class Period and one Defendant actually purchased stock." ECF No. 90 at 15; *see also* ECF No. 70 at 24 (similar). While the absence of insider trading was not fatal at the pleading stage, there can be no doubt that this—along with Defendant King's class period stock purchases—would have been strong facts for the defense at summary judgment and trial. *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *11 (E.D.N.Y. Sept. 18, 2007) ("Establishing scienter is a difficult burden to meet and proving it will be especially challenging in this case where, apparently, neither the individual defendants nor any other Gilat executive profited from their Gilat investments."); *see also In re Leapfrog Enter., Inc. Sec. Litig.*, 237 F. Supp. 3d 943, 952 (N.D. Cal. 2017) (defendants' purchase of stock near date of alleged misstatement "strongly weigh[ed] against scienter").

The fact that Adamas was a small biotech company further enhanced the risk. While securities class actions are notoriously risky (*see supra* n. 8), empirical research confirms that "securities claims brought against small, clinical-stage biotech companies were actually *more* likely to be dismissed at an

fraud upon which Class Counsel could rest their theory of the case. Rather, they investigated the facts and developed their theory of liability from scratch, involving significant time and expense.").

early stage than other types of securities class actions[.]" Ex. 11 (Greene, Doug, *et al.*, *Analysis of Biotech Securities Class Action Motion to Dismiss Results, 2005-2022*, Guest Post in Kevin M. LaCroix's The D&O Diary (July 19, 2022)) (emphasis in the original) (finding that between 2005-2017, 68.6% of motions resulted in complete dismissal; and between July 11, 2017 and March 21, 2022, 68.2% resulted in complete dismissal). Indeed, "[t]he court needs to look no further than its own order[s fully and then substantially] dismissing the shareholder … litigation to assess the risks involved." *Xcel Energy*, 364 F. Supp. 2d at 1003; *see also* ECF Nos. 79, 103; *Adamas Pharm.*, 650 F. Supp. 3d 848.

Nor did the risks end at the pleading stage. Plaintiff still needed to overcome the major obstacles to ***proving*** liability and damages. For instance, Defendant would continue to contest scienter. ¶42. Defendants forcefully argued throughout the litigation, and Defendant King would continue to maintain at summary judgment and trial, that: (i) he lacked any financial motive to commit fraud; and (ii) the sole statement at issue was a good faith opinion about potential future events based on Defendant's interpretation of data available to him at the time of his communication with investors. *Id*. While Plaintiff strongly disagreed with Defendant and believed he would be able to prove scienter, there is no doubt that the issue would have been contested both at trial and on appeal. *See Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("To prevail, Plaintiffs would have to establish Defendants acted with scienter, which can be particularly difficult to establish."); *Yun Ma*, 2019 WL 5257534, at *12 ("[a]lthough Plaintiffs uncovered significant evidence that they believe supported a finding of Defendants' scienter, Defendants would have marshalled substantial evidence in opposition.").

Additionally, Defendant would have continued to assert that Plaintiff could not establish loss causation for any of the purported disclosures dates, and even if they could, the damages were minimal. ¶¶46, 53. Although Plaintiff believed that he had meritorious arguments in response to Defendant's assertions, it simply cannot be disputed that the Parties held extremely disparate views on loss causation and damages, and had Defendant's arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery. *See In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Bear*

*Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

In sum, "[t]his case lacked several strong facts that often support liability (and large settlement valuations) and provide a roadmap for proving fraud, such as suspected insider trading, a corporate restatement, or a companion SEC or DOJ investigation." *In re Centurylink Sales Practices and Sec. Litig.*, 2021 WL 3080960, at *9 (D. Minn. July 21, 2021). The risks were substantial, and they were present every step of the way. Accordingly, this factor strongly supports the requested attorneys' fee. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks").

### 3.    The Skill Required And The Quality Of The Work

The third factor to consider in determining the reasonableness of a fee award is the skill required and the quality of the work performed. Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities" (*Omnivision*, 559 F. Supp. 2d at 1047), and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

Here, the attorneys at GPM and RGRD are among the most experienced and skilled practitioners in the securities litigation field, and both firms have a long record of successfully prosecuting securities cases throughout the country, including within this Circuit. *See* Exs. 3-C and 4-C (GPM and RGRD firm résumés). From the outset, Plaintiff's Counsel aggressively sought to obtain the maximum recovery for the Settlement Class, and as detailed in the Solish Declaration (¶¶12-36) and the concurrently filed Final Approval Motion (p. 3-4),[10] expended considerable efforts in prosecuting this Action. Plaintiff's Counsel respectfully submit that the quality of their efforts in the litigation, together with their substantial experience in securities class actions and commitment to this litigation, provided them with the leverage necessary to negotiate a favorable settlement.

---

[10] *See also* Exs. 3-A, 4-A (charts categorizing Plaintiff's Counsel's hours).

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage Bond*, 2005 WL 1594403, at *20; *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by Cooley LLP, an extremely capable and highly respected national law firm, that vigorously defended the Action for over four years. ¶83. Notwithstanding this formidable opposition, Plaintiff's Counsel was able to obtain a highly favorable recovery for the Settlement Class. Thus, this factor militates in favor of the requested fee. *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly"); *Schwartz*, 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation").

### 4. The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The fourth factor in determining a fair and reasonable fee requires courts in the Ninth Circuit to consider the contingent nature of the fee and the obstacles surmounted:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Zynga*, 2016 WL 537946, at *18 ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."). "This is especially true where, as here, class counsel has significant

experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded an even higher 33 percent fee award." *Id.*

Plaintiff's Counsel have to date received no compensation, have invested 2,090.30 hours of work equating to a total lodestar of $1,691,582.00, and have incurred out-of-pocket expenses of $79,750.65 in prosecuting and resolving this Action. Additional work in implementing the Settlement and claims administration will also be required. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."). Since the inception of this case, Plaintiff's Counsel have borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real. Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *See, e.g.*, *In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles).[11]

Lead Counsel is not alone. There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See, e.g.*, *In re Alstom SA Sec.*

---

[11] *See also Gross v. GFI Group, Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (GPM served as Co-Lead Counsel in case where the Court granted summary judgment for defendants following four years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of attorney time and hard costs), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13, 2019).

MOTION FOR AN AWARD OF ATTORNEYS' FEES                                      Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

*Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by Supreme Court's reversal in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) after over 40-years of unbroken circuit court precedent). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Xcel Energy*, 364 F. Supp. 2d at 994.[12]  Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)), *reh'g denied* (July 1, 2015).[13]

Here, because Plaintiff's Counsel's fee was entirely contingent, the only certainties were there would be no fee without a successful result and such a result would only be realized after substantial amounts of time, effort, and expense were expended.  Nevertheless, Plaintiff's Counsel committed significant amounts of both time and money to prosecute this Action vigorously and successfully for the benefit of the Class. ¶¶12-36, 79-81, 84-86, 91-98.  Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee."  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998).

### 5. A 33⅓% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees.  886 F.2d 268, 272 (9th Cir. 1989); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25% benchmark).  However, "a

---

[12] *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants following lengthy trial).

[13] *See also Koger Props.*, 116 F.3d at 1441; *BankAtlantic*, 2011 WL 1585605; *Apple Computer*, 1991 WL 238298.

MOTION FOR AN AWARD OF ATTORNEYS' FEES                                      Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

16

reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1295 n.2.[14]  As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Activision*, 723 F. Supp. at 1373 (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%[.]"); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (awarding 33⅓% of $104,750,000 and stating: "a fee award of one-third is within the range of awards in this Circuit."); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third."); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery'") (*citing* 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)).  This is especially true in cases with "relatively small" common fund settlements.  *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) ("Most of the cases … in which high percentages such as 30–50 percent of the fund were awarded involved relatively smaller funds of less than $10 million."); *see also Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in result in fees above 25%.").  Indeed, for securities class action settlements settled between 2014 and 2023 with a

---

[14] *See also Paul, Johnson*, 886 F.2d at 271 ("[I]t is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.  The amount of such a reward is that which is deemed 'reasonable' under the circumstances."); *Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case.").

MOTION FOR AN AWARD OF ATTORNEYS' FEES                            Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

gross settlement value of under $5 million, the median attorneys' fee as a percentage of settlement value was 33.0%. *See* NERA Report at 29 (Fig. 25).

In view of the result obtained, the contingent fee risk, the number of hours dedicated to this matter by Plaintiff's Counsel, the financial commitment of Plaintiff's Counsel, and the important public policy advanced by securities litigation such as this, it is respectfully submitted that an award of 33⅓% of the recovery obtained for the Settlement Class is appropriate. *See, e.g.*, *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis. This incentive is especially important in securities cases.").[15] Such an award would be consistent with attorneys' fee awards in similar complex, contingent litigation in the Ninth Circuit. *See Berry v. Urban Outfitters Wholesale, Inc.*, No. 13-cv-02628, ECF No. 114 (N.D. Cal. Apr. 7, 2016) (White, J.) (awarding one-third of $5 million settlement fund) (Ex. 12); *Yaron v. Intersect ENT, Inc.*, 2021 WL 5150051, at *1-2 (N.D. Cal. Nov. 5, 2021) (White, J.) (awarding 33⅓% of $1.9 million in securities class action); *Bickley v. Schneider Nat'l Carriers, Inc.*, 2016 WL 6910261, at *4 (N.D. Cal. Oct. 13, 2016) (White, J.) (awarding 33⅓% of $28 million settlement fund in wage and hour case); *In re Interlink Elec., Inc. Sec. Litig.*, No. 05-cv-08133 AG (SH), ECF No. 165 at 4 (C.D. Cal. June 1, 2009) (Ex. 13) (awarding 33⅓% of $5 million settlement fund); *Hodges v. Akeena Solar, Inc.*, No. 5:09-cv-02147-JW, ECF No. 167 at 1 (N.D. Cal. Dec. 15, 2011) (awarding one-third of $4,770,000 settlement fund in securities class action) (Ex. 14); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (awarding 33% of $3.5 million settlement fund); *Boyd v. Bank of America Corp.*, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one-third of the $5.8 million settlement fund); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement fund); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (awarding 33⅓% of $12.75 million settlement fund); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal.

---

[15] *See also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (same).

MOTION FOR AN AWARD OF ATTORNEYS' FEES                                    Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund and noting that "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class actions"); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (approving a fee of 33.3% of the $22.25 million settlement fund in securities class action).[16]

Accordingly, Lead Counsel's fee request is in line with other comparable complex cases and should be approved. *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million class action settlement); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement); *In re Pac. Enters.*, 47 F.3d at 379 (33% award from $12 million common fund "for attorneys' fees is justified because of the complexity of the issues and the risks").

### 6. The Reaction Of The Class Supports The Requested Fee

"The existence or absence of objectors to the requested attorneys' fee is a factor is [sic] determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21; *see also OmniVision*, 559 F. Supp. 2d at 1048. While the time to object to the requested fee and expenses does not expire until September 6, 2024, to date, not a single objection has been received by Lead Counsel or filed with the Court. ¶88. Should any objections be received, they will be addressed in the reply papers. "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007); *Omnivision*, 559 F. Supp. 2d at 1048 (same); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *13 (C.D. Cal. 2008) (three members objected and 29 opted out, indicating favorable result and award of "generous fee").

### D. A Lodestar Cross-Check Supports The Requested Fee

"Generally, a district court is not required to conduct a lodestar cross-check to assess the reasonableness of a fee award." *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *18 (N.D. Cal. Apr. 17, 2020); *see also In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir.

---

[16] *See also* Ex. 6 (collecting Ninth Circuit cases with 33% or higher fee awards).

2017) ("Although ***not required to do so***, the district court took an extra step, cross-checking this result by using the lodestar method.") *vacated on other grounds sub nom. Frank v. Gaos*, 139 S. Ct. 1041 (2019); *Hageman v. AT & T Mobility LLC*, 2015 WL 9855925, at *4 (D. Mon. Feb. 11, 2015) (awarding 33.33% of the $45 million settlement fund as attorney's fees without conducting a lodestar cross-check). However, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness.").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Genworth Fin. Sec. Litig.*, 2016 WL 5400360, at *7 (E.D. Va. Sep. 26, 2016). "Calculation of the lodestar, however, is simply the beginning of the analysis." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Graulty*, 886 F.2d at 272. In the second step of the analysis, a court adjusts the lodestar to account for, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013). In so doing, "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation.").

When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535

F. Supp. 2d 249, 270 (D.N.H. 2007); *Glass v. UBS Fin. Servs.*, 331 F. App'x. 452, 456 (9th Cir. 2009).[17] Here, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

Plaintiff's Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 2,090.30 hours to the prosecution of the Action. ¶80. Lead Counsel at all times worked to avoid duplication of efforts between firms and attorneys and believes the hours submitted in support of the lodestar calculation were necessary for the successful and efficient litigation of the case. ¶81. Despite it taking many years to bring the case to a successful conclusion, the individual attorneys staffing the Action remained relatively consistent, allowing those individuals to maintain a high level of institutional knowledge of the law and facts of the case, thereby improving litigation efficiency.

As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, and as required by the Northern District's Procedural Guidance for Class Action Settlements, Plaintiff's Counsel are submitting declarations that include a schedule breaking down each firm's lodestar by individual, position, billing rate, hours billed and categorizing the work performed.[18] ¶79; Exs. 3-A & 4-A. Based on current hourly rates,[19] Plaintiff's Counsel's lodestar is $1,691,582.00. ¶80.[20] Thus, the 33⅓% fee request (equal to $1,550,000) yields a

---

[17] *See also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *Dakota Medical, Inc. v. RehabCare Group, Inc.*, 2017 WL 4180497, at *8 (E.D. Cal. Sept. 21, 2017) ("Where a lodestar is merely being used as a cross-check, the court may use a rough calculation of the lodestar."); *In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. Jul. 28, 2014) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.").

[18] *See In re Immune Response*, 497 F. Supp. 2d at 1176 ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005) ("[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records").

[19] Courts use current rather historic rates, to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002); *see also Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

[20] Plaintiff's Counsel's rates range from $785-$1,400 for partners, and $795-$1,135 for non-partners (Exs. 3-A & 4-A), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021)

MOTION FOR AN AWARD OF ATTORNEYS' FEES                              Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

fractional or "negative" multiplier of 0.92.  ¶90.

A "multiplier of less than one … suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (requested fee award was not unreasonable when lodestar cross-check revealed a multiplier of 0.59); *see also In re Myford Touch Consumer Litig.*, 2019 WL 6877477, at *1 (N.D. Cal. Dec. 17, 2019) ("[T]he negative multiplier … suggests the request is reasonable.").  Indeed, "an award exceeding 25 percent is reasonable where the total fee award is lower than the lodestar calculation." *Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929, at *7 (N.D. Cal. Mar. 26, 2019). This is because, as is true here, "the requested award would not 'yield windfall profits for class counsel in light of the hours spent on the case.'"  *Id.* (quoting *Bluetooth*, 654 F.3d at 942).

"The fact that [Plaintiff's] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878, at ¶49 (S.D.N.Y. Aug. 24, 2017); *see also Facebook*, 2015 WL 6971424, at *10.  Among other things, Lead Counsel will oversee the claims administration process, respond to shareholder inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court. The multiplier will, therefore, diminish as the case moves forward because Lead Counsel will not seek any additional compensation for this work.

In sum, Lead Counsel's requested fee award is reasonable, justified, and in line with what courts in this Circuit award in class actions such as this one, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar. *See Jenson v. First Trust Corp.*, 2008 WL 11338161, at *15 (C.D. Cal. June 9, 2008) (awarding 33% of $8.5 million settlement fund and stating "[t]hat Counsel's requested fees here are *lower* than its lodestar, despite the presence of factors favoring an *upward* adjustment of its lodestar, indicates that the fee request is highly reasonable." (emphasis in the original)).

(approving GPM's 2021 rates of $600 to $995 for partners, and $500 to $750 for associates); *see also* Ex. 7 (chart of rates charged by peer plaintiff and defense counsel in complex litigation); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").

MOTION FOR AN AWARD OF ATTORNEYS' FEES                                    Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES
22

## IV.   PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

In addition to attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *Omnivision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

Plaintiff's Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Plaintiff's Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action. Thus, Plaintiff's Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. ¶94.

In the aggregate, Plaintiff's Counsel have incurred expenses in the amount of $79,750.65 while prosecuting the Action, and these expenses are set forth in the Solish Declaration, ¶¶91-98, and in each firm's individual supporting declaration. Exs. 3-B & 4-B. The vast majority of expenses were for the retention of a private investigation firm ($40,161.25), experts ($16,054.00), the mediator ($10,475.00), and online legal and factual research ($11,237.83). These expenses total $77,928.08, or approximately 97.7% of the total litigation expenses. ¶¶92, 95-97. These expenses were critical to Plaintiff's Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly. They should be reimbursed out of the common fund. *See In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *16 (N.D. Cal. Sept. 2, 2015) (approving reimbursement for similar fees expenses); *accord Immune*

*Response*, 497 F. Supp. 2d at 1177-78.[21]

## V.   PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)

In connection with its request for reimbursement of Litigation Expenses, Lead Counsel also requests a PSLRA award to Plaintiff in the amount of $10,000 for time spent prosecuting the Action. 15 U.S.C. § 78u-4(a)(4).  "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class."  *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019).  Reimbursement of such costs are allowed because it "encourages participation of plaintiffs in the active supervision of their counsel."  *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, Plaintiff stepped forward to represent the Class and spent a minimum of 25 hours participating in this litigation.  *See* Ex. 1, ¶13.  Among other things, Mr. Martinez: (i) produced his trading records to his attorneys; (ii) moved to serve as lead plaintiff in the Action; (iii) reviewed all significant pleadings and briefs filed in the Action; (iv) regularly communicated with Lead Counsel regarding the posture and progress of the case; (v) reviewed Court orders and discussed them with his attorneys; (vi) consulted with counsel regarding the mediation and Settlement Amount; and (vii) evaluated and approved the proposed Settlement.  *See Id*. at ¶¶3-6.  These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives" (*see In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009)), and the amount requested is consistent with awards in other complex cases.  *See Xcel Energy*, 364 F. Supp. 2d at 1000 (awarding eight lead plaintiffs a total of $100,000 pursuant to the PSLRA and noting "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons

---

[21] The Notice informed Class Members that Lead Counsel intended to apply for the reimbursement for Litigation Expenses "in an amount not to exceed $120,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiff directly related to his representation of the Settlement Class in an amount not to exceed $10,000."  Ex. 2-C (Notice) at ¶5. Lead Counsel's requested reimbursement of $79,750.65 (plus $10,000 for Plaintiff) is less than the maximum amount of potential expenses disclosed in the Notice and, to date, there have been no objections to the request for reimbursement of Litigation Expenses.  ¶93.

MOTION FOR AN AWARD OF ATTORNEYS' FEES                                    Case No. 4:19-cv-08051-JSW
AND REIMBURSEMENT OF LITIGATION EXPENSES

24

other than themselves"); *Yelp*, 2023 WL 3063823, at \*2 ($15,000 PSLRA award).[22]

## VI.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the fee and expense application.

Dated: July 30, 2024                              **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Leanne H. Solish*
Robert V. Prongay
Joseph D. Cohen
Leanne H. Solish
Christopher R. Fallon
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
            lsolish@glancylaw.com
            cfallon@glancylaw.com

*Counsel for Lead Plaintiff Ralph Martinez and Lead Counsel for the Settlement Class*

---

[22] *See also Immune Response*, 497 F. Supp. 2d at 1173-74 (awarding $40,000 to lead plaintiff pursuant to PSLRA); *Pierrelouis v. Gogo Inc.*, 2022 WL 7950362, at \*2 (N.D. Ill. Oct. 13, 2022) ($20,000 award of to lead plaintiff); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at \*6 (C.D. Cal. Oct. 24, 2017) ($10,000 award to lead plaintiff); *In re XL Fleet Corp. Sec. Litig.*, No. 1:21-cv-0200-JLR, ECF No. 198 (S.D.N.Y. April 30, 2024) ($25,000 award to lead plaintiff and $15,000 award to each of the other four named plaintiffs) (Ex. 15).

**PROOF OF SERVICE**

I hereby certify that on this 30th day of July, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Leanne H. Solish*
Leanne H. Solish