Robert V. Prongay (#270796)
Joseph D. Cohen (#155601)
Leanne H. Solish (#280297)
Christopher R. Fallon (#235684)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ALI ZAIDI, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>vs.<br><br>ADAMAS PHARMACEUTICALS, INC., *et al.*,<br><br>                          Defendants. | Case No. 4:19-cv-08051-JSW<br><br>**LEAD PLAINTIFF'S: (1) NOTICE OF UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER; AND (2) MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Hearing Date: June 13, 2025<br>Time: 9:00 a.m.<br>Location: Courtroom 5, 2nd Floor<br>Judge: Hon. Jeffrey S. White |

UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER                    Case No.: 4:19-cv-08051-JSW

**<u>NOTICE OF UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER</u>**

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 13, 2025, at 9:00 a.m., before the Honorable Jeffrey S. White, in Courtroom 5, 2nd Floor, at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, lead plaintiff Ralph Martinez ("Lead Plaintiff") will, and hereby does, move the Court for entry of the accompanying [Proposed] Class Distribution Order (the "Class Distribution Order"), which, among other things, will: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the above-captioned action (the "Action"); (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.[1]

This Motion is based on: this Notice of Motion, and the Memorandum of Points and Authorities attached hereto; the Craig Declaration and the exhibits attached thereto; and the concurrently filed Declaration of Sharon M. McGowan of the Public Justice Foundation.

Lead Counsel gave Defendant advance notice of this Motion, and counsel for Defendant authorized Lead Counsel to represent that Defendant does not oppose the proposed relief.

Because this Motion is unopposed, Lead Counsel respectfully submits that the Motion may be decided without a hearing.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated February 29, 2024 (ECF No. 124-1; the "Stipulation"), or the concurrently filed Declaration of Margery Craig Concerning the Results of the Claims Administration Process ("Craig Decl." or "Craig Declaration"), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("SCS" or the "Claims Administrator").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

Court-appointed Lead Plaintiff Ralph Martinez, on behalf of himself and the Class, respectfully submits this memorandum in support of the Unopposed Motion for Class Distribution Order (the "Motion").  The proposed plan for distribution of the Net Settlement Fund is set forth in the accompanying Craig Declaration.  *See* Craig Decl. ¶¶21(a)-(e).

### II.    BACKGROUND

On February 29, 2024, the Parties entered into the Stipulation, the terms of which established a $4.65 million Settlement Fund for the benefit of the Settlement Class.  Subject to certain exclusions, the Settlement Class consists of all persons and entities that purchased or otherwise acquired the publicly traded common stock of Adamas Pharmaceuticals, Inc. ("Adamas"), between August 8, 2017, and March 4, 2019, both dates inclusive, and were damaged thereby.

The Court granted preliminary approval of the Settlement on April 2, 2024.  ECF No. 128. The Court entered an Amended Order Preliminarily Approving Settlement on August 1, 2022 ("Preliminary Approval Order").  ECF No. 201.  Following entry of the Preliminary Approval Order: (i) 29,515 potential Settlement Class Members were either mailed a Postcard Notice or emailed a link to the Notice and Claim Form; (ii) the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* (a national newswire service); (iii) a case-specific website dedicated to this Settlement (https://www.AdamasSecuritiesSettlement.com, the "Settlement Website") was established; and (iv) a toll-free helpline was set up by SCS to assist potential Settlement Class Members.  *See* Craig Decl., ¶¶5-6; *see also* ECF No. 135-2, ¶9 (regarding publication of the Summary Notice).  The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for opting back into the class, objecting, and filing Claims.  The Settlement Website provided access to important documents relevant to the Settlement, including, among other things, the Stipulation, Notice, and Claim Form. *See id.*, at ¶11; *see also* Settlement Website.

On September 27, 2024, the Court entered its Order Approving Plan of Allocation of Net Settlement Fund.  ECF No. 146.  On that same day, the Court entered the Judgment Approving Class

Action Settlement, which, among other things, granted final approval of the Settlement.  ECF No. 148.

Lead Plaintiff now requests that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator's expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

**III.    CLAIMS ADMINISTRATION**

Pursuant to the Preliminary Approval Order and as set forth in the Postcard Notice and Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail or online, postmarked by, or received, no later than August 28, 2024. *See* ECF No. 135-2, Ex. A (Postcard Notice) & C (Notice) at p.3.  The Claims Administrator received and reviewed all submitted Claims that were received on or before April 17, 2025, and, to the extent that a Claim was deficient, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency.  *See* Craig Decl., ¶¶8-15, 18-19.

Of the 12,169 Claims submitted to and fully processed by the Claims Administrator, 93 were paper submissions, and 210 were online submissions through the online filing portal on the Settlement Website.  *Id.*, ¶13.  The remaining 11,866 Claims were filed electronically ("Electronic Claims").  *Id*.  Electronic Claims are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants ("E-Claim Filers").  *Id*. at n.4.  Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry.  *Id*.  This process is designed to expedite the claims process.

If a paper or online Claim was deficient or defective, the Claims Administrator sent a Deficiency Notice to the Claimant, a sample of which is attached as Exhibit A to the Craig Declaration.  *Id.*, ¶¶12-13, Ex. A.  The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days from the date of the letter to submit additional information and/or documentary

evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶12. Of the 303 paper and online Claims, the Claims Administrator sent deficiency letters to 38 Claimants (or approximately 12.54%). *Id.*, ¶13.[2]

The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible. *Id.*, ¶¶12-15, 19(b). Ultimately, as detailed in the Craig Declaration, after the deficiency process was complete, the Claims Administrator determined that 4,132 Claims are acceptable and should receive a distribution. *See* Craig Decl., ¶19(a), n.6 & Exs. C-1, C-2. This number includes 4,127 timely and valid claims, and 5 Late But Otherwise Eligible Claims (addressed in Section IV below). *Id.*

The Claims Administrator also determined that 29 Claims were ineligible due to inadequate documentation, and 8,008 Claims are not eligible and should be rejected for the following reasons: (i) 6,781 Claims had no Recognized Loss under the Plan of Allocation; (ii) 728 Claims involved publicly-traded Adamas common stock that was purchased outside the Settlement Class Period; (iii) 246 Claims involved Adamas shares that were sold short; (iv) 193 Claims involved Adamas shares that were received or granted by gift, inheritance, or operation of law, but the original purchase information for the Adamas shares was not provided; (v) 42 Claims were withdrawn by the filing entity; (vi) 10 were duplicate Claims; (vii) four Claims were filed for securities other than Adamas stock; and (viii) four claims were fraudulent. *See* Craig Decl., ¶¶19(b)-(c) & Exs. D, E.

## IV.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the August 28, 2024 claims filing deadline. *Id.* at n.2 & n.6. "There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place." *In re Stable Road Acquisition Corp. Sec. Litig.*, 2025 WL 924928, at *3 (C.D. Cal. Mar. 24, 2025) (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at

---

[2] Of the 11,866 Electronic Claims, SCS determined that none of these Claims were incomplete or defective. *Id.*, at ¶13.

some point the matter must be terminated.'") (citation omitted)).  Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution.  Accordingly, the Claims Administrator imposed a cut-off date of April 17, 2025.  Craig Decl., ¶21(e) & n.5.

Of the 4,132 properly documented valid Claims, five were received or postmarked after the Court-approved claims filing deadline of August 28, 2024, but before the Claim's Administrator's imposed cut-off date of April 17, 2025 ("Late But Otherwise Valid Claims").  Craig Decl., ¶19(a), n.6 & Ex. C-2.  The five Late But Otherwise Valid Claims have been recommended for payment. *Id.* at ¶19(a) & n.6.  Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Proofs of Claim, but while the Claims were still being processed.  *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Stable Road*, 2025 WL 924928, at *3 (accepting "Late but Otherwise Eligible Claims"); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (same); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court allowed qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Valid Claims in the Distribution Plan.  *See* Craig Decl., 19(a) & Ex. C-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no new Proofs of Claim may be accepted after April 17, 2025, and no further adjustments to submitted Proofs of Claim may be made for any reason after April 17, 2025.  *See* Craig Decl., ¶¶20, 21(e). "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Stable Road*, 2025 WL

924928, at *3; *In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## V.   DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution"). *See* Craig Decl., ¶21(a)(i)-(vii).  Based on the substantial experience of the Claims Administrator and Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly.  To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses relating to unpaid distributions, the Claims Administrator and Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id*., ¶21(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution.  However, if after nine (9) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so.  *Id*., ¶21(b).  During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution.  *Id*. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible.  *Id*., ¶21(c)-(d).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to "the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy." *In re Stable Road*, 2025 WL 924928, at \*4; *see also* Craig Decl., ¶21(d); Declaration of Sharon M. McGowan of the Public Justice Foundation, ¶¶2-10 & ¶¶11-12 (listing securities cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary); *Nacif v. Athira Pharma, Inc.*, 2024 WL 4654238, at \*9 (W.D. Wash. Nov. 1, 2024) (designating the Public Justice Foundation as the *cy pres* recipient in a securities class action).

## VI.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Lead Plaintiff respectfully requests that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, Plaintiff's Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of

settlement proceeds. *See, e.g.*, *Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re Stable Road*, 2025 WL 924928, at *4; *In re Nuvelo, Inc. Sec. Litig.*, 2012 WL 12920613, at *2 (N.D. Cal. July 16, 2012); *Toyota*, 2014 WL 12586787, at *3.

## VII. THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES

The cost of the administration of the Settlement through April 23, 2025, totals $152,513.79, of which $143,046.50 has been paid, and $9,467.29 remains unpaid.[3] Craig Decl., ¶23. The estimate to conduct the Initial Distribution and any tax work, which will be reserved prior to the Initial Distribution, is $9,200.00. *Id*. Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $18,667.29 ($9,467.29 plus $9,200.00).[4] *Id.*

## VIII. RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff respectfully requests that the Court order that: (a) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (b) in no less than one (1) year after all

---

[3] SCS's original estimate was $146,288.00 (including $6,288 of broker charges). The $152,513.79 exceeds the original estimate by $6,225.79 ($152,513.79 minus $146,288.00) or 4% over the original estimate. The additional work was principally related to further quality assurance review; processing additional late claims; and reviewing and identifying potential fraudulent claims. Craig Decl., ¶23, n.9.

[4] If the anticipated fees and expenses to conduct the Initial Distribution are greater than the actual cost to conduct the distribution, the excess will be returned to the Settlement Fund. Craig Decl., ¶23.

funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶22.

## IX.    CONCLUSION

For the above reasons, Lead Plaintiff respectfully requests that the Motion be granted.

DATED:  April 30, 2025

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Leanne H. Solish*
Robert V. Prongay
Joseph D. Cohen
Leanne H. Solish
Christopher R. Fallon
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
        jcohen@glancylaw.com
        lsolish@glancylaw.com
        cfallon@glancylaw.com

*Lead Counsel for Lead Plaintiff Ralph Martinez and the Settlement Class*

## **PROOF OF SERVICE**

I hereby certify that on this 30th day of April, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Leanne H. Solish*
Leanne H. Solish

UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER                     Case No.: 4:19-cv-08051-JSW